# EXHIBIT "1"



**SALLYPORT COMMERCIAL FINANCE, LLC**                    **ACCOUNT SALE AND PURCHASE AGREEMENT**

THIS ACCOUNT SALE AND PURCHASE AGREEMENT (this "Agreement") is entered into in Houston, Texas, between Sallyport Commercial Finance, LLC ("Purchaser"), with offices at 14100 Southwest Freeway, Suite 210, Sugar Land, Texas 77478 and Retrolock Corporation ("Seller"), whose office is located at 210 W Taft Avenue Orange, CA 92865 ("Seller's Address").

    **1.**    **Definitions and Index to Definitions.** The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have that meaning as set forth in the Uniform Commercial Code as enacted in the State of Texas (the "UCC").

    **1.1.**    **"Account Payment"** - means that portion of the purchase price paid by Purchaser to Seller from time to time for the Accounts purchased hereunder.

    **1.2.**    **"Account Debtor"** - means the person or entity which is obligated on an Account, together with anything else defined as an "account debtor" in the UCC.

    **1.3.**    **"Accounts"** – shall have the meaning as set forth in the UCC, plus all contract rights, documents, notes, instruments and all other forms of obligations owed to or owned by Seller, all general intangibles relating thereto, all proceeds thereof, all guaranties, supporting obligations and security therefore, and all goods and rights represented thereby and arising therefrom, including, but not limited to, returned, reclaimed and repossessed goods and the rights of stoppage in transit, replevin and reclamation.

    **1.4.**    **"ACH"** – the Automated Clearing House.

    **1.5**    **"Additional Factoring Fee"** - See Schedule A, No. 1

    **1.6**    **"Additional Fee Period"** - See Schedule A, No. 2.

    **1.7**    **"Advance Rate"** – See Schedule A, No. 3.

    **1.8**    **"Assignment Schedule"** - means a list of Accounts Seller is selling and assigning to Purchaser in form and with information sufficient and acceptable to Purchaser in Purchaser's sole discretion.

    **1.9**    **"Audit Fee"** – See Schedule A, No. 4.

    **1.10**    **"Avoidance Claim"** – means the assertion, complaint, judgment or otherwise against Purchaser, any payment Purchaser received with respect to any Account, whether the amount related thereto was paid by the Account Debtor, the Seller, on behalf of Seller or for its benefit, or any lien granted to Purchaser is avoidable (or recoverable from Purchaser) under the Bankruptcy Code, any other debtor relief statute, including, but not limited to, preference claims, fraudulent transfer claims, or through receivership, assignment for the benefit of creditors or any equivalent recovery law, rule or regulation which relates to the adjustment of debtor and creditor relations.

    **1.11**    **"Base Rate"** – The highest prime rate publicly announced from time to time by The Wall Street Journal as its prime or base rate or equivalent rate, or if The Wall Street Journal ceases to publish the prime rate, such other published prime rate as chosen by Purchaser, in its sole discretion.

    **1.12**    **"Collateral"** – all of Seller's now owned or hereafter acquired Accounts, Equipment, Inventory, Financial Assets, Chattel Paper, Electronic Chattel Paper, Letters of Credit, Letter of Credit Rights, General Intangibles, Investment Property Goods, Deposit Accounts, Instruments, the Reserve, Commercial Tort Claims, Supporting Obligations, motor vehicles, all books, records, files and computer data related to the foregoing, and all proceeds of the foregoing.

    **1.13**    **"Daily Balance"** – The aggregate total of Account Payments made to Seller as advances of the Purchase Price relating to Purchased Accounts which remain unpaid by Account Debtors on any given day.

    **1.14**    **"Default Factoring Fee"** – See Schedule A, No. 5.

    **1.15**    **"Dispute"** - any dispute, deduction, claim, offset, defense or counterclaim of any kind whatsoever, real or imagined, regardless of whether the same is in an amount greater than, equal to or less than the Account concerned, regardless of whether the same is valid or bona fide, regardless of whether the same in whole or in part relates to the Account on which payment is being withheld or other Accounts or goods or services already paid for, and regardless of whether the same arises by reason of an act of God, civil strife, war, currency restriction, foreign political restriction or regulation, or the like, or any other reason.

EXHIBIT 1 - 001



1.16    **"Effective Date"** – See signature page.

1.17    **"Eligible Accounts"** – means an Account which is acceptable for an advance of the Purchase Price or portion thereof to be paid prior to its due date, all as determined by Purchaser, in its sole discretion.

1.18    **"Environmental Laws"** – any federal, state or local law, rule, regulation or order relating to pollution, waste disposal, industrial hygiene, land use or the protection of human health, safety, or welfare, plant life or animal life, natural resources, the environment or property.

1.19    **"Events of Default"** – shall have that meaning as set forth in Section 7.1 herein.

1.20    **"Initial Factoring Fee"** - See Schedule A, No. 6.

1.21    **"Initial Factoring Fee Period"** - See Schedule A, No. 7.

1.22    **"Initial Setup Fee"** - See Schedule A, No. 8.

1.23    **"Invalid Invoice Fee"** – ███████ whichever is higher, as liquidated damages for failure to comply with Section 4.6(a) herein.

1.24    **"Maximum Facility Limit Amount"** – See Schedule A, No. 9.

1.25    **"Minimum Monthly Sales Shortfall Fee"** – See Schedule A, No. 10.

1.26    **"Minimum Monthly Sales Volume"** – See Schedule A, No 11.

1.27    **"Missing Notation Fee"** – █████████████████████ the higher thereof, as liquidated damages for failure to comply with Section 2.7.

1.28    **"Misdirected Payment Fee"** – ██████████ of the amount of any payment on account of a purchased Account, ████████ the higher thereof which has been received by Seller and not delivered to Purchaser on the business day following receipt by Seller.

1.29    **"Obligations"** – shall mean and include each and all of the following: the obligation to pay and perform when due all debts and all obligations, liabilities, covenants, agreements, guaranties, warranties and representations of Seller to Purchaser, of any and every kind and nature, whether heretofore, now or hereafter owing, arising, due or payable from Seller to Purchaser; howsoever created, incurred, acquired, arising or evidenced; whether primary, secondary, direct, absolute, contingent, fixed, secured, unsecured, or otherwise; whether as principal or guarantor; liquidated or unliquidated; certain or uncertain; determined or undetermined; due or to become due; as a result of present or future advances or otherwise; joint or individual; pursuant to or caused by Seller's breach of this Agreement, or any other present or future agreement or instrument, or created by operation of law or otherwise; evidenced by a written instrument or oral; created directly between Purchaser and Seller or owed by Seller to a third party and acquired by Purchaser from such third party; monetary or nonmonetary.

1.30    **"Online Reporting Service"** – shall mean the system set up on Purchaser's website where Seller provides Purchaser with the pertinent data necessary for Purchaser to purchase Accounts under this Agreement and otherwise administer this Agreement.

1.31    **"Online Statement of Account"** – shall have that meaning as described in Section 2.8 herein.

1.32    **"Original Term"** – shall mean the term of this Agreement commencing on the Effective Date and concluding within the time frame as provided for in Schedule A, No. 12.

1.33    **"Over 90 Fee"** – See Schedule A, No. 19.

1.34    **"Place of Business, Location of Collateral"** – See Schedule A, No. 13.

1.35    **"Purchase Price"** – shall have that meaning as described in Section 2.2 herein.

1.36    **"Records"** – shall have that meaning set forth in Section 5.4 herein.

1.37    **"Renewal Term"** – shall mean each consecutive term as provided for in Schedule A, No. 14, and automatically renewing for each consecutive period thereafter.

1.38    **"Reserve"** – a bookkeeping account on the books of Purchaser representing an unpaid portion of the Purchase Price, maintained by Purchaser to ensure Seller's performance with the provisions hereof.

EXHIBIT 1 - 002



1.39 **"Trade Names and Styles"** – Shall mean the trade names and styles set forth in Schedule A. No. 15.

2. **Factoring.**

 **2.1.**   **Sale of Accounts.** Seller shall present to Purchaser Accounts for purchase pursuant to this Agreement in the Assignment Schedule. Seller agrees that it will do all of its business through Purchaser as Seller's sole factor and Seller hereby assigns and sells to Purchaser, as absolute owner, all Accounts. Purchaser shall be under no obligation to purchase Seller's Accounts and shall only purchase Accounts in its sole discretion. Unless Purchaser notifies Seller to the contrary as to a specific Account, all Accounts shall be deemed purchased by Purchaser upon presentment by Seller. Although an Account may appear on an Assignment Schedule multiple times, the Account is being purchased the first time such Account appears on an Assignment Schedule.

 **2.2.**   **Purchase Price of Accounts.** The Purchase Price for Accounts is the gross amount of the Account (the "Gross Invoice Amount") less all credits, discounts and allowances at any time issued, owing or granted to, or claimed or taken by the Account Debtor. The Purchase Price is due at the time an Account has been paid by the Account Debtor. The Purchase Price for an Eligible Account, or any portion thereof, may be paid in advance of the due date, which amount and payment in advance will be made in Purchaser's sole discretion. Any payment of any portion of the Purchase Price in advance of its due date shall not obligate the Purchaser to advance the Purchase Price, or any portion thereof, of any other Eligible Account at any time. Advances of the Purchase Price hereunder shall be made in amounts determined by Purchaser in its sole discretion and at no time exceed the Maximum Facility Limit Amount. All Accounts purchased during any time in which any portion of the Purchase Price for the Account has not given to Seller in advance of its due date shall be deemed to be an ineligible Account for which the Purchase Price shall be due Seller as provided in the second sentence of this Subsection.

 **2.3.**   **Factoring Fees.** Purchaser shall charge Seller the Initial Factoring Fee and Additional Factoring Fee according to the Initial Factoring Fee Period and Additional Fee Period, as provided for in Schedule A. Each Account purchased by Purchaser shall be subject to the Initial Factoring Fee, as provided for in Schedule A, which shall be fully earned upon its assessment. All factoring fees under this Agreement shall be computed and earned on the gross face amount of each Account purchased under this Agreement. The Initial Setup Fee shall be fully earned and payable upon execution of this Agreement.

 **2.4.**   **Calculation of Factoring Fees.** Seller will pay Purchaser Factoring Fees (hereinafter referred to as "Interest") on the Daily Balance. Interest will be calculated daily at a rate per annum equal to the amount provided for in Schedule A, No. 16 (the "Interest Rate") and will be charged to Seller's account on the last day of the month. However, the Base Rate will not be lower than the amount provided for in Schedule A, No. 17, at any time. The Interest Rate will also be charged to Seller on all Obligations, except those specifying a different rate, from the date incurred through the date paid. Any publicly announced decrease or increase in the Base Rate will result in an adjustment to the Interest Rate on the next business day. After the occurrence of an Event of Default and for so long as such Event of Default continues, all the Obligations will, at Purchaser's option, with or without the notice to Seller, bear interest at a rate per annum equal to the amount provided for in Schedule A, No. 5. Interest will be calculated on the basis of a 360-day year for the actual number of days elapsed. In no event will the total amount of interest received by Purchaser exceed the amount of interest permitted by applicable law and in the event excess interest is determined by a court of competent jurisdiction to have been paid by Seller to Purchaser, such excess interest will be applied as a credit against the outstanding Obligations and Seller will not have any action against Purchaser or any damages arising out of the payment or collection of such excess interest. If an Account or any payment is charged back to Seller after the collection date, Seller will pay Purchaser interest at the Interest Rate on such Account or on such payment.

 **2.5.**   **Reserve.** Purchaser shall charge and retain an amount equal to the inverse of the Advance Rate, of the gross face amount of each Account purchased from Seller, which amount shall be held as the Reserve. Purchaser may, from time to time, at its sole discretion, charge the aggregate Reserve with: (a) any losses which may be incurred in relation to any Account purchased hereunder; (b) any Account or portion thereof that Purchaser determines are not Eligible Accounts; (c) anticipated fees identified and payable under this Agreement; (d) any other obligation due to Purchaser under this Agreement; or (e) other amounts that Purchaser deems appropriate in its sole discretion. Purchaser agrees to maintain the Reserve mentioned herein, the maintenance of which, however, shall not vest the Seller any right, title, or interest herein, it being understood that the account shall be kept as a reserve to pay the Obligations of the Seller incurred under the provisions of this Agreement. Provided that there is no Event of Default, Purchaser, in its sole discretion, may initiate rebates to Seller from the Reserve. Purchaser, in its sole discretion, may adjust the percentage of the Reserve.

 **2.6.**   **Repurchase Rights.** Purchaser may require that Seller immediately repurchase, by payment of the then unpaid face amount of any purchased Account, together with any unpaid fees and other amounts owed relating to the purchased Account on demand, or at Purchaser's option, by Purchasers charge to the Reserve, upon (or at any time after) the following events: (a) an Account is not paid by the Account Debtor within ninety (90) days of the date set forth on the invoice for the purchased Account; (b) Seller has breached any warranties or promises in this Agreement with regard to an unpaid Account; (c) Seller and Account Debtor are involved in a Dispute of any kind, regardless of validity; (d) the Account Debtor asserts a claim of loss of any kind against Seller and/or Purchaser; and/or (e) an insolvency or other financial inability of the Account Debtor to pay. Any Accounts not paid within ninety (90) days of the date set forth on the invoice and not repurchased by Seller, shall incur the Over 90 Fee, as provided for in Schedule A.

EXHIBIT 1 - 003



2.7.   **Assignments and Other Documentation.** All bills and invoices for all Accounts assigned to or purchased by Purchaser hereunder shall bear the following legend: "This invoice has been sold and assigned to Sallyport Commercial Finance, LLC". In the event that Seller sends to an Account Debtor any invoice evidencing a purchased Account which does not contain such notation (or such other notation otherwise acceptable to Purchaser as provided for in this Section), it will be impracticable or extremely difficult to determine the resulting damages suffered by Purchaser. It is therefore agreed that Seller shall immediately pay to Purchaser as liquidated damages the Missing Notation Fee. Seller shall immediately provide to Purchaser such additional information as requested by Purchaser relating to any Account. All bills and invoices for all Accounts shall be in a form acceptable to Purchaser containing such terms and conditions as Purchaser requires.

2.8.   **Online Statement of Account.** Purchaser shall post all of Seller's account activity on Purchaser's website, which shall constitute Seller's Online Statement of Account. Purchaser shall not send Seller any hard copies of any activities which constitute Seller's Online Statement of Account. Provided that there is no Event of Default, Purchaser shall provide Seller with continuous access to view the Online Statement of Account. Seller shall be solely responsible for checking its Online Statement of Account. If Seller disputes any entry on the Online Statement of Account it shall, within thirty (30) days after the first posting of the event, send to Purchaser a written exception to such event. Unless Purchaser receives a timely written exception to the activity posted to the Online Statement of Account, within thirty (30) days after it is first posted, the Online Statement of Account shall become an account stated and be deemed accepted by Seller and shall be conclusive and binding upon the Seller.

2.9.   **Credits and Returns.** Seller will issue credits only with Purchaser's prior written approval, and only if claimed by the Account Debtor. In addition to the Accounts, Seller hereby sells, assigns and transfers to Purchaser all of its right, title and interest in and to the goods the sale of which resulted in the creation of Accounts, and in all such goods that may be returned by Account Debtors, and all causes of action and rights in connection therewith which Seller now has or may hereafter acquire, including its rights of reclamation, replevin and stoppage in transit and the rights as an unpaid vendor or lienor. Any goods so recovered shall be treated as returned goods, and shall be set aside, marked with Purchaser's name and held for Purchaser's account as owner. Seller shall notify Purchaser promptly of all such returns.

2.10.   **Term of this Agreement, Minimum Monthly Sales Shortfall Fee.** This Agreement shall be in effect for the Original Term and shall automatically renew for consecutive Renewal Terms unless terminated by Seller or Purchaser as follows. Seller may terminate this Agreement upon providing Purchaser with written notice not more than ninety (90) days and not less than Sixty (60) days prior to the end of the Original Term or any Renewal Term, which written notice shall clearly state its intention to terminate at the end of the current term. Purchaser may terminate this Agreement upon providing Seller written notice of not less than Thirty (30) days prior to the end of the Original Term or any Renewal Term, which notice shall clearly state its intention to terminate at the end of the Current Term. In addition, Purchaser may terminate this Agreement at any time after an Event of Default. As consideration for Purchaser making the necessary financial accommodations and foregoing other factoring opportunities available in the market place, Seller agrees to pay the Purchaser during the Original Term and for each Renewal Term, the Minimum Monthly Sales Shortfall Fee if, at the end of each monthly period, the actual monthly sales volume is less than the Minimum Monthly Sales Volume. Purchaser may charge Seller with the amount of such deficiency in the form of an assessment of the Minimum Monthly Sales Shortfall Fee. If Seller terminates this Agreement at any time prior to the expiration of the Original Term, or any subsequent Renewal Term, or if the Purchaser terminates this Agreement at any time upon the occurrence of an Event of Default, Seller shall remain obligated to pay the total of the Minimum Monthly Sales Shortfall Fee for the time remaining for the Original Term or Renewal Term, as the case may be.

2.11   **Other Operational Fees and Costs.** Seller shall pay Purchaser all other fees and costs incurred hereunder immediately when due, including but not limited to all fees and costs set forth in Schedule A.

3.   **Collateral, Grant of Security Interest, ACH Authorization.**

3.1.   **Collateral.** As security and collateral for the Obligations, Seller hereby grants Purchaser a continuing security interest in, and assigns to Purchaser, all of Seller's right, title and interest in and to the Collateral.

3.2.   **Filing Authorization.** Seller hereby authorizes Purchaser to file any document it deems necessary to perfect its security interest in the Collateral, including but not limited to UCC-1 financing statements and any applicable amendments or continuation statements.

3.3.   **ACH Authorization.** In order to satisfy any of the Obligations and facilitate the purchase of Accounts, Purchaser is hereby authorized by Seller to initiate electronic debit or credit entries through the ACH. This authorization is irrevocable.

4.   **Representations, Warranties and Covenants of Seller.** To induce Purchaser to enter into this Agreement, Seller represents and warrants that each of the following representations and warranties now is and hereafter will continue to be true and correct in all respects and Seller has and will timely perform each of the following covenants:

4.1.   **Existence and Power.** If Seller is a partnership, limited liability company or corporation, Seller is and will continue to be duly authorized, validly existing and in good standing under the laws of the jurisdiction of its organization. Seller is and will continue to be qualified and licensed in all jurisdictions in which the nature of the business transacted by it, or the ownership or leasing of its

EXHIBIT 1 - 004



property, make such qualification of licensing necessary, and Seller has and will continue to have all requisite power and authority to carry on its business as it is now, or may hereafter be, conducted.

**4.2.    Authority.** Seller is, and will continue to be, duly empowered and authorized to enter into, and grant security interests in its property, pursuant to and perform its obligations under this Agreement, and all other instruments and transactions contemplated hereby or relating hereto. The execution, delivery and performance by Seller of this Agreement, and all other instruments and transactions contemplated hereby or relating hereto, have been duly and validly authorized, are enforceable against the Seller in accordance with their terms, and do not and will not violate any law or any provision of, nor be grounds for acceleration under, any agreement, indenture, note or instrument which is binding upon Seller, or any of its property, including without limitation, Seller's Operating Agreement, Partnership Agreement, Articles of Incorporation, By-Laws and any Shareholder Agreements (as applicable).

**4.3.    Name, Trade Names and Styles.** Seller has set forth above its absolutely true and correct name. Set forth in Schedule A, No. 15, is each prior true name of Seller and each fictitious name, trade name and trade style by which Seller has been, or is now known, or has previously transacted, or now transacts business.

Seller shall provide Purchaser with thirty (30) days' advance written notice before doing business under any other name, fictitious name, trade name or trade style. Seller has complied, and will hereafter comply, with all laws relating to the conduct of business under, the ownership of property in, and the renewal or continuation of the right to use, a corporate, fictitious or trade name or trade style.

**4.4.    Place of Business; Location of Collateral.** Seller's books and records, including, but not limited to, the books and records relating to Seller's Accounts are and will be kept and maintained at Seller's Address unless and until Purchaser shall otherwise consent in writing. In addition to Seller's Address, Seller has places of Business and Collateral located only at the following locations: See Schedule A, No. 13.

Seller will provide Purchaser with at least thirty (30) days advance written notice in the event Seller moves the Collateral, or obtains, opens or maintains any new or additional place(s) for the conduct of Seller's business or the location of any Collateral, or closes any existing place of business.

**4.5.    Title to Collateral; Liens.** With the exception of Accounts purchased hereunder where title vests with Purchaser, Seller is now, and will at all times hereafter be, the true, lawful and sole owner of all the Collateral. Except for the security interest granted to Purchaser, the Collateral now is and will hereafter remain, free and clear of any and all liens, charges, security interests, encumbrances and adverse claims. Except as expressly provided to the contrary in this Section, Purchaser now has, and will hereafter continue to have, a fully perfected and enforceable first priority security interest in all of the Collateral, and Seller will at all times defend Purchaser and the Collateral against all claims and demands of others.

**4.6.    Accounts.** Each and every Account assigned to Purchaser shall, on the date the assignment is made and thereafter, comply with all of the following representations, warranties and covenants: (a) each Account represents an undisputed bona fide existing unconditional obligation of the Account Debtor created by the sale, delivery, and acceptance of goods or the rendition of services in the ordinary course of Seller's business; (b) each Account is owned by Seller free and clear of any and all deductions, Disputes, liens, security interests and encumbrances; (c) the Account Debtor has received and accepted the goods sold and services rendered which created the Account and the invoice therefore and will pay the same without any Dispute; (d) no Account Debtor on any Account is a shareholder, director, partner or agent of Seller, or is a person or entity controlling, controlled by or under common control with Seller; and (e) no Account is owed by an Account Debtor to whom Seller is or may become liable in connection with goods sold or services rendered by the Account Debtor to Seller or any other transaction or dealing between the Account Debtor and Seller. Immediately upon discovery by Seller that any of the foregoing representations, warranties, or covenants are or have become untrue with respect to any Account, Seller shall immediately give written notice thereof to Purchaser. In the event that Seller breaches the warranty contained in Section 4.6(a), it will be impracticable or extremely difficult to determine the resulting damages suffered by Purchaser. It is, therefore, agreed that Seller shall immediately pay to Purchaser as liquidated damages the Invalid Invoice Fee for each Purchased Account which violates the warranty contained in Section 4.6(a). Seller will promptly notify Purchaser of any Dispute and settle all Disputes, at Seller's own cost and expense (including attorneys' fees), and Seller will immediately pay Purchaser the amount of all Accounts affected by any Dispute. Any Dispute not settled by Seller within thirty (30) days after the maturity of the invoice affected thereby may, if Purchaser so elects, be settled, compromised, adjusted or litigated by Purchaser directly with the Account Debtor or other complainant for Seller's account and risk and upon such terms and conditions as Purchaser, in Purchaser's sole discretion, deems advisable. Purchaser is under no duty to investigate the validity or merits of any Dispute. Purchaser may also, in Purchaser's discretion, take possession of and sell or cause the sale of any returned or recovered merchandise, at such prices, upon such terms and to such purchasers as Purchaser deems proper, and, in any event, to charge the deficiency, costs and expenses thereof, including attorneys' fees, to Seller. In addition to all other rights Purchaser has hereunder, whenever there is any Dispute, or if any Account as to which Purchaser has not assumed the risk of nonpayment is unpaid at its maturity, Purchaser may charge the amount of the Account so affected or unpaid (as well as all other Accounts due and owing from that Account Debtor) to Seller; but such chargeback shall not be deemed nor shall it constitute a reassignment to Seller of the Account affected thereby, and title thereto and to the Goods giving rise thereto shall remain with Purchaser until Purchaser is fully reimbursed, regardless of the date or dates on which Purchaser charges back the amount of any Account with respect to which there is any Dispute, or the amount owing from an Account Debtor which has raised any Dispute.

EXHIBIT 1 - 005



**4.7.**     **Documents Genuine, Legal Compliance, Disposition.** All statements made and all unpaid balances appearing in all invoices, instruments and other documents evidencing the Accounts are and shall be true and correct and all such invoices, instruments and other documents and all of Seller's books and records are and shall be genuine and in all respects what they purport to be and all signatories and endorsers have full capacity to contract. All sales and other transactions underlying or giving rise to each Account shall fully comply with all applicable laws and governmental rules and regulations. All signatures and endorsements on all documents, instruments, and agreements relating to all Accounts are and shall be genuine and all such documents, instruments and agreements are and shall be legally enforceable in accordance with their terms. Seller has not, and shall not hereafter sell, assign, pledge, encumber, forgive (completely or partially), settle for less than payment in full, or transfer or dispose of any Account, or agree to do any of the foregoing.

**4.8.**     **Maintenance of Collateral.** Seller has maintained and will hereafter maintain the Collateral and all of Seller's assets useful or necessary in the conduct of Seller's business in good working order and condition, at Seller's sole cost and expense. Seller will not use the Collateral or any of Sellers's other properties, or any part thereof, in any unlawful business or for any unlawful purpose and will not secrete or abandon the Collateral, such properties, or any part thereof. Seller will not store any of the Collateral with any warehouseman or any other third party without Purchaser's prior written consent. Seller will immediately advise Purchaser in writing of any event causing loss or depreciation and of any material adverse change in the condition of the Collateral or of any of Seller's other properties.

**4.9.**     **Books and Records.** Seller has maintained and will continue to maintain at Seller's Address complete and accurate books and records comprising a standard and modern accounting system in accordance with generally accepted accounting principles that accurately and correctly record and reflect Seller's income, expenses, liabilities, operations, accounts, and ownership and location of the Collateral and any other asset now or hereafter belonging to Seller. All reserves (including, without limitation, reserves for bad debts, depreciation and taxes) provided for upon Seller's books and records are now, and will hereafter be, maintained in sufficient amounts in accordance with generally accepted accounting principles consistently applied. All such books and records and all documents relating to any of the Collateral are and will continue to be genuine and in all respects what they purport to be and will contain such information as may be requested by Purchaser.

**4.10.**     **Financial Condition and Statements.** All financial statements (including, but not limited to, balance sheets, profit and loss figures, and accountants' comments) now or hereafter delivered to Purchaser have been, and will be, prepared in conformity with generally accepted accounting principles and now and hereafter will completely and accurately reflect the financial condition, contingent liabilities and results of Seller and Seller's operations at the times and for the periods therein stated. Seller is now, and, at all times hereafter, will continue to be solvent. The covenant set forth in the preceding sentence shall be deemed breached if at any time Purchaser estimates that the value of all Seller's assets, if sold in bulk for liquidation purposes, would not be sufficient to pay the total of Seller's liabilities (whether or not such liabilities are then due) or if Purchaser has determined that Seller has failed to pay promptly when due all loans and all debts to trade and other creditors (unless Purchaser is satisfied that the reason for such nonpayment is a bona fide Dispute between Seller and any of its creditors concerning the amount due). Seller shall provide Purchaser with copies of all financial statements and any other documents reflecting Seller's financial situation within five (5) days after Purchaser's request.

**4.11.**     **Tax Returns.** Seller has timely filed, and will hereafter timely file, all tax returns and reports required by foreign, federal, state or local law. Seller has timely paid, and will hereafter timely pay, all foreign, federal, state and local taxes, assessments, deposits and contributions now or hereafter owed by Seller (including, but not limited to, income, franchise, personal property, real property, FICA, excise, withholding, sales and use taxes). Seller may defer payment of any contested taxes provided that Seller: (i) in good faith contests Seller's obligation to pay such taxes by appropriate proceedings promptly and diligently instituted and conducted; (ii) notifies Purchaser in writing of the commencement and of any material development in such proceedings; and (iii) posts bonds or takes any other steps required to keep such contested taxes from becoming a lien against or charge upon any of the Collateral or other properties of Seller. Seller is unaware of any claims or adjustments proposed for any of Seller's prior tax years which could result in additional taxes becoming due and payable by Seller. When requested, Seller will furnish Purchaser with proof satisfactory to Purchaser of Seller's making the payment or deposit of all such taxes, such proof to be delivered within five (5) days after the due date established by law for each such payment or deposit. In the event Seller fails or is unable to pay or deposit such taxes, Purchaser may, but is not obligated to, pay the same and treat all such advances as an additional advance to Seller. Such advances shall incur fees as outlined in this Agreement.

**4.12.**     **Compliance with Law, and Environmental Laws.** Seller has complied, and will hereafter comply, with all provisions of all foreign, federal, state and local law relating to Seller, including, but not limited to, those relating to Seller's ownership of real or personal property, conduct and licensing of Seller's business and employment of Seller's personnel. Seller has been and is currently in compliance with all applicable Environmental Laws, including obtaining and maintaining in effect all permits, licenses or other authorizations required by applicable Environmental Laws. There are no claims, liabilities, investigations, litigation, administrative proceedings, whether pending or threatened, or judgments or orders relating to any hazardous materials asserted or threatened against Seller or relating to any real property currently or formerly owned, leased or operated by Seller.

**4.13.**     **Litigation.** There is no claim, suit, litigation, proceeding or investigation pending or threatened by or against or affecting Seller in any court or before any regulatory commission, board or other governmental agency (or any basis therefore known to Seller) which might result, either separately or in the aggregate, in any adverse change in the business, prospects or condition of Seller, or in any impairment in the ability or right of Seller to carry on its business in substantially the same manner as it is now being conducted. Seller will immediately inform Purchaser in writing of any claim, proceeding, litigation or investigation hereafter threatened or instituted by or against Seller.

EXHIBIT 1 - 006



**4.14.      Complete Disclosure.** There is no fact which Seller has not disclosed to Purchaser in writing which could materially adversely affect the properties, business or financial condition of Seller or any of the Collateral or which is necessary to disclose in order to keep the foregoing representations and warranties from being misleading.

**4.15.      Continuing Effect.** All representations, warranties and covenants of Seller contained in this Agreement and any other agreement with Purchaser shall be true and correct at the time of the effective date of each such agreement and shall be deemed continuing and shall remain true, correct and in full force and effect until payment and satisfaction in full of all of the Obligations, and Seller acknowledges that Purchaser is and will be expressly relying on all such representations, warranties and covenants in making advances to Seller.

**4.16.      No Violation of Federal or State Law.** No Account or any contract related thereto in any manner contravenes any federal, state or local law, rule or regulation applicable thereto.

**4.17.      Notification of Violations.** Seller shall within five (5) business days notify Purchaser in writing of any violation of any law, statute, regulation or ordinance of any governmental entity, or any agency thereof, applicable to Seller which may materially affect the Collateral or Seller's operations.

**5.      <u>Additional Continuing Duties of Seller.</u>**

**5.1.      Duties Regarding Accounts.**

**5.1.1.**      Seller shall deliver to Purchaser schedules and assignments of all Accounts on Purchaser's standard form; provided, however, that Seller's failure to execute and deliver the same shall not affect or limit Purchaser's security interest and other rights in and to all of Seller's Accounts, nor shall Purchaser's failure to purchase a specific Account affect or limit Purchaser's security interest and other rights therein. Together with each such schedule and assignment, or later if requested by Purchaser, Seller shall furnish Purchaser with copies (or, at Purchaser's request, originals) of all contracts, orders, invoices, and other similar documents, and all original shipping instructions, delivery receipts, bills of lading, other evidence of delivery, time records, and any other documents requested by Purchaser for any goods or services which gave rise to such Accounts, and Seller warrants the genuineness of all of the foregoing. Seller shall also furnish to Purchaser an aged accounts receivable trial balance in such form and as often as Purchaser requests, and Seller agrees that Purchaser may from time to time verify directly with the respective Account Debtors the validity, amount and any other matters relating to the Accounts by means of mail, email, telephone or otherwise, either in the name of Seller or Purchaser or such other name as Purchaser may choose. In addition, Seller shall, at Purchaser's request, immediately deliver to Purchaser the originals of all instruments, chattel paper, security agreements, guaranties and other documents and property evidencing or securing any Accounts, along with all necessary endorsements (all of which shall be with recourse).

**5.1.2.**      Purchaser shall have the sole and exclusive right to collect the Accounts. All monies, checks, notes, drafts, money orders, acceptances and other things of value and items of payment, together with any and all related vouchers, identifications, communications and other data, documents and instruments, which for any reason may be received by Seller (or by any receiver, trustee, custodian or successor in interest of Seller, or any person acting on behalf of Seller) in payment of, or in reference to, the Accounts shall belong to Purchaser, and, not later than one (1) day after receipt thereof by Seller, Seller shall deliver the same to Purchaser, at Purchaser's office in the original form in which the same are received, together with any necessary endorsements, including, without limitation, the endorsement of Seller, all of which endorsements shall be with full recourse. Seller shall have no right, and agrees not to commingle any of the proceeds of any of the collections of the Accounts with Seller's own funds and Seller agrees not to use, divert or withhold any such proceeds. Seller hereby divests itself of all dominion over the Accounts and the proceeds thereof and collections received thereon. The parties hereto agree that if any payment on account of a purchased Account which has been received by Seller is not delivered in kind to Purchaser on the next business day following the date of receipt by Seller, it will be impracticable or extremely difficult to determine the resulting damages suffered by Purchaser. It is therefore agreed that in the event of such a breach by Seller, Seller shall immediately pay Purchaser the Misdirected Payment Fee as liquidated damages for Seller's breach of the foregoing warranty.  Seller shall make entries on its books and records in form satisfactory to Purchaser disclosing the absolute and unconditional assignment of all Accounts to Purchaser. Purchaser may charge to the Obligations all costs and expenses incurred by Purchaser in collecting Accounts, including, without limitation, travel expenses, postage, telephone and telegraph charges, salaries of Purchaser personnel, and attorneys' fees.

**5.1.3.**      Any goods which are returned by an Account Debtor or otherwise recovered by or for the benefit of Seller shall be physically segregated, posted with written notice that they are subject to Purchaser's security interest, and held in trust for Purchaser for such disposition as Purchaser shall direct. Seller shall promptly notify Purchaser of all such returns and recoveries. No return of merchandise shall be accepted by Seller and no sale of returned goods shall be made by Seller without Purchaser's prior written consent. Purchaser shall have the right acting alone to accept the return of any goods directly from an Account Debtor, without notice to or consent by Seller, and neither the delivery by Seller of returned or recovered goods to Purchaser, nor the acceptance by Purchaser of returns directly from an Account Debtor shall in any way affect Seller's liability to Purchaser on account of the Obligations.

**5.1.4.**      Seller shall promptly notify Purchaser of all Disputes and claims with respect to the Accounts. Seller shall not, without Purchaser's prior written consent, compromise or adjust any Account, or grant any discount, credit, allowance, or extension of time for payment to any Account Debtor. Purchaser shall have the right, in its sole and absolute discretion, to settle, accept

EXHIBIT 1 - 007



reduced amounts and adjust Disputes and claims directly with, and give releases on behalf of Seller to Account Debtors for cash, credit or otherwise, upon terms which Purchaser, in its sole and absolute discretion, considers advisable, and in such case, Purchaser will credit Seller's account with only the net amounts of cash received by Purchaser in payment of the Accounts, less all costs and expenses (including, without limitation, attorneys' fees) incurred by Purchaser in connection with the settlement or adjustment of such Disputes and the collection of such Accounts.

    **5.2.**    **Insurance.** Seller shall, at all times, and for such periods of time as Purchaser may require, at Seller's expense, insure all of the insurable Collateral, and all of Seller's books and records, by financially sound and reputable insurers acceptable to Purchaser, in the form of extended coverage policies against loss or damage by theft, embezzlement, fire, explosion, flood, sprinkler, or any other insurable event or risk that Purchaser may require, to the fullest extent of the insurable value thereof. All such insurance policies shall name Purchaser as the exclusive loss payee, shall provide that proceeds payable thereunder shall be payable directly to Purchaser unless notarized written authority to the contrary is obtained from Purchaser, and shall also provide that no act or default of Seller or any other person shall affect the right of Purchaser to recover thereunder. Upon receipt of the proceeds of any such insurance, Purchaser shall apply such proceeds in reduction of the Obligations, whether or not then due, in such order and manner as Purchaser shall determine, in its sole discretion. Seller shall provide Purchaser with the original or a certificate of each such policy of insurance which shall contain a provision requiring the insurer to give not less than twenty (20) days advance written notice to Purchaser in the event of cancellation or termination of the policy for any reason whatsoever. If Seller fails to provide or pay for any such insurance, Purchaser is authorized (but not obligated) to procure the same at Seller's expense. Seller agrees to deliver to Purchaser, promptly as rendered, true and correct copies of all reports made to all insurance companies.

    **5.3.**    **Reports, Certificates.** At its sole cost and expense, Seller shall report, in form satisfactory to Purchaser, such information as Purchaser may request regarding the Collateral; such reports shall be for such periods, shall reflect Seller's records at such time and shall be rendered with such frequency as Purchaser may designate. At its sole cost and expense, Seller shall promptly provide Purchaser with all such other information concerning its affairs as Purchaser may request from time to time hereafter, and shall immediately notify Purchaser of any adverse change in Seller's financial condition and or any condition or event which constitutes a breach or an Event of Default under this Agreement. All reports furnished to Purchaser shall be complete, accurate and correct in all respects at the time furnished.

    **5.4.**    **Access to Collateral, Books and Records.** At any and all times, Purchaser, and any person designated by Purchaser, shall have free access to, and the right without hindrance or delay, to inspect, audit, examine and test the Collateral and any other property of Seller, wherever located, and to inspect, audit, check, copy and make extracts from Seller's and Seller's accountant's books, records and accounts (hereinafter collectively the "Records") and all computer data containing the same, no matter where the Records are stored. Seller hereby irrevocably authorizes and directs any person including, but not limited to, any of Seller's directors, members, officers, employees, agents, accountants and attorneys having possession or control of any of the Records to physically deliver them to Purchaser or any person designated by Purchaser upon Purchaser's request or, at the option of Purchaser, make them available to Purchaser wherever the Records may be located. Seller waives the benefit of any evidentiary privilege precluding or limiting the disclosure, divulgence or delivery of any of the Records. Seller shall pay Purchaser the Audit Fee immediately upon accrual.

    **5.5.**    **Prohibited Transactions.** Seller shall not hereafter, without Purchaser's prior written consent: merge, consolidate, dissolve, acquire any other corporation; enter into any transaction not in the usual course of business; make any investment in any securities other than securities of the United States of America; guarantee or otherwise become in any way liable with respect to the obligations of another party or entity; pay or declare any dividends upon Seller's stock; redeem, retire, purchase or otherwise acquire, directly or indirectly, any of Seller's stock; make any change in Seller's name, identity, corporate or capital structure; alter any of Seller's business objectives, purposes, or operations or financial structure in such a manner as to adversely affect the ability of Seller to pay or perform any of the Obligations; lend or distribute any of Seller's property or assets; incur any debts, outside of the ordinary course of Seller's business, except extensions of existing debts and interest thereon; sell, lease, transfer, assign or otherwise dispose of any of the Collateral; or make any capital expenditures or leasehold improvements at a cost in the aggregate in any twelve-month period of more than $75,000.

    **5.6.**    **Notification of Changes.** Seller will promptly notify Purchaser in writing of any change of its officers, members, directors, partners, or key employees, a death of any partner or joint venturer (if Seller is a partnership or joint venture), any purchase out of the regular course of Seller's business and any adverse or material change in the business or financial affairs of Seller.

    **5.7.**    **Litigation Cooperation.** Should any suit or proceeding be instituted by or against Purchaser with respect to any Collateral or for the collection of enforcement of any Account, or in any manner relating to Seller, Seller shall, without expense to Purchaser, and wherever and whenever designated by Purchaser, make available Seller and its officers, employees and agents and Seller's books, records and accounts to the extent that Purchaser may deem necessary in order to prosecute or defend any such suit or proceeding.

    **5.8.**    **Execute Additional Documentation.** Seller agrees, at its sole cost and expense, on demand by Purchaser, to do all things and to execute all such security agreements, control agreements, deeds of trust, mortgages, assignments, certificates of title, applications for vehicle titles, affidavits, reports, notices, schedules of Accounts and all other documents, in form satisfactory to Purchaser, as Purchaser, in its sole and absolute discretion, may deem necessary or useful in order to perfect and maintain Purchaser's perfected first-priority security interest in the Collateral, and in order to fully consummate all of the transactions contemplated under this Agreement.

EXHIBIT 1 - 008



6.     **Application of Payments.** As Accounts are paid by Account Debtors, such sums shall be applied to satisfy the Account due from the Account Debtor that Purchaser purchased from Seller hereunder, as further clarified below.  The Purchaser shall be entitled to all such collections.  Seller shall not have any interest in such payments made by Account Debtors once the Account is sold to Purchaser hereunder.  Once Purchaser receives payment on an Account, Purchaser will apply the amount due Seller against the amount Seller owes Purchaser for Obligations.  Checks, instruments and all other non-cash payments delivered to Purchaser in payment or on account of the Accounts or the Obligations constitute conditional payment only until such items are actually paid in cash to Purchaser.  For the purpose of computing fees earned by Purchaser, credit therefore and for bank wire transfers, shall be given after receipt by Purchaser, as provided for in Schedule A, No. 18.  All payments made by or on behalf of, and all credits due to Seller, may be applied and reapplied in whole or in part to any of the Obligations to such extent and in such manner as Purchaser shall determine in its sole discretion. Purchaser shall have the continuing exclusive right to apply and reapply any and all such payments in such manner as Purchaser shall determine in its sole discretion, notwithstanding any entry by Purchaser upon any of its books and records. Any payments received on any Account not eligible to be factored by Purchaser shall be placed in the Reserve. Any payments received on any Account eligible to be factored by Purchaser, but not received by Purchaser, will be assessed an Initial Factoring Fee.

7.     **Events of Default and Remedies.**

7.1.     **Events of Default.** The occurrence of any one of more of the following shall constitute an Event of Default hereunder: (a) Seller fails to pay or perform any Obligation as and when due; (b) there shall be commenced by or against Seller any voluntary or involuntary case under the United States Bankruptcy Code, or any assignment for the benefit of creditors, or appointment of a receiver or custodian for any of its assets, or Seller makes or sends notice of a bulk transfer; (c) Seller or any guarantor of the Obligations shall become insolvent in that its debts are greater than the fair value of its assets, or Seller is generally not paying its debts as they become due or is left with unreasonably small capital; (d) any lien, garnishment, attachment, execution or the like is issued against or attaches to the Seller. Accounts purchased under this Agreement, or the Collateral; (e) Seller shall breach any covenant, agreement, warranty, or representation set forth herein; (f) Seller delivers any document, financial statement, schedule or report to Purchaser which is false or incorrect in any material respect; (g) Purchaser, at any time, acting in good faith and in a commercially reasonable manner, deems itself insecure; or (h) any present or future guarantor of the Obligations revokes, terminates or fails to perform any of the terms of any guaranty, endorsement or other agreement of such party in favor of Purchaser or any affiliate of Purchaser.

7.2.     **Remedies.** Upon the occurrence of any Event of Default, and at any time thereafter, Purchaser, at its option, and without notice or demand of any kind (all of which are hereby expressly waived by Seller) may do any one or more of the following: (a) cease advancing money or extending credit to or for the benefit of Seller under this Agreement, and any other document or agreement; (b) accelerate and declare all or any part of the Obligations to be immediately due, payable, and performable, notwithstanding any deferred or installment payments allowed by any instrument evidencing or relating to any Obligation; (c) take possession of any or all of the Collateral wherever it may be found, and for that purpose Seller hereby authorizes Purchaser without judicial process to enter onto any of the Seller's premises without hindrance to search for, take possession of, keep, store, or remove any of the Collateral and remain on such premises or cause a custodian to remain thereon in exclusive control thereof without charge for so long as Purchaser deems necessary in order to complete the enforcement of its rights under this Agreement or any other agreement; provided, however, that should Purchaser seek to take possession of any or all of the Collateral by Court process or through a receiver, Seller hereby irrevocable waives: (i) any bond and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession; (ii) any demand for possession prior to the commencement of any suit or action to recover possession thereof; and (iii) any requirement that Purchaser retain possession of and not dispose of any such Collateral until after trial or final judgment; (d) require Seller to assemble any or all of the Collateral and make it available to Purchaser at a place or places to be designated by Purchaser which is reasonably convenient to Purchaser and Seller, and to remove the Collateral to such locations as Purchaser may deem advisable; (e) place a receiver in exclusive control of Seller's business and/or any or all of the Collateral, in order to assist Purchaser in enforcing its rights and remedies; (f) sell, ship, reclaim, lease or otherwise dispose of all or any portion of the Collateral in its condition at the time Purchaser obtains possession or after further manufacturing, processing or repair; at any one or more public and/or private sale(s) (including execution sales); in lots or in bulk; for cash, exchange for other property or on credit; and to adjourn any such sale from time to time without notice other than oral announcement at the time scheduled for sale. Purchaser shall have the right to conduct such disposition on Seller's premises without charge for such time or times as Purchaser deems fit, or on Purchaser's premises, or elsewhere and the Collateral need not be located at the place of disposition. Purchaser may directly or through any affiliated company purchase or lease any Collateral at any such public disposition and, if permissible under applicable law, at any private disposition. Any sale or other disposition of Collateral shall not relieve Seller of any liability Seller may have if any Collateral is defective as to title or physical condition at the time of sale; (g) demand payment of, and collect any Accounts, Instruments, Chattel Paper, Supporting Obligations and General Intangibles comprising part or all of the Collateral; or (h) demand and receive possession of any of Seller's federal and state income tax returns and the books, records and accounts utilized in the preparation thereof or referring thereto. Any and all attorneys' fees, expenses, costs, liabilities and obligations incurred by Purchaser with respect to the foregoing shall be added to and become part of the Obligations, and shall be due on demand.  In the event that Seller commits any Event of Default, and Purchaser elects to terminate this Agreement or this Agreement is otherwise terminated early for any reason, it will be impracticable or extremely difficult to calculate the resulting damages upon such termination. Therefore, the parties agree that Seller shall pay Purchaser an Early Termination Fee, calculated as five percent (5%) of the Maximum Facility Limit Amount, as liquidated damages for any early termination of this Agreement (the "Early Termination Fee").

EXHIBIT 1 - 009



**7.3.** **Application of Proceeds from Disposition or Collection of Collateral.** The proceeds received by Purchaser from the disposition or collection of any of the Collateral shall be applied to such extent and in such manner as Purchaser shall determine in its sole discretion. If any deficiency shall arise, Seller shall remain liable to Purchaser therefore. In the event that, as a result of the disposition of any of the Collateral, Purchaser directly or indirectly enters into a credit transaction with any third party, Purchaser shall have the option, exercisable at any time, in its sole discretion, of either reducing the Obligations by the principal amount of such credit transaction or deferring the reduction thereof until the actual receipt by Purchaser of cash therefore from such third party.

**7.4.** **Online Access.** Upon an Event of Default, all of Seller's rights and access to any online internet services that Purchaser makes available to Seller shall be provisional pending Seller's curing of all such Events of Default and Purchaser may elect to terminate Seller's online access as provided for herein. During such period of time, Purchaser may limit or terminate Seller's access to online services. Seller acknowledges that the information Purchaser makes available to Seller through online internet access, both before and after an Event of Default, constitutes and satisfies any duty to respond to a request for accounting or request regarding a statement of account that is referenced in the UCC.

**7.5.** **Standards of Commercial Reasonableness.** After an Event of Default, the parties acknowledge that it shall be presumed commercially reasonable and Purchaser shall have no duty to undertake to collect any Account, including those in which Purchaser receives information from an Account Debtor that a Dispute exists. Furthermore, in the event Purchaser undertakes to collect or enforce an obligation of an Account Debtor or any other person obligated on the Collateral and ascertains that the possibility of collection is outweighed by the likely costs and expenses that will be incurred, Purchaser may at any such time cease any further collection efforts and such action shall be considered commercially reasonable. Before Seller may, under any circumstances, seek to hold Purchaser responsible for taking any uncommercially reasonable action, Seller shall first notify Purchaser in writing, of all of the reasons why Seller believes Purchaser has acted in any uncommercially reasonable manner and advise Purchaser of the action that Seller believes Purchaser should take.

**7.6.** **Formation of New Entity.** In the event Seller or any one or more of its principals, officers or directors during the term of this Agreement or while Seller remains liable to Purchaser for any Obligations under the Agreement or arising out of or related to the Agreement, (i) forms a new entity;  or (ii) has failed to disclose to Purchaser at the time of the Effective Date of this Agreement an existing entity, that does business similar to that of Seller, whether in the form of a corporation, partnership, limited liability company or otherwise, such entity shall be deemed to have expressly assumed the obligations due Purchaser by Seller under the Agreement.  Upon the formation of such new entity, Purchaser, in addition to all of its available remedies, shall be deemed to have been granted an irrevocable power of attorney with authority to file a new financing statement with the appropriate secretary of state or UCC filing office naming the newly formed successor business or undisclosed existing business, as a debtor or new debtor.  Purchaser shall have the right to notify the successor entity's or undisclosed existing entity's Account Debtors of Purchaser's security interest, its right to collect all Accounts, and to notify any new secured party who has sought to obtain a competing security interest of Purchaser's right in such entity's assets. Seller shall indemnify Purchaser, pursuant to Section 10.5 herein, from any claims against Purchaser which arises out of Purchaser exercising any of its rights hereunder.

**7.7.** **Remedies Cumulative.** In addition to the rights and remedies set forth in this Agreement, Purchaser shall have all the other rights and remedies accorded a secured party under the UCC and under any and all other applicable laws and in any other instrument or agreement now or hereafter entered into between Purchaser and Seller and all of such rights and remedies are cumulative and none is exclusive. Exercise or partial exercise by Purchaser of one or more of its rights or remedies shall not be deemed an election, nor bar Purchaser from subsequent exercise or partial exercise of any other rights or remedies. The failure or delay of Purchaser to exercise any rights or remedies shall not operate as a waiver thereof, but all rights and remedies shall continue in full force and effect until all of the Obligations have been fully paid and performed.

**8.** **Power of Attorney.** Seller grants to Purchaser an irrevocable power of attorney coupled with an interest authorizing and permitting Purchaser (acting through any of its employees, attorneys or agents) at any time, at its option but without obligation, with or without notice to Seller, and at Seller's sole expense, to do any or all of the following, in Seller's name or otherwise: (a) execute on behalf of Seller any document that Purchaser may, in its sole discretion, deem advisable in order to perfect, maintain or improve Purchaser's security interests in the Collateral or other real or personal property intended to constitute Collateral, or in order to exercise a right of Seller or Purchaser, or in order to fully consummate all the transactions contemplated under this Agreement, and all other present and future agreements; (b) at any time after the occurrence of an Event of Default, execute on behalf of Seller any document exercising, transferring or assigning any option to purchase, sell or otherwise dispose of or to lease (as lessor or lessee) any real or personal property; (c) execute on behalf of Seller, any invoices relating to any Account, any draft against any Account Debtor and any notice to any Account Debtor, any proof of claim in bankruptcy, any notice of lien, claim of mechanic's, materialman's or other lien, or assignment of satisfaction of mechanic's, materialman's or other lien; (d) take control in any manner of any cash or non-cash items of payment or proceeds of Collateral; endorse the name of Seller upon any instruments, notes, acceptances, checks, drafts, money orders, bills of lading, freight bills, chattel paper or other documents, evidence of payment or Collateral that may come into Purchaser's possession; (e) upon the occurrence of any Event of Default, to receive and open all mail addressed to Seller; and, in the exercise of such right, Purchaser shall have the right, in the name of Seller, to notify the Post Office authorities to change the address for the delivery of mail addressed to Seller to such other address as Purchaser may designate, including, but not limited to, Purchaser's own address; Purchaser shall turn over to Seller all of such mail not relating to the Collateral; such right to redirect mail granted to Purchaser is irrevocable and Seller shall not have the right to notify the Post Office to change the address for delivery after Purchaser has exercised such right; (f) upon the occurrence of any Event of Default, to direct any financial institution which is a participant with Purchaser in extensions of financing to or for the benefit of Seller, or which is the institution with which

EXHIBIT 1 - 010



any deposit account is maintained, to pay to Purchaser all monies on deposit by Seller with said financial institution which are payable by said financial institution to Seller, regardless of any loss of interest, charge or penalty as a result of payment before maturity; (g) endorse all checks and other forms of remittances received by Purchaser "Pay to the Order of ___(Purchaser)___ " or in such other manner as Purchaser may designate; (h) pay, contest or settle any lien, charge, encumbrance, security interest and adverse claim in or to any of the Collateral, or any judgment based thereon, or otherwise take any action to terminate or discharge the same; (i) grant extensions of time to pay, compromise claims and settle Accounts and the like for less than face value and execute all releases and other documents in connection therewith; (j) pay any sums required on account of Seller's taxes or to secure the release of any liens therefore, or both; (k) settle and adjust, and give releases of, any insurance claim that relates to any of the Collateral and obtain payment therefore, and make all determinations and decisions with respect to any such policy of insurance and endorse Seller's name on any check, draft, instrument or other item of payment or the proceeds of such policies of insurance; (l) instruct any accountant or other third party having custody or control of any books or records belonging to, or relating to, Seller to give Purchaser the same rights of access and other rights with respect thereto as Purchaser has under Section 5.4 of this Agreement; and (m) take any action or pay any sum required of Seller pursuant to this Agreement, and any other present or future agreements. Any and all sums paid and any and all costs expenses, liabilities, obligations and attorneys' fees incurred by Purchaser with respect to the foregoing shall be added to and become part of the Obligations. In no event shall Purchaser's rights, under the foregoing power of attorney or any of Purchaser's other rights under this Agreement be deemed to indicate that Purchaser is in control of the business, management or properties of Seller.

### 9. Online User Standards.

**9.1.** **Online Conducting of Business.** Purchaser and Seller intend to conduct business contemplated by this Agreement through the internet and through Purchaser's Online Reporting Service. Purchaser is the sole and exclusive owner of the Online Reporting Service. Seller hereby accepts a non-exclusive, non-transferable right to access the Online Reporting Service, upon the terms and subject to the conditions contained herein.

**9.2.** **Standards Regarding Conducting Business Online.** Seller and Purchaser agree as follows:

**9.2.1.** Purchaser shall have the right to terminate Seller's access to the Online Reporting Service upon the occurrence of an Event of Default or at any other time within Purchaser's discretion.

**9.2.2.** Seller shall not: (i) copy the Online Reporting Service nor otherwise reproduce the same other than for normal system operation backup; (ii) translate, adapt, vary, or modify the Online Reporting Service; or (iii) disassemble, decompile or reverse engineer the Online Reporting Service.

**9.2.3.** Purchaser shall not be liable to Seller for any loss or damage whatsoever or howsoever caused, whether caused by tort (including negligence), breach of contract, or otherwise arising directly or indirectly in connection with the use of the Online Reporting Service.

**9.2.4.** Purchaser expressly excludes liability for any indirect, special, incidental or consequential loss or damage whether caused by tort (including negligence), breach of contract or otherwise, which may arise in respect of the Online Reporting Service, its use, or in respect of equipment or property, or for loss of profit, business, revenue, goodwill or anticipated savings.

**9.2.5.** Seller acknowledges that any and all of the copyright, trademarks, trade names, patents and other intellectual property rights subsisting in or used in connection with the Online Reporting Service, including all documentation and manuals relating thereto, are, and shall remain, the sole property of the Purchaser. Seller shall not, during or at any time after the expiry or termination of its use of the Online Reporting Service, in any way question or dispute the ownership by Purchaser thereof.

**9.2.6.** To the extent permitted by applicable law, Purchaser excludes all warranties with respect to the Online Reporting Service, either express or implied, including, but not limited to, any implied warranties of satisfactory quality or fitness for any particular purpose.

**9.2.7.** Seller is solely responsible for virus scanning the Online Reporting Service, and Purchaser makes no representations or warranties regarding any virus associated with the Online Reporting Services.

**9.2.8.** All information, data, drawings, specifications, documentation, software listings, source or object code which Purchaser may have imparted and may from time to time impart to the Seller relating to the Online Reporting Service is proprietary and confidential. Seller hereby agrees that it shall use the same solely in accordance with the provisions of this Agreement and that it shall not, at any time during or after expiry or termination of this Agreement, disclose the same, whether directly or indirectly, to any third party.

### 10. General.

**10.1.** **True Sale.** Seller and Purchaser acknowledge and agree that the sale of Accounts contemplated and covered under this Agreement fully intended by the parties hereto as true sales governed by the provisions of Section 306.103 of the Texas Finance Code and Section 9.109(e) of the Texas Business and Commerce Code, as each may be amended from time to time, and, accordingly, legal and equitable title in all of Seller's accounts sold to and purchased by Purchaser from time to time hereunder will pass to Purchaser."

EXHIBIT 1 - 011



**10.2.     Notices.** Any Written Notice to be given under this Agreement will be in writing addressed to the respective party as set forth in the heading to this Agreement and will be personally served, telecopied or sent by overnight courier service or United States mail and will be deemed to have been given: (a) if delivered in person, when delivered; (b) if delivered by telecopy or e-mail, on the date of transmission if transmitted on a business day before 4:00 p.m. (Central Time) or, if not, on the next succeeding business day; (c) if delivered by overnight courier, two (2) days after delivery to such courier properly addressed; or (d) if by U.S. Mail, four (4) business days after depositing in the United States mail, with postage prepaid and properly addressed. If there is more than one Seller, notice to any shall constitute notice to all; if Seller is a corporation, partnership or limited liability company, the service upon any member of the Board of Directors, general partner, managing member, officer, employee or agent shall constitute service upon Seller.

**10.3.     Payment in Full Checks.** Seller authorizes Purchaser to accept, endorse and deposit on behalf of Seller any checks tendered by an Account Debtor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser affects an accord and satisfaction of Seller's claims, under Section 3-311 of the UCC.

**10.4.     No Lien Termination without Release.** In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Seller has executed and delivered to Purchaser a general release in a form suitable to Purchaser.  Seller understands that this provision constitutes a waiver of its rights under Section 9-513 of the UCC.

**10.5.     Indemnity.** Seller shall indemnify and hold Purchaser harmless from and against any and all claims, debts, losses, demands, actions, causes of action, lawsuits, Avoidance Claims, damages, penalties, judgments, liabilities, costs and expenses (including, without limitation, attorneys' fees), of any kind or nature which Purchaser may sustain or incur in connection with, or arising from, this Agreement, any other present or future agreement, or the breach by Seller of any representation, warranty, covenant or provision contained herein or therein, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, occurred, done, omitted or suffered to be done by Purchaser relating in any way to Seller. Notwithstanding any other provision of this Agreement to the contrary, the indemnity agreement set forth in this Section shall survive termination of this Agreement. If Seller fails to honor this Section of the Agreement after termination thereof, Purchaser shall have the right to re-file its UCC-1 financing statement and shall have the right to pursue any and all rights and remedies against Seller as contemplated by this Agreement, the UCC or any law or in equity.  Purchaser may, in its sole discretion, hold or supplement a Reserve to account for any Avoidance Claim.

**10.6.     Attorneys' Fees and Costs.** Seller shall forthwith pay to Purchaser the amount of all actual attorneys' fees and all other costs incurred by Purchaser under and pursuant to this Agreement, or any other present or future agreement, or in connection with any transaction, or with respect to the Collateral or the defense or enforcement of Purchaser's interests (whether or not Purchaser files a lawsuit against Seller), including any proceedings in Bankruptcy Court. In the event Purchaser files any lawsuit predicated on a breach of this Agreement or is any way related to this Agreement, the Purchaser shall be entitled to recover its costs and attorneys' fees, including, but not limited to, attorneys' fees and costs incurred. All attorneys' fees and costs to which Purchaser may be entitled pursuant to this Section shall immediately become part of Seller's Obligations and shall be due on demand.

**10.7.     Benefit of Agreement.** The provisions of this Agreement shall be binding upon and inure to the benefit of the respective successors, assigns, heirs, beneficiaries and representatives of the parties hereto; provided, however, that Seller may not assign or transfer any of its rights under this Agreement without the prior written consent of Purchaser, and any prohibited assignment shall be void. No consent by Purchaser to any assignment shall relieve Seller or any guarantor from its liability for the Obligations. Without limiting the generality of the foregoing, all rights and benefits of Purchaser under this Agreement may be exercised by any institution with which Purchaser maintains any rediscount, factoring or other relationship and by any other person or entity designated by Purchaser.

**10.8.     Joint and Several Liability.** The liability of each Seller shall be joint and several and the compromise of any claim with, or the release of, any Seller shall not constitute a compromise with, or a release of, any other Seller.

**10.9.     General Waivers.** The failure of Purchaser at any time or times hereafter to require Seller strictly to comply with any of the provisions, warranties, terms or conditions of this Agreement or any other present or future instrument or agreement between Seller and Purchaser shall not waive or diminish any right of Purchaser thereafter to demand and receive strict compliance therewith and with any other provision warranty, term and condition; and any waiver of any default shall not waive or affect any other default, whether prior or subsequent thereto and whether of the same or of a different type. None of the provisions, warranties, terms or conditions of this Agreement or other instrument or agreement now or hereafter executed by Seller and delivered to Purchaser shall be deemed to have been waived by any act or knowledge of Purchaser or its agents or employees, but only by a specific written waiver signed by an officer of Purchaser and delivered to Seller. Seller waives any and all notices or demands which Seller might be entitled to receive with respect to this Agreement, or any other agreement by virtue of any applicable law. Seller hereby waives demand, protest, notice of protest and notice of default or dishonor, notice of payment and nonpayment, release, compromise, settlement, extension or renewal of any commercial paper, instrument, Account, general intangible, document or guaranty at any time held by Purchaser on which Seller is or may in any way be liable, and notice of any action taken by Purchaser unless expressly required by this Agreement. Seller hereby ratifies and confirms whatever Purchaser may do pursuant to this Agreement and agrees that Purchaser shall not be liable for the safekeeping of the Collateral or any loss or damage thereto, or diminution in value thereof, from any cause whatsoever, any act or omission of any carrier, warehouseman, bailee, forwarding agent or

EXHIBIT 1 - 012



other person, or any act of commission or any omission by Purchaser or its officers, employees, agents, or attorneys, or any of its or their errors of judgment or mistakes of fact or law.

**10.10.    Section Headings, Construction.** Section headings are used herein for convenience only. Seller acknowledges that the same may not describe completely the subject matter of the applicable Section, and the same shall not be used in any manner to construe, limit, define or interpret any term or provision hereof. This Agreement has been fully reviewed and negotiated between the parties and no uncertainty or ambiguity in any term or provision of this Agreement shall be construed strictly against Purchaser or Seller under any rule of construction or otherwise.

**10.11.    Destruction of Seller's Documents, Limitation of Actions.** Any documents, schedules, invoices or other papers delivered to Purchaser may be destroyed or otherwise disposed of by Purchaser six (6) months after the same are delivered to Purchaser, unless Seller makes written request therefore and pays all expenses attendant to their return, in which event Purchaser shall return same when Purchaser's actual or anticipated need therefore has terminated. Seller agrees that any claim or cause of action by Seller against Purchaser, its directors, officers, employees, agents, accountants or attorneys, based upon, arising from, or relating to this Agreement, or any other present or future agreement, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, occurred, done, omitted or suffered to be done by Purchaser, its directors, officers, employees, agents, accountants, or attorneys, relating in any way to Seller, shall be barred unless asserted by Seller by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within six (6) months after the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based, and the service of a summons and complaint on an officer of Purchaser, or on any other person authorized to accept service on behalf of Purchaser, within thirty (30) days thereafter. Seller agrees that such six-month period provided herein shall not be waived, tolled, or extended except by the written consent of Purchaser, in its sole and absolute discretion. This provision shall survive any termination, however arising, of this Agreement and any other present or future agreement.

**10.12.    Severability.** Should any provision, clause or condition of this Agreement be held by any court of competent jurisdiction to be void, invalid, inoperative, or otherwise unenforceable, such defect shall not affect any other provision, clause or condition, and the remainder of this Agreement shall be effective as though such defective provision, clause or condition had not been a part hereof.

**10.13.    Integration.** This Agreement and such other written agreements, documents and instruments as may be executed in connection herewith shall be construed together and constitute the entire, only and complete agreement between Seller and Purchaser, and all representations, warranties, agreements, and undertakings heretofore or contemporaneously made, which are not set forth herein or therein, are superseded hereby.

**10.14.    Amendment.** The terms and provisions of this Agreement may not be waived, altered, modified or amended except in a writing executed by Seller and a duly authorized officer of Purchaser.

**10.15.    Time of Essence.** Time is of the essence in the performance by Seller of each and every obligation under this Agreement.

**10.16.    Electronic Signatures.** The parties intend to conduct business contemplated by this Agreement by electronic means. Each document, which is the subject of this Agreement, that a party has transmitted electronically to the other shall be intended as and constitute an original and deemed to contain a valid signature of the party for all purposes acknowledging, consenting to, authorizing and approving the terms of this Agreement or any subject matter applicable thereto.  In furtherance of the above, Seller hereby authorizes Purchaser to regard the Seller's printed name or electronic approval for any document, agreement, assignment schedule or invoice as the equivalent of a manual signature by one of the Seller's authorized officers or agents.  Seller's failure to promptly deliver to Purchaser any schedule, report, statement or other information required by this Agreement or any document related thereto shall not affect, diminish, modify or otherwise limit Purchaser's security interests in the Collateral or rights and remedies under this Agreement.  Purchaser may rely upon, and assume the authenticity of, any such approval and material applicable to such approval as the duly confirmed, authorized and approved signature of Seller by the person approving same which constitute an Authenticated Record for purposes of the UCC and shall satisfy the requirements of any applicable statute of frauds.

**10.17.    Credit Reports.** Seller authorizes Purchaser to obtain credit reports for Seller and all guarantors at any time, in Purchaser's sole discretion.

**10.18.    Governing Law, Jurisdiction; Venue.** This Agreement and all acts and transactions hereunder and thereunder and all rights and obligations of Purchaser and Seller shall be governed, construed and interpreted in accordance with the internal laws of the State of Texas. Seller: (i) agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of Purchaser, be litigated in courts located within said state, and that, at the option of Purchaser, the exclusive venue therefore shall be Harris County, State of Texas; (ii) consents to the jurisdiction and venue of any such court and consents to service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) waives any and all rights Seller may have to object to the jurisdiction of any such court, or to transfer or change the venue of any such action or proceeding.

EXHIBIT 1 - 013



**10.19.   Waiver of Right to Jury Trial.** PURCHASER AND SELLER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL IN ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN PURCHASER AND SELLER, AND ANY CONDUCT, ACTS OR OMISSIONS OF PURCHASER OR SELLER OR ANY OF THEIR DIRECTORS, MEMBERS, PARTNERS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSONS AFFILIATED WITH PURCHASER OR SELLER. PURCHASER AND SELLER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS. PURCHASER AND SELLER FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement through their duly authorized officers.

Dated: July 18, 2021   (the "Effective Date")

**Sallyport Commercial Finance, LLC**

Signature: _____

Print Name: Nick Hart

Title: President


**Retrolock Corporation**

Signature: _____

Print Name: TANIA TOMYN

Title: CEO

**Document to be notarized**



IN WITNESS WHEREEOF, certified to be a true copy of the original and true likeness of the client.

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____ _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF   CALIFORNIA          )

COUNTY OF   ORANGE          ) SS:
                                    )

WITNESS my hand and official seal in the County and State last aforesaid this 18th day of JUNE, 2021.


_____

Notary Public

**See Attached Certificate**

_____

Typed, printed or stamped name of Notary Public

EXHIBIT 1 - 014

## CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of ORANGE )

On JUNE 18, 2021 before me, Ann Marie Provencio Notary Public
(here insert name and title of the officer)

personally appeared TANIA TOMYN

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

ANN MARIE PROVENCIO
Notary Public - California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

(Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of ACCOUNT SALE AND PURCHASE AGREEMENT

containing 14 pages, and dated 6/18/2021

The signer(s) capacity or authority is/are as:
- [ ] Individual(s)
- [ ] Attorney-in-Fact
- [x] Corporate Officer(s) _____ Title(s)

- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
- [x] form(s) of identification   [ ] credible witness(es)

Notarial event is detailed in notary journal on:
Page #  _____   Entry #  _____

Notary contact: 949-466-8731

Other
- [ ] Additional Signer(s)   [ ] Signer(s) Thumbprint(s)
- [ ] _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507  All Rights Reserved. Item Number 101772.  Please contact your Authorized Reseller to purchase copies of this form

EXHIBIT 1 - 015



SALLYPORT
commercial finance™

### SCHEDULE A TO ACCOUNT SALE AND PURCHASE AGREEMENT

1.  Additional Factoring Fee: ▇▇▇

2.  Additional Fee Period: shall be 30 days after the Initial Factoring Period, with an Additional Factoring Fee Period accruing after the next 30 days, up to a maximum of ninety (90) days of the date set forth on the invoice, when the Account must be repurchased.

3.  Advance Rate: up to ▇▇▇ of the gross face amount of each Eligible Account purchased under this Agreement that was funded to Seller in advance of its due date. Purchaser may adjust the Advance Rate upward or downward at any time, in its sole discretion.

4.  Audit Fee: will be charged to client at ▇▇▇ per day.

5.  Default Factoring Fee: ▇▇▇ plus the Interest Rate.

6.  Initial Factoring Fee: ▇▇▇.

7.  Initial Factoring Fee Period: 30 Days

8.  Initial Setup Fee: ▇▇▇ f Maximum Facility Limit Amount. (earned and charged at first funding)

9.  Maximum Facility Limit Amount: $1,500,000 — *Pertinent to $5M* ⟨✓⟩

10. Minimum Monthly Sales Shortfall Fee: shall be calculated as follows Minimum Monthly Sales Volume for the particular month minus the actual Monthly Sales Volume for the particular month multiplied by the Initial Factoring Fee.

11. Minimum Monthly Sales Volume: $3,000,000

12. Original Term: 15 Months.

13. Place of Business, Location of Collateral: 210 W Taft Avenue Orange, CA 92865

14. Renewal Term: 6 Months

15. Trade Names and Styles: Retrolock Corporation, Retrolock.

16. Interest Rate: Base Rate ▇▇▇

17. Base Rate Floor: ▇▇▇

18. Application of Payments: 3 days.

19. Over 90 Fee: is waived.

Signature: *[signature]*

Print Name: TA▇IA T▇▇Y▇

Title: CEO

EXHIBIT 1 - 016



**SALLYPORT**
commercial finance™

Addendum #1 to ASPA

Tania Tomyn, CEO
Retrolock, Inc.
210 W Taft Avenue,
Orange, CA 92865

June 17, 2021

Dear Ms.Tomyn,

**RE: Account Sale and Purchase Agreement ("ASPA"), dated: June __ 2021**
**RE: Proposal Letter dated June 11, 2021 ("Proposal")**

As stated in the Proposal, Sallyport Commercial Finance, LLC ("SCF") funding shall be delivered in 2 Phases. Phase 1 shall cover the first 90 days of the Original Term or until Phase 2 is approved by SCF and the Phase 1 obligation repaid and Phase 2 shall cover the period thereafter. The Maximum Facility Limit Amount in Phase 1 shall be $1,500,000.

**Fee Structure**

During Phase 1 as an accommodation , there will be a monthly minimum Factoring fee per Schedule A of the ASPA of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ per month charged at purchase, monthly Factoring fees shall also not exceed this amount. After month 1 and during Phase 1, the Factoring fees shall accrue on a daily rate of ▓▓▓▓▓▓▓▓▓▓▓▓ over a 30-day period.

**Term**

Should SCF be unsuccessful in its Phase 2 funding, no Termination Fee shall be due at the end of Phase 1. SCF shall give notice to Retrolock not less than 30-days prior to the end of Phase 1 should the Phase 2 financing be unsuccessful. For each Renewal Term the Early Termination Fee as stated in ASPA, 7.2 shall be ▓▓▓. With written notice Retrolock may opt to enter Phase Two with a facility limit of $1,500,000 after 30 days of Phase 1 even if SCF do not approve the $5,000,000 facility limit. In such case all terms of Phase 2 will remain the same with the exception of the Facility Limit which will remain at $1,500,000.

**Closing Fee/Initial Setup Fee**

Subject to a successful transition from Phase 1 to Phase 2 and an increase in Facility fee to $5,000,000 Facility Limit, the Initial Setup Fee of ▓▓▓▓▓▓ shall be waived providing that two months Phase 1 fee has been paid.

Yours sincerely,

Nick Hart
President

Signed, Accepted and Acknowledged by: .......*[signature]*....... Date:..6/17/21
                                                Tania Tomyn, CEO
                                                Retrolock, Inc.

14100 Southwest Freeway, Suite 210 Sugar Land, Texas 77478
Tel: 832-939-9450

EXHIBIT 1 - 017



## CERTIFICATION OF OFFICERS
### OF
### Retrolock Corporation

From:       Retrolock Corporation
                  210 W Taft Avenue
                  Orange, CA 92865

To:           Sallyport Commercial Finance, LLC
                  14100 Southwest Freeway, Suite 210
                  Sugar Land, Texas 77478

Sallyport Commercial Finance, LLC:

In order to induce you to extend financing accommodations to the above named corporation and to continue to do so, the undersigned officers and shareholders of said corporation represent and warrant as follows:
**(PLEASE BE SURE TO ANSWER EACH QUESTION BELOW; IF A QUESTION DOESN'T APPLY INDICATE NO OR N/A)**

1.   The exact name of the corporation is:

     Retrolock Corporation

2.   Federal Tax Identification Number of the corporation is:

     ███████████

3.   The corporation uses in its business and owns the following trade name(s) or trade style(s):

     dba  Retrolock Construction

     dba  RLC

4.   The following is a list of any corporation names previously used and any and all mergers, consolidations, reorganizations, changes in state of incorporation or other changes in corporate form affecting the corporation, as well as a full description of such event:

     N/A

5.   The following is a list of all addresses (including the county) at which inventory, equipment or documents of the corporation are located (indicating whether address is client owned or leased), together with the name and address of landlord at each address:

Orange County: 210 W Taft Ave, Orange CA 92865   — Leased
Alameda County: 1943 Rutan Dr. Livermore, CA 92867 — Leased

Page 18 of 41

EXHIBIT 1 - 018



6. The complete address of each place of business the corporation has operating during the past five years, other than those listed in 4 and 5 above are as follows:

Listed in #5 plus: 1111 E. Katella Ave., #230, Orange CA 92867; 2480 W. Horizon Ridge Pkwy #100, Henderson, NV 89052   Previous: 17915 Railroad St., City of Industry, CA. 91748

7. The following is a list of all States in which the corporation currently has offices or employees:

California, Nevada     AZ-one employee

8. The following are the names and states of formation of all of subsidiaries or affiliates (as defined below) of the corporation:

California

*Subsidiary means an entity, more than 50% of the voting stock of which is owned by the corporation or another subsidiary of the corporation. Affiliate means an entity which directly or indirectly is in control of, is controlled by or is under common control with the corporation and includes companies in which any shareholder, officer or director of the corporation has an interest (except public companies to the extent such interest is less than 1%)*

9. The following is a list of all guaranties for which the corporation will continue to remain obligated subsequent to the consummation of the transactions contemplated by the Account Sale and Purchase Agreement, a copy of which guarantee documentation will be provided to you at your request:

Tania Guaranties: Company Vehicles
                  Office Leases

10. There is no provision in the Certificate of Incorporation, By-laws of the corporation or books and records of the corporation requiring any vote or consent of shareholders to the granting of a security interest in any assets of the corporation, such power being vested exclusively in its Board of Directors.

NO

11. The officers of the corporation and their respective titles are as follows:

CEO
~~President:~~   TANIA TOMYN     Signature: _____

Vice President: _____   Signature: _____

Secretary:   TANIA TOMYN     Signature: _____

Treasurer:   TANIA TOMYN     Signature: _____

EXHIBIT 1 - 019



12.   The shareholders of the corporation and their respective ownership are as follows:

| Name | # of Shares | % of Ownership |
|------|-------------|----------------|
| TANIA  TOMYN | | 100 % |

13.   The following are the names of all corporations, sole proprietorships, partnerships or limited liability companies or other business entities that any of the shareholders, officers or directors have or had in the past 5 years an ownership interest in, or served as an officer or director:

A-T  Installation  (ATI)

14.   The following is a list of all judgments, pending lawsuits, litigation or bankruptcy proceedings against the corporation or any subsidiary, affiliate (as defined in question 7) or any entity set forth in response to the foregoing question number 13, including the full details of such actions:

As  discussed :  Townsteel  Lawsuit - Tomyn et al v. Meng et al ;

Webcor/NCP Litigation - Claim - Retrolock adv. Next Century Partners LLC

+ HR - Employee Related Lawsuits

15.   The corporation is delinquent on State or Federal Taxes (i.e. 1040, 940, 941, Sales Tax, Franchise Tax, etc.) as follows:

No

16.   The corporation payroll is administered by the following individual or entity, with complete contact information as follows:

ADP  +  Internal : Johanna Mercado + Edwin Lee

EXHIBIT 1 - 020



17.   The following events occurred during the past five years:

(a)   A petition under the Bankruptcy Act was filed by or against the corporation or a receiver, fiscal agent or similar officer was appointed by a court for the business or property of (i) any shareholder, (ii) any partnership in which any shareholder was a general partner at or within two years before the time of such filing, or (iii) any entity of which any shareholder was an executive officer at or within two years before the time of such filing, as detailed below:

only personal BK, as disclosed

(b)   A shareholder or officer was convicted in a criminal proceeding or a shareholder or officer is named subject to a pending criminal proceeding (traffic violations and other minor offenses omitted) detailed as follows:

NO

18. The following is a full and complete list of all bank accounts of the corporation:

| Bank Name | Account Number | Contact | Phone Number |
|---|---|---|---|
| main- Chase | ███████ | Evan Harper | 714.997.0803 |
| Chase | ███████ | Evan Harper | 714.997.0803 |
| | | | |
| | | | |

Prompt written notice will be given to you of any change or amendment with respect to any of the foregoing matters. Until such notice is received by you, you shall be entitled to rely upon the foregoing in all respects.  We understand that any misrepresentation or omitting of information is a material breach of the Account Sale and Purchase Agreement executed by and between SCF and the corporation, .

Very truly yours,

By: _Tania Tomyn_
Name: Tania Tomyn
Title: CEO
Date: 6|17|21

*Please ensure sections 1-18 are filled out completely*

EXHIBIT 1 - 021



SALLYPORT
commercial finance

## ASSIGNMENT AUTHORIZATION

Date:                                June 15, 2021

Attention:                           Tania Tomyn

To:                                  Retrolock Corporation

For both your protection and Sallyport Commercial Finance, LLC.'s, we ask that you provide us with a list of the names, titles, and the signature of each individual who is authorized to submit assignment schedules to SCF.

1)   Name:   _TANIA TOMYN_         Title:   _CEO_
     Signature: _Tania Tomyn_
2)   Name: _____          Title: _____
     Signature: _____
3)   Name: _____          Title: _____
     Signature: _____
4)   Name: _____          Title: _____
     Signature: _____

As a courtesy accommodation to our clients, SCF may choose to accept facsimile or email signatures on assignment schedules.  You agree that in the event Retrolock Corporation submits assignment schedules via facsimile or email, such accommodation does not relieve each of the above signers from insuring that every assignment schedule submitted to SCF has been authorized and approved by one or more of the authorized signers above; and that the assignment schedule is submitted pursuant to the terms and conditions of the Account Sale and Purchase Agreement between Retrolock Corporation and Sallyport Commercial Finance, LLC., including but not limited to the representations, warranties and covenants set forth therein.

Your acknowledgment below confirms your agreement and understanding of the foregoing. If you have any questions please do not hesitate to contact us.

Acknowledged by:

By:  _____
Title:   _CEO_
Dated:   _6/17/21_

Page 22 of 41

EXHIBIT 1 - 022





**Attention: Accounts Payable Manager**

**RE: YOUR VENDOR:   Retrolock Corporation**

## NOTICE OF ASSIGNMENT OF ACCOUNTS RECEIVABLE

We are pleased to advise that Retrolock Corporation has established a financial relationship with **Sallyport Commercial Finance, LLC.** ("SCF"). SCF's relationship will enable Retrolock Corporation to accommodate the growth and development of their business while maintaining a high level of customer service.

As part of the SCF relationship, all of Retrolock Corporation's present and future accounts have been assigned to SCF and accordingly, all payments for Retrolock Corporation, now or in the future, should be made directly to **Sallyport Commercial Finance, LLC.** and not to your vendor or any other entity. SCF's security interest has been duly recorded by its filing under Article 9 of the Uniform Commercial Code. All payments should now be made payable to **Sallyport Commercial Finance, LLC.** and remitted as follows:

**PAYMENTS VIA MAIL**
Sallyport Commercial Finance, LLC
PO Box 4776, #100,
Houston, Texas 77210-4776

**ELECTRONIC PAYMENTS**

Re :     Retrolock Corporation

If you wish to pay by credit card please visit www.sallyportcf.com

Payment to your vendor or any other entity will not discharge your obligation to pay SCF. To assist us in correctly applying your payments, please indicate your Federal Tax Identification Number in the space below and return a copy of this notice to us by email to *payments@sallyportcf.com*. If not correctly noted above, please provide your correct address, phone and fax number below.

This notification shall remain in effect until you are notified to the contrary, in writing, by an officer of **Sallyport Commercial Finance, LLC.** Please notify SCF at 832-939-9450 if there are any adjustments to be made to an invoice or if questions arise concerning your billing. We thank you in advance for your cooperation, and we look forward to the continued growth and prosperity of our client.

Very truly yours,
Sallyport Commercial Finance, LLC

Retrolock Corporation

Nick Hart, President

Tania Tomyn, CEO

| DEBTORS ONLY: Please complete and return immediately by email to payments@sallyportcf.com | |
|---|---|
| Company Name: | Federal Tax ID Number: |
| Name/Position: | Email: |
| Phone: | Address: |
| Fax: | City/St./Zip |

EXHIBIT 1 - 023



SALLYPORT
commercial finance

## BANK WIRE / ACH INSTRUCTIONS

Date:      June 15, 2021

To:       Tania Tomyn

Client:   Retrolock Corporation

Re:       Bank Wire/ACH Instructions

In order to facilitate the funding portion of the factoring process, please provide the following information requested below.  Please note that this Wire Transfer/ACH Instructions requested shall be an <u>Operating Account only</u>, and not for a payroll tax deposit account.

Bank Name:  Chase Bank

Street Address:  1344 N Tustin St.

City, State, Zip Code:  Orange, CA. 92867

Telephone:  (714) 997-0803

Facsimile:  (   )    -

Contact Name:  Evan Harper

Contact Title:  Private Client Banker

ABA Number (for wires- $35.00)  ████████
(Please contact your bank for the applicable ABA #)

ABA Number (for ACH- $10.00)  ████████
(Please contact your bank for the applicable ABA #)

Account Number:  ████████

Beneficiary's Name:  Retrolock Corporation

Indicate the County in which you are doing business:  Orange

I hereby authorize Sallyport Commercial Finance, LLC ("SCF") to initiate (i) credit entries, (ii) debit entries, and (iii) adjustments for any debit or credit entries made in error, to my account as indicated above.  All transactions shall be pursuant to the terms and conditions of the Account Sale and Purchase Agreement by and between SCF and Retrolock Corporation.

Signed:  *[signature]*

Tania Tomyn, CEO

EXHIBIT 1 - 024



EXHIBIT 1 - 025



SALLYPORT
commercial finance

## ASSIGNMENT SCHEDULE RELATING TO ACCOUNTS RECEIVABLE

Assignment to:    Sallyport Commercial Finance, LLC.
14100 Southwest Freeway, Ste 210
Sugar Land, TX 77478

Schedule No. _____

Date. ____/____/_____

Assignment Made by: Retrolock Corporation

Schedule can be emailed to: schedules@sallyportcf.com

**✱ REFER TO UPLOADED AR AGING FILE IN DROPBOX**

| Account Debtor | PO/Contract No. | Invoice Terms | Invoice No. | Date | Amount |
|---|---|---|---|---|---|
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |
| | # | # | | /  / | $ |

**✱ Please See AR Aging file in Dropbox**

**Total Invoice Amount (for Schedule):**                    $ _____

Seller represents and warrants that the foregoing accounts offered for sale to **Sallyport Commercial Finance, LLC.** by this Assignment Schedule are each being offered pursuant to and in accordance with the terms of the Account Sale and Purchase Agreement, including but not limited to the representations, warranties and covenants therein, which Account Sale and Purchase Agreement Seller agrees is in full force and effect and is hereby ratified, approved and confirmed in all respects.

Client Company: Retrolock Corporation

Signed _____

Print Name  **TANIA TOMYN**
Title  **CEO**

Page 26 of 41

EXHIBIT 1 - 026



# CERTIFICATE OF CORPORATE RESOLUTIONS

Retrolock Corporation,
a California Corporation

June 15, 2021

The undersigned, being the President of Retrolock Corporation a Company organized under the laws of the State of «Seller_Incorp_State»(the "Company") hereby certifies a special meeting of the Board of Directors of said Company was duly held at its office 210 W Taft Avenue Orange, CA 92865, on June 15, 2021, a quorum being present and the following resolutions being duly adopted:

RESOLVED: That it is in the best interest of this Company to enter into the Account Sale and Purchase Agreement and the documents ancillary thereto (collectively, the "ASPA") with Sallyport Commercial Finance, LLC., located at 14100 Southwest Freeway Suite 210, Sugar Land, TX 77478 (hereafter referred to as "SCF") to be dated on or after the date hereof, which ASPA provides for the sale, pledge or assignment of accounts, documents, instruments, chattel paper (each as defined in the Uniform Commercial Code as enacted in the State of Texas) or other forms of obligations, inventory, goods now or hereafter owned by this Company; and it is further

RESOLVED: That the form, terms and provisions of the ASPA and the transactions contemplated thereby be, and they hereby are, in all respects approved by Retrolock Corporation, and that an officer of Retrolock Corporation be, and hereby is, in the name and on behalf of Retrolock Corporation, authorized to execute and deliver the ASPA and such other and further documentation as may be necessary to effectuate the factoring arrangement contemplated between SCF and this Company, such ASPA to be in substantially the form submitted to the Board of Directors with such additions, deletions or changes therein and modifications thereof as the officer executing the same shall approve, the execution and delivery of the ASPA by such officer to be conclusive evidence of said officer's approval of the same; and it is further

RESOLVED: That the President, Vice President, Treasurer, Secretary or other officer of this Company, or any one or more of them, being and the same are hereby authorized and empowered, on its behalf to execute and deliver said ASPA and such other and further documentation as may be necessary to effectuate the factoring arrangement contemplated between SCF and this Company; and it is further

RESOLVED: That any officer or officers of this Company and/or their nominees are hereby authorized and empowered, on its behalf, to execute and deliver any and all schedules of assignments of accounts, transfer of instruments, sales, pledges, notes, financial, financing and other statements, and any and all further agreements, papers, documents and/or certificates as may from time to time be requested by SCF, upon any matters or transactions arising under said ASPA or in connection with any financing arrangements with this Company; and it is further

RESOLVED: That any officer or officers of this Company and/or their nominees are hereby authorized and empowered on its behalf, to fulfill all obligations of Company under the ASPA and all agreements required thereunder, including (without limitation) the granting to Company of the security interest described in the ASPA; the appointment of Company as power of attorney Seller, coupled with certain interest as set forth in the ASPA; the payment of all such necessary costs and expenses as in such officer's judgment shall be necessary or proper to carry out the intent and accomplish the purposes of the foregoing resolutions; and the taking of all further action as each officer may deem necessary or appropriate in order to implement these resolutions, and the approval thereof shall be conclusively evidenced by the taking of such action.

RESOLVED: That all acts of the officers of this Company and/or their nominees and all agreements, modifications, transfers, assignments, certificates and statements, which they or any of them have done, executed or delivered pursuant to the ASPA or to facilitate transactions thereunder, are hereby ratified and approved; and it is further

RESOLVED: That any officer, agent or nominee of SCF is hereby authorized and empowered to endorse the name of this Company to any and all checks, drafts and other instruments for the payment of money, payable to this Company or its order, to deposit the same in any account or accounts of said SCF, with any bank or financial institution, and to deal with any and all such checks, drafts and other instruments or orders for the payment of money and the proceeds thereof as the property of SCF; and it is further

RESOLVED: That said bank or financial institution be, and they hereby are, authorized and requested to receive for deposit to the credit of SCF without further inquiry, all such checks, drafts and other orders or instruments for the payment of money, payable to this Company or its order, and that said bank or financial institution shall be under no liability to this Company, with respect to the disposition which SCF may or shall make of the said instruments or the proceeds thereof.

EXHIBIT 1 - 027



SALLYPORT
commercial finance™

The undersigned further certifies that the foregoing resolutions remain in full force and effect, and have not been rescinded or modified and that the undersigned is a custodian of and familiar with the books and records of said Company and nothing contained in the Certificate of Incorporation, By-Laws or any other records prohibits the execution of the aforementioned agreements by said Company.

The undersigned further certifies that the following are the current duly elected officers of said corporation:

CEO
* President Signature _____    Print Name _Tania Tomyn_
Home Address _27551 Gold Dust Ln, Laguna Hills, CA 92653_    Home Phone _248-505-1266_
Social Security #: ████████    % of Ownership: _100%_

* Vice President Signature _____    Print Name _____
Home Address _____    Home Phone _____
Social Security #: _____    % of Ownership _____

* Secretary Signature _____    Print Name _Same as above_
Home Address _____    Home Phone _____
Social Security #: _____    % of Ownership: _____

* Treasurer Signature _____    Print Name _Same as above_
Home Address _____    Home Phone _____
Social Security #: _____    % of Ownership: _____

IN WITNESS WHEREOF, I have hereunto set my hand as President of Retrolock Corporation, said Company, by order of its Board of Directors this _18th_ day of _June_, 2021.

_____
Name: _Tania Tomyn_
Title:    President CEO

IN WITNESS WHEREOF, I have hereunto signed my name as of this _18th_ day of _June_, 2021.

_____
Name: _Tania Tomyn_
Title:    Secretary

_____
**Notary**

EXHIBIT 1 - 028

SALLYPORT
commercial finance

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF ___CALIFORNIA___            )
                                     ) SS:
COUNTY OF ___ORANGE___               )

WITNESS my hand and official seal in the County and State last aforesaid this 18th day of June, 2021.

_____
Notary Public

**See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

Page 29 of 41

EXHIBIT 1 - 029

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )

County of _ORANGE_          )

On _JUNE 18, 2021_ before me, _Ann Marie Provencio NOTARY PUBLIC_,
                                                (here insert name and title of the officer)

personally appeared _TANIA TOMYN_

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

ANN MARIE PROVENCIO
Notary Public – California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

WITNESS my hand and official seal.

Signature _____          (Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document
titled/for the purpose of _CERTIFICATE OF CORPORATE_
_RESOLUTIONS   RETROLOCK_
containing _3_ pages, and dated _6/15/21_
_27-29_
The signer(s) capacity or authority is/are as:
- [ ] Individual(s)
- [ ] Attorney-in-Fact
- [x] Corporate Officer(s) _____
                                    Title(s)

- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____
                Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information:**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
- [x] form(s) of identification   [ ] credible witness(es)

Notarial event is detailed in notary journal on:
    Page # _____   Entry # _____

Notary contact: _949-466-8731_

Other
- [ ] Additional Signer(s)   [ ] Signer(s) Thumbprint(s)
- [ ] _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 1 - 030



## CONTINUING GUARANTY

Tania Tomyn

THIS CONTINUING GUARANTY ("Guaranty") is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of **SALLYPORT COMMERCIAL FINANCE, LLC** a Delaware limited liability company (hereinafter called "SALLYPORT"), whose address is 14100 Southwest Freeway, Suite 210, Sugar Land, TX  77478 with respect to the indebtedness of Retrolock Corporation organized under the laws of the State of California (hereinafter called "Debtor").

1. Continuing Guaranty.  Guarantor hereby unconditionally guarantees and promises to pay on demand to SALLYPORT, at the address indicated above, or at such other address as SALLYPORT may direct, in lawful money of the United States, and to perform for the benefit of SALLYPORT, all Indebtedness of Debtor now or hereafter owing to or held by SALLYPORT.  As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of Debtor or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to SALLYPORT, or acquired by SALLYPORT, by assignment or otherwise, or held by SALLYPORT on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or un-liquidated, certain or uncertain, determined or undetermined, monetary or non-monetary, written or oral, and whether Debtor may be liable thereon individually or jointly with others, and regardless of whether recovery thereon may be or hereafter become barred by any statute of limitations, discharged or uncollectible in any bankruptcy, insolvency or other proceeding, or otherwise unenforceable, including without limitation any of the same which arise from or in connection with the financing or factoring of the accounts of Debtor or in any other manner; and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation, amendments, modifications, renewals and extensions which are evidenced by any new or additional instrument, document or agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against Debtor, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expenses of, for or incidental to collection thereof.  As used herein, the term "Debtor" shall include any successor to the business and assets of Debtor, and shall also include Debtor in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for Debtor or any of its assets, should Debtor hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guaranteed hereby.  This Guaranty is given in consideration for credit and other financial accommodations which may, from time to time, be given by SALLYPORT to Debtor in SALLYPORT's sole discretion, but Guarantor acknowledges and agrees that acceptance by SALLYPORT of this Guaranty shall not constitute a commitment of any kind by SALLYPORT to extend such credit or other financial accommodation to Debtor or to permit Debtor to incur Indebtedness to SALLYPORT. All sums due under this Guaranty shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

2. Ledger Debt.  Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of Debtor, which shall mean and include all indebtedness of Debtor now or hereafter owing to a third party, which SALLYPORT has heretofore or hereafter purchases from such third party or in which SALLYPORT has heretofore or hereafter acquires a security interest, whether as a result of SALLYPORT factoring or financing the accounts receivable of such third party or otherwise. Guarantor acknowledges that SALLYPORT will be relying upon this Guaranty in factoring or financing the accounts receivable of such third parties (consisting of indebtedness and obligations now or hereafter due from Debtor to such third parties), as well as in permitting Debtor to incur other Indebtedness, but

Page 31 of 41

EXHIBIT 1 - 031



nothing herein shall constitute a commitment of any kind by SALLYPORT to factor or finance the accounts receivable of such third parties or to permit Debtor to incur other Indebtedness.

3.      Waivers.  Guarantor hereby waives:  (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in Debtor's financial position; any other fact which might increase Guarantor's risk; any default, partial payment of non-payment of all or any part of the Indebtedness; the occurrence of any Event of Default (as hereinafter defined); any and all agreements and arrangements between SALLYPORT and Debtor and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person (including without limitation any other person signing this Guaranty); (b) any right to require SALLYPORT to institute suit against, or to exhaust its rights and remedies against, Debtor or any other person, or to proceed against any property of any kind which secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with SALLYPORT or any indebtedness of SALLYPORT to Debtor, or to exercise any other right or power, or pursue any other remedy SALLYPORT may have; (c) any defense arising by reason of any disability or other defense of Debtor or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of Debtor or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of SALLYPORT or others which directly or indirectly results in the discharge or release of Debtor or any other guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise; (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of Debtor or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of SALLYPORT to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of Debtor or any other person; (f) any defense based upon any failure of SALLYPORT to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or any failure of SALLYPORT to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by SALLYPORT to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; (g) any defense based upon or arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against Debtor or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding; (h) the benefit of any and all statutes of limitation with respect to any action based upon, arising out of or related to this Guaranty; (i) any right to revoke, cancel or terminate this Guaranty; (j)the benefit of any court bond which may be required to seek any form of prejudgment remedy; and (k) any defenses arising under Uniform Commercial Code Sections 9601 et seq.   Until all of the Indebtedness has been paid, performed and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness.  If any claim is ever made upon SALLYPORT for repayment or recovery of any amount or amounts received by SALLYPORT in payment of or on account of any of the Indebtedness, because of any claim that any such payment constituted a preferential transfer or fraudulent conveyance, or for any other reason whatsoever, and SALLYPORT repays all or part of said amount by reason of any judgment, decree or order of any court or administrative body having jurisdiction over SALLYPORT or any of its property, or by reason of any settlement or compromise of any such claim effected by SALLYPORT with any such claimant (including without limitation the Debtor), then and in

EXHIBIT 1 - 032



any such event, Guarantor agrees that any such judgment, decree, order, settlement and compromise shall be binding upon Guarantor, notwithstanding any release or attempt at revocation of this Guaranty or the cancellation of any note or other instrument evidencing any of the Indebtedness, or any release of any of the Indebtedness, and the Guarantor shall be and remain liable to SALLYPORT under this Guaranty for the amount so repaid or recovered, to the same extent as if such amount had never originally been received by SALLYPORT and the provisions of this sentence shall survive and continue in effect, notwithstanding any release or attempt at revocation hereof.

4.      Consents.  Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, SALLYPORT may, from time to time before termination or after any attempt at revocation of this Guaranty, do any one or more of the following in SALLYPORT's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to Debtor or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which SALLYPORT at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action which results in the release of, any one or more endorsers or guarantors of all or any part of the Indebtedness, including, without limitation one or more parties to this Guaranty, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon; (f) apply any sums received from Debtor, any other guarantor, endorser, or co-signer, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as SALLYPORT determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as SALLYPORT determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable.  Guarantor consents and agrees that SALLYPORT shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness.  Guarantor further consents and agrees that SALLYPORT shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness.  Without limiting the generality of the foregoing, SALLYPORT shall have no obligation to monitor, verify, audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

5.      Exercise of Rights and Remedies, Foreclosure of Trust Deeds. The undersigned Guarantor consents and agrees that, without notice to or by the undersigned and without affecting or impairing in any way the obligations or liability of the undersigned Guarantor hereunder, SALLYPORT may, from time to time, exercise any right or remedy it may have with respect to any or all of the obligations or any property securing any or all of the obligations or any guaranty thereof, including without limitation, judicial foreclosure, nonjudicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property.

The undersigned Guarantor waives all rights and defenses that such Guarantor may have because the debtor's debt is secured by real property.

6.      Acceleration.  Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of

EXHIBIT 1 - 033



SALLYPORT, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to SALLYPORT by Debtor or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) Debtor or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to SALLYPORT or to any parent, subsidiary or corporate affiliate of SALLYPORT, whether under this Guaranty or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) there occurs in SALLYPORT's judgment a material impairment of the prospect of payment or performance of any or all of the Indebtedness; or (e) any event shall occur which may or does result in the acceleration of the maturity of any indebtedness of Debtor or Guarantor to others (regardless of any requirement of notice, opportunity to cure or other condition prior to the exercise of any right of acceleration); or (f) Debtor or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of Debtor or Guarantor; or (g) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of Debtor or Guarantor (unless discharged by payment, release or bond not more than ten days after such event has occurred); or (h) there shall occur the dissolution, termination of existence, insolvency, or business failure of Debtor or Guarantor, or the appointment of a receiver, trustee or custodian for Debtor or Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by Debtor or Guarantor, or the commencement of any proceeding by or against Debtor or Guarantor under any reorganization, bankruptcy, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (i) Debtor or Guarantor shall be deceased or declared incompetent by any court or a guardian or conservator shall be appointed for either of them or for the property of either of them; or (j) Guarantor or Debtor shall generally not pay their respective debts as they become due or shall enter into any agreement (whether written or oral), or offer to enter into any such agreement, with all or a significant number of its creditors regarding any moratorium or other indulgence with respect to its debts or the participation of such creditors or their representatives in the supervision, management, or control of the business of either of them; or (k) Debtor or Guarantor shall conceal, remove or permit to be concealed or removed any part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (l) the board of directors or shareholders of Debtor or Guarantor shall adopt any resolution or plan for its dissolution or the liquidation of all or substantially all of its assets; or (m) Guarantor shall attempt to revoke this Guaranty. All of the foregoing are hereinafter referred to as "Events of Default".

       7.    Indemnity. Guarantor hereby agrees to indemnify SALLYPORT and hold SALLYPORT harmless from and against any and all claims (including any Avoidance Claim), debts, liabilities, demands, obligations, actions, causes of action, penalties, costs and expenses (including without limitation attorneys' fees), of every nature, character and description, which SALLYPORT may sustain or incur based upon or arising out of any of the Indebtedness, any actual or alleged failure to collect and pay over any withholding or other tax relating to Debtor or its employees, any relationship or agreement between SALLYPORT and Debtor, any actual or alleged failure of SALLYPORT to comply with any writ of attachment or other legal process relating to Debtor or any of its property, or any other matter, cause or thing whatsoever occurred, done, omitted or suffered to be done by SALLYPORT relating in any way to Debtor or the Indebtedness. Notwithstanding any provision in this Guaranty to the contrary, the indemnity agreement set forth in this Paragraph 7 shall survive any termination or any attempt at revocation of this Guaranty and shall for all purposes continue in full force and effect. Avoidance Claim shall mean the assertion, complaint, judgment or otherwise against Debtor or Guarantor, that any payment received by or for the benefit of Debtor or Guarantor, whether the amount related thereto was paid by, on behalf or for the benefit of the Account

EXHIBIT 1 - 034



Debtor, Debtor or Guarantor, or any consensual or non-consensual lien upon Debtor's or Guarantor's interest in assets granted to SALLYPORT is avoidable against or recoverable from SALLYPORT under the United States Bankruptcy Code, any other debtor relief statute, including but not limited to, preference claims, fraudulent transfer claims, or through receivership, assignment for the benefit of creditors or any equivalent recovery law, rule or regulation which relates to the adjustment of debtor and creditor relations.

8.      Subordination.  Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from Debtor to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness.  Subordinated debts, liabilities and obligations shall not include (i) reasonable salary, and (ii) reimbursement of reasonable business expenses payable from time to time from Debtor to Guarantor, and (iii) to the extent Debtor is a Subchapter S corporation or a Limited Liability Company and Guarantor is a shareholder of member of Debtor, as applicable, distributions payable to Guarantor in an amount equal to the tax obligation of Guarantor for the income allocable to Guarantor. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at the time of such payment any Indebtedness is outstanding. Debtor and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of Debtor's property are hereby authorized and directed to pay to SALLYPORT the entire unpaid balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to SALLYPORT all rights to any and all debts, liabilities and obligations owing from Debtor to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of Debtor.  Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held as trustee for the benefit of SALLYPORT and shall forthwith be paid over to SALLYPORT to be applied to the Indebtedness in such order and sequence as SALLYPORT shall in its sole discretion determine, without limiting or affecting any other right or remedy which SALLYPORT may have hereunder or otherwise and without otherwise affecting the liability of Guarantor hereunder.  Guarantor hereby expressly waives any right to set off or assert any counterclaim against Debtor.

9.      Notification by Guarantor  Before Guarantor may, under any circumstances seek to hold SALLYPORT responsible for taking any uncommercially reasonable action, Guarantor shall be required to first notify SALLYPORT in writing of all reasons why Guarantor believes SALLYPORT has acted in any uncommercially reasonable manner and advise SALLYPORT of the action that Guarantor believes SALLYPORT should take.

10.      Independent Liability.  Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which Debtor may be sued or in separate actions, as often as deemed advisable by SALLYPORT.  The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor (including without limitation any other persons signing this Guaranty). The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following:  (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by SALLYPORT or set forth in this Guaranty); or (b) any direction as to the application of payment by Debtor or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guaranty or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or increase, decrease, or change in membership of any Guarantor which is a partnership. Guarantor hereby expressly represents that

EXHIBIT 1 - 035



he was not induced to give this Guaranty by the fact that there are or may be other guarantors either under this Guaranty or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

11.   Remedies Cumulative; No Waiver.   SALLYPORT shall have the right to seek recourse against Guarantor to the full extent provided for herein and in any other instrument or agreement evidencing obligations of Guarantor to SALLYPORT, and against Debtor to the full extent of the Indebtedness. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of SALLYPORT's right to proceed in any other form of action or proceeding or against any other party. The failure of SALLYPORT to enforce any of the provisions of this Guaranty at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same. All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to SALLYPORT by law or under any other instrument or agreement.

12.   Time of Essence.   Time is of the essence in the performance by Guarantor of each and every obligation under this Guaranty.

13.   Financial Condition of Debtor.   Guarantor is fully aware of the financial condition of Debtor and is executing and delivering this Guaranty at Debtor's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of SALLYPORT with respect thereto. Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning Debtor's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting SALLYPORT to furnish to him any information now or hereafter in SALLYPORT's possession concerning the same or any other matter. By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges including without limitation the possibility that Debtor will incur additional Indebtedness for which Guarantor will be liable hereunder after Debtor's financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Debtor. Guarantor shall have no right to require SALLYPORT to obtain or disclose any information with respect to the Indebtedness, the financial condition or character of Debtor, the existence of any collateral or security for any or all of the Indebtedness, the filing by or against Debtor of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the Indebtedness, any action or non-action on the part of SALLYPORT, Debtor, or any other person, or any other matter, fact, or occurrence.

14.   Reports and Financial Statements of Guarantor.   Guarantor shall, at its sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to SALLYPORT on SALLYPORT's request (a) such financial statements and reports concerning Guarantor for such periods of time as SALLYPORT may designate (which financial statements shall, if requested by SALLYPORT, be audited by certified public accountants acceptable to SALLYPORT), (b) any other information concerning Guarantor's business, financial condition or affairs as SALLYPORT may request, and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as SALLYPORT may from time to time request. Guarantor hereby intentionally and knowingly waives any and all rights and privileges it may have not to divulge or deliver said tax returns, reports and other information which are requested by SALLYPORT hereunder or in any litigation in which SALLYPORT may be involved relating directly or indirectly to Debtor or to Guarantor. Guarantor further agrees immediately to give written notice to SALLYPORT of any adverse change in Guarantor's financial condition and of any condition or event, which constitutes an Event of Default under this Guaranty. All

EXHIBIT 1 - 036



reports and information furnished to SALLYPORT hereunder shall be complete, accurate and correct in all respects. Whenever requested, Guarantor shall further deliver to SALLYPORT a certificate signed by Guarantor (and, if Guarantor is a partnership, by all general partners of Guarantor, in their individual capacities, and, if Guarantor is a corporation, by the president and secretary of Guarantor, in their individual capacities) warranting and representing that all reports, financial statements and other documents and information delivered or caused to be delivered to SALLYPORT under this Guaranty, are complete, correct and thoroughly and accurately present the financial condition of Guarantor, and that there exists on the date of delivery of said certificate to SALLYPORT no condition or event which constitutes an Event of Default under this Guaranty.

15.   Representations and Warranties.  Guarantor hereby represents and warrants that (a) it is in Guarantor's direct interest to assist Debtor in procuring credit, because Debtor is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor, (b) this Guaranty has been duly and validly authorized, executed and delivered and constitutes the valid and binding obligation of Guarantor, enforceable in accordance with its terms, and (c) the execution and delivery of this Guaranty does not violate or constitute a default under (with or without the giving of notice, the passage of time, or both) any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which it or its assets are affected or bound.

16.   Authority of Debtor's Representatives.  If Debtor is a corporation, partnership or other entity, Guarantor hereby agrees that SALLYPORT shall have no obligation to inquire into the power or authority of Debtor or any of its officers, directors, partners, or agents acting or purporting to act on its behalf, and any Indebtedness made or created in reliance upon the professed exercise of any such power or authority shall be included in the Indebtedness guaranteed hereby.

17.   Integration.  This Guaranty is the entire and only agreement between Guarantor and SALLYPORT with respect to the guaranty of the Indebtedness of Debtor by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby. No course of dealings between the parties, no usage of the trade, and no parole or extrinsic evidence of any nature shall be used or be relevant to supplement or explain or modify any term or provision of this Guaranty. There are no conditions to the full effectiveness of this Guaranty.

18.   Amendment.  The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of SALLYPORT.

19.   Costs.  Whether or not suit be instituted, Guarantor agrees to reimburse SALLYPORT on demand for all attorneys' fees and all other costs and expenses incurred by SALLYPORT in enforcing or defending claims relating to this Guaranty, or arising out of or relating in any way to this Guaranty, or in enforcing any of the Indebtedness against Debtor, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse SALLYPORT on demand for all attorneys' fees and costs SALLYPORT incurs in any way relating to Guarantor, Debtor or the Indebtedness, in order to: obtain legal advice; enforce, defend or seek to enforce or defend any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, Avoidance Claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent SALLYPORT in any litigation with respect to Debtor's or Guarantor's affairs.

Page 37 of 41

EXHIBIT 1 - 037



In the event either SALLYPORT or Guarantor files any lawsuit against the other predicated on a breach of this Guaranty or in any manner which relates to this Guaranty, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

20.     <u>Successors and Assigns</u>. All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by SALLYPORT and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to SALLYPORT shall terminate this Guaranty as to his estate, and, notwithstanding the death of Guarantor or notice thereof to SALLYPORT, this Guaranty shall continue in full force and effect with respect to all Indebtedness, including without limitation Indebtedness incurred or created after the death of Guarantor and notice thereof to SALLYPORT.

21.     <u>Notices</u>. Any notice which a party shall be required or shall desire to give to the other hereunder shall be given by personal delivery or by depositing the same in the United States mail, first-class postage prepaid, addressed to SALLYPORT at its address set forth in the heading of this Guaranty and to Guarantor at his address set forth under his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or 3 days after the date of mailing as aforesaid. SALLYPORT and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give SALLYPORT immediate written notice of any change in its address. Until a written notice of change in address is given as provided herein, the most recent address shall be the correct address for notice purposes hereunder.

22.     <u>Construction; Severability</u>. If more than one person has executed this Guaranty, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guaranty, this Guaranty shall in all respects be interpreted as though each person signing this Guaranty had signed a separate Guaranty, and references herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guaranty. As used in this Guaranty, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provision of this Guaranty or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guaranty and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guaranty being severable in any such instance.

23.     <u>Paragraph Headings</u>. Paragraph headings are used herein for convenience only. Guarantor acknowledges that the same may not describe completely the subject matter of the applicable paragraph, and the same shall not be used in any manner to construe, limit, define or interpret any term or provision hereof.

24.     <u>Governing Law; Venue and Jurisdiction</u>. This Guaranty and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto shall be governed, construed, and interpreted in accordance with the internal laws of the State of Texas. In order to induce SALLYPORT to accept this Guaranty, and as a material part of the consideration therefor, Guarantor (i) agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of SALLYPORT, be litigated in courts located within Harris County, Texas, (ii) consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method

EXHIBIT 1 - 038



permitted by law; and (iii) waives any and all rights Guarantor may have to transfer or change the venue of any such action or proceeding.

25.    <u>Security</u>. This Guaranty is secured by the following: All Assets.

26.    <u>Receipt of Copy</u>. Guarantor acknowledges receipt of a copy of this Guaranty.

27.    *<u>Waiver of Right to Jury Trial</u>. To the fullest extent permitted by applicable law, SALLYPORT and Guarantor each hereby irrevocably and expressly waive the right to trial by jury in any action or proceeding, or counterclaim (whether based upon contract, tort, or otherwise) based upon, arising out of, or in any way relating to:  (i) this Guaranty; (ii) the obligations or any of the transactions contemplated hereby or thereby or the parties' actions in the negotiation, administration, or enforcement hereof or thereof; (iii) any other present or future instrument or agreement between SALLYPORT and Guarantor; or (iv) any conduct, acts or omissions of SALLYPORT or Guarantor or any of their directors, officers, employees, agents, attorneys or any other persons affiliated with SALLYPORT or Guarantor. Guarantor acknowledges that such waiver is made with full knowledge and understanding of the nature of the rights and benefits waived hereby, and with the benefit of advice of counsel of its choosing.*

**[Signatures on the following page]**

EXHIBIT 1 - 039



**GUARANTOR FURTHER REPRESENTS THAT THEY HAVE HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT WITH INDEPENDANT LEGAL COUNSEL OR OTHER PROFESSIONALS. GUARANTOR KNOWINGLY AND VOLUNTARILY ENTERS INTO THIS AGREEMENT FOLLOWING THE OPPORTUNITY TO SEEK ASSISTANCE, REVIEW OR CONSULTATION WITH LEGAL COUNSEL.**

DATED: _6/18/21_

WITNESS: _____

GUARANTOR SIGNATURE

_____

Tania Tomyn

Home Address:

_27551 Gold Dust La._

_Laguna Hills, CA. 92653_

Telephone Number: _248·505·1266_

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF _CALIFORNIA_ )
                       ) SS:
COUNTY OF _ORANGE_     )

WITNESS my hand and official seal in the County and State last aforesaid this _18th_ day of _June_, 2021.

_____
Notary Public        **See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

Page 40 of 41

EXHIBIT 1 - 040

## CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of
the individual who signed the document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

State of California          )

County of ORANGE          )

On JUNE 18, 2021 before me, Ann Marie Provencio NOTARY PUBLIC
                                                   (here insert name and title of the officer)

personally appeared TANIA TOMYN

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANN MARIE PROVENCIO
Notary Public - California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

Signature _____          (Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an
unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of CONTINUING GUARANTY
TANIA TOMYN

containing 9 pages, and dated JUNE 18, 2021.
P86631-40
The signer(s) capacity or authority is/are as:

☐ Individual(s)
☐ Attorney-In-Fact
☑ Corporate Officer(s) _____
                        Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
            Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
☑ form(s) of identification  ○ credible witness(es)

Notarial event is detailed in notary journal on:
    Page # _____  Entry # _____

Notary contact: 949-466-8731

Other
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
☐ _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772   Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 1 - 041



**PASSPORT/DRIVER LICENSE – Tania Tomyn**



Signature: _____

IN WITNESS WHEREEOF, certified to be a true copy of the **original** and true likeness of the client.

I, the undersigned Notary Public, in and for the jurisdiction aforesaid,
_____, does certify that the above Photo ID bears a true likeness to the
individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and
acknowledged the execution of same as his/her free act and deed.

STATE OF  CALIFORNIA      )
                          ) SS:
COUNTY OF  ORANGE         )

WITNESS my hand and official seal in the County and State last aforesaid this 18th day of JUNE, 2021

_____
Notary Public
                    **See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

EXHIBIT 1 - 042

## CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                )

County of _____Orange_____        )

On ___June 18, 2021___ before me, ___Ann Marie Provencio   Notary Public___
                                        (here insert name and title of the officer)

personally appeared ___Tania   Tomyn___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

ANN MARIE PROVENCIO
Notary Public – California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

(Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of __COPY  CERTIFICATION__

__DRIVERS  LICENSE  B8216290__

containing ___1___ pages, and dated ___6/18/2021___ .

The signer(s) capacity or authority is/are as:
- ☐ Individual(s)
- ☐ Attorney-in-Fact
- ☑ Corporate Officer(s) _____
                              Title(s)

- ☐ Guardian/Conservator
- ☐ Partner - Limited/General
- ☐ Trustee(s)
- ☐ Other: _____

representing: _____
            Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
- ☑ form(s) of identification  ☐ credible witness(es)

Notarial event is detailed in notary journal on:
   Page #  _____   Entry #  _____

Notary contact: __949 466 8731__

Other
- ☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
- ☐ _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 1 - 043



**CONTINUING GUARANTY**
(Aaron Smith)

THIS CONTINUING GUARANTY ("Guaranty") is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of **SALLYPORT COMMERCIAL FINANCE, LLC** a Delaware limited liability company (hereinafter called "SALLYPORT"), whose address is 14100 Southwest Freeway, Suite 210, Sugar Land, TX 77478 with respect to the indebtedness of Retrolock Corporation organized under the laws of the State of California (hereinafter called "Debtor").

1.   <u>Continuing Guaranty</u>.  Guarantor hereby unconditionally guarantees and promises to pay on demand to SALLYPORT, at the address indicated above, or at such other address as SALLYPORT may direct, in lawful money of the United States, and to perform for the benefit of SALLYPORT, all Indebtedness of Debtor now or hereafter owing to or held by SALLYPORT.  As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation:  (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of Debtor or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to SALLYPORT, or acquired by SALLYPORT, by assignment or otherwise, or held by SALLYPORT on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or un-liquidated, certain or uncertain, determined or undetermined, monetary or non-monetary, written or oral, and whether Debtor may be liable thereon individually or jointly with others, and regardless of whether recovery thereon may be or hereafter become barred by any statute of limitations, discharged or uncollectible in any bankruptcy, insolvency or other proceeding, or otherwise unenforceable, including without limitation any of the same which arise from or in connection with the financing or factoring of the accounts of Debtor or in any other manner; and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation, amendments, modifications, renewals and extensions which are evidenced by any new or additional instrument, document or agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against Debtor, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expenses of, for or incidental to collection thereof. As used herein, the term "Debtor" shall include any successor to the business and assets of Debtor, and shall also include Debtor in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for Debtor or any of its assets, should Debtor hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guaranteed hereby.  This Guaranty is given in consideration for credit and other financial accommodations which may, from time to time, be given by SALLYPORT to Debtor in SALLYPORT's sole discretion, but Guarantor acknowledges and agrees that acceptance by SALLYPORT of this Guaranty shall not constitute a commitment of any kind by SALLYPORT to extend such credit or other financial accommodation to Debtor or to permit Debtor to incur Indebtedness to SALLYPORT.  All sums due under this Guaranty shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

2.   <u>Ledger Debt</u>.  Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of Debtor, which shall mean and include all indebtedness of Debtor now or hereafter owing to a third party, which SALLYPORT has heretofore or hereafter purchases from such third party or in which SALLYPORT has heretofore or hereafter acquires a security interest, whether as a result of SALLYPORT factoring or financing the accounts receivable of such third party or otherwise. Guarantor acknowledges that SALLYPORT will be relying upon this Guaranty in factoring or financing the accounts receivable of such third parties (consisting of indebtedness and obligations now or hereafter

Page 1 of 11

Initials: _____

EXHIBIT 1 - 044



due from Debtor to such third parties), as well as in permitting Debtor to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by SALLYPORT to factor or finance the accounts receivable of such third parties or to permit Debtor to incur other Indebtedness.

3.    Waivers.  Guarantor hereby waives:  (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in Debtor's financial position; any other fact which might increase Guarantor's risk; any default, partial payment of non-payment of all or any part of the Indebtedness; the occurrence of any Event of Default (as hereinafter defined); any and all agreements and arrangements between SALLYPORT and Debtor and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person (including without limitation any other person signing this Guaranty); (b) any right to require SALLYPORT to institute suit against, or to exhaust its rights and remedies against, Debtor or any other person, or to proceed against any property of any kind which secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with SALLYPORT or any indebtedness of SALLYPORT to Debtor, or to exercise any other right or power, or pursue any other remedy SALLYPORT may have; (c) any defense arising by reason of any disability or other defense of Debtor or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of Debtor or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of SALLYPORT or others which directly or indirectly results in the discharge or release of Debtor or any other guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise; (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of Debtor or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of SALLYPORT to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of Debtor or any other person; (f) any defense based upon any failure of SALLYPORT to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or any failure of SALLYPORT to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by SALLYPORT to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; (g) any defense based upon or arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against Debtor or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding; (h) the benefit of any and all statutes of limitation with respect to any action based upon, arising out of or related to this Guaranty; (i) any right to revoke, cancel or terminate this Guaranty; (j)the benefit of any court bond which may be required to seek any form of prejudgment remedy; and (k) any defenses arising under Uniform Commercial Code Sections 9601 et seq.  Until all of the Indebtedness has been paid, performed and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness.  If any claim is ever made upon SALLYPORT for repayment or recovery of any amount or amounts received by SALLYPORT in payment of or on account of any of the Indebtedness, because of any claim that any such payment constituted a preferential transfer or fraudulent conveyance, or for any other reason whatsoever, and SALLYPORT repays all or part of said amount by

Initials: _____

EXHIBIT 1 - 045



reason of any judgment, decree or order of any court or administrative body having jurisdiction over SALLYPORT or any of its property, or by reason of any settlement or compromise of any such claim effected by SALLYPORT with any such claimant (including without limitation the Debtor), then and in any such event, Guarantor agrees that any such judgment, decree, order, settlement and compromise shall be binding upon Guarantor, notwithstanding any release or attempt at revocation of this Guaranty or the cancellation of any note or other instrument evidencing any of the Indebtedness, or any release of any of the Indebtedness, and the Guarantor shall be and remain liable to SALLYPORT under this Guaranty for the amount so repaid or recovered, to the same extent as if such amount had never originally been received by SALLYPORT and the provisions of this sentence shall survive and continue in effect, notwithstanding any release or attempt at revocation hereof.

4.    Consents.  Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, SALLYPORT may, from time to time before termination or after any attempt at revocation of this Guaranty, do any one or more of the following in SALLYPORT's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to Debtor or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which SALLYPORT at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action which results in the release of, any one or more endorsers or guarantors of all or any part of the Indebtedness, including, without limitation, one or more parties to this Guaranty, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon; (f) apply any sums received from Debtor, any other guarantor, endorser, or co-signer, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as SALLYPORT determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as SALLYPORT determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable.  Guarantor consents and agrees that SALLYPORT shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness.  Guarantor further consents and agrees that SALLYPORT shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness.  Without limiting the generality of the foregoing, SALLYPORT shall have no obligation to monitor, verify, audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

5.    Exercise of Rights and Remedies, Foreclosure of Trust Deeds. The undersigned Guarantor consents and agrees that, without notice to or by the undersigned and without affecting or impairing in any way the obligations or liability of the undersigned Guarantor hereunder, SALLYPORT may, from time to time, exercise any right or remedy it may have with respect to any or all of the obligations or any property securing any or all of the obligations or any guaranty thereof, including without limitation, judicial foreclosure, nonjudicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property.

Page 3 of 11

Initials: _____

EXHIBIT 1 - 046



The undersigned Guarantor waives all rights and defenses that such Guarantor may have because the debtor's debt is secured by real property.

6.     <u>Acceleration</u>. Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of SALLYPORT, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to SALLYPORT by Debtor or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect: or (b) Debtor or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to SALLYPORT or to any parent, subsidiary or corporate affiliate of SALLYPORT, whether under this Guaranty or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) there occurs in SALLYPORT's judgment a material impairment of the prospect of payment or performance of any or all of the Indebtedness; or (e) any event shall occur which may or does result in the acceleration of the maturity of any indebtedness of Debtor or Guarantor to others (regardless of any requirement of notice, opportunity to cure or other condition prior to the exercise of any right of acceleration); or (f) Debtor or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of Debtor or Guarantor; or (g) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of Debtor or Guarantor (unless discharged by payment, release or bond not more than ten days after such event has occurred); or (h) there shall occur the dissolution, termination of existence, insolvency, or business failure of Debtor or Guarantor, or the appointment of a receiver, trustee or custodian for Debtor or Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by Debtor or Guarantor, or the commencement of any proceeding by or against Debtor or Guarantor under any reorganization, bankruptcy, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (i) Debtor or Guarantor shall be deceased or declared incompetent by any court or a guardian or conservator shall be appointed for either of them or for the property of either of them; or (j) Guarantor or Debtor shall generally not pay their respective debts as they become due or shall enter into any agreement (whether written or oral), or offer to enter into any such agreement, with all or a significant number of its creditors regarding any moratorium or other indulgence with respect to its debts or the participation of such creditors or their representatives in the supervision, management, or control of the business of either of them; or (k) Debtor or Guarantor shall conceal, remove or permit to be concealed or removed any part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (l) the board of directors or shareholders of Debtor or Guarantor shall adopt any resolution or plan for its dissolution or the liquidation of all or substantially all of its assets; or (m) Guarantor shall attempt to revoke this Guaranty. All of the foregoing are hereinafter referred to as "Events of Default".

7.     <u>Indemnity</u>. Guarantor hereby agrees to indemnify SALLYPORT and hold SALLYPORT harmless from and against any and all claims (including any Avoidance Claim), debts, liabilities, demands, obligations, actions, causes of action, penalties, costs and expenses (including without limitation attorneys' fees), of every nature, character and description, which SALLYPORT may sustain or incur based upon or arising out of any of the Indebtedness, any actual or alleged failure to collect and pay over any withholding or other tax relating to Debtor or its employees, any relationship or agreement between SALLYPORT and Debtor, any actual or alleged failure of SALLYPORT to comply with any writ of attachment or other legal

Initials: _____

EXHIBIT 1 - 047



process relating to Debtor or any of its property, or any other matter, cause or thing whatsoever occurred, done, omitted or suffered to be done by SALLYPORT relating in any way to Debtor or the Indebtedness. Notwithstanding any provision in this Guaranty to the contrary, the indemnity agreement set forth in this Paragraph 7 shall survive any termination or any attempt at revocation of this Guaranty and shall for all purposes continue in full force and effect. Avoidance Claim shall mean the assertion, complaint, judgment or otherwise against Debtor or Guarantor, that any payment received by or for the benefit of Debtor or Guarantor, whether the amount related thereto was paid by, on behalf or for the benefit of the Account Debtor, Debtor or Guarantor, or any consensual or non-consensual lien upon Debtor's or Guarantor's interest in assets granted to SALLYPORT is avoidable against or recoverable from SALLYPORT under the United States Bankruptcy Code, any other debtor relief statute, including but not limited to, preference claims, fraudulent transfer claims, or through receivership, assignment for the benefit of creditors or any equivalent recovery law, rule or regulation which relates to the adjustment of debtor and creditor relations.

8.      Subordination.  Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from Debtor to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness.  Subordinated debts, liabilities and obligations shall not include (i) reasonable salary, and (ii) reimbursement of reasonable business expenses payable from time to time from Debtor to Guarantor, and (iii) to the extent Debtor is a Subchapter S corporation or a Limited Liability Company and Guarantor is a shareholder of member of Debtor, as applicable, distributions payable to Guarantor in an amount equal to the tax obligation of Guarantor for the income allocable to Guarantor. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at the time of such payment any Indebtedness is outstanding. Debtor and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of Debtor's property are hereby authorized and directed to pay to SALLYPORT the entire unpaid balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to SALLYPORT all rights to any and all debts, liabilities and obligations owing from Debtor to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of Debtor.  Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held as trustee for the benefit of SALLYPORT and shall forthwith be paid over to SALLYPORT to be applied to the Indebtedness in such order and sequence as SALLYPORT shall in its sole discretion determine, without limiting or affecting any other right or remedy which SALLYPORT may have hereunder or otherwise and without otherwise affecting the liability of Guarantor hereunder.  Guarantor hereby expressly waives any right to set off or assert any counterclaim against Debtor.

9.      Notification by Guarantor  Before Guarantor may, under any circumstances seek to hold SALLYPORT  responsible for taking any uncommercially reasonable action, Guarantor shall be required to first notify SALLYPORT in writing of all reasons why Guarantor believes SALLYPORT has acted in any uncommercially reasonable manner and advise SALLYPORT of the action that Guarantor believes SALLYPORT should take.

10.     Independent Liability.  Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which Debtor may be sued or in separate actions, as often as deemed advisable by SALLYPORT.  The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor (including without limitation any other persons signing this Guaranty). The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or

Initials: _As_

EXHIBIT 1 - 048



more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by SALLYPORT or set forth in this Guaranty); or (b) any direction as to the application of payment by Debtor or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guaranty or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or increase, decrease, or change in membership of any Guarantor which is a partnership. Guarantor hereby expressly represents that he was not induced to give this Guaranty by the fact that there are or may be other guarantors either under this Guaranty or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

11.   Remedies Cumulative; No Waiver.   SALLYPORT shall have the right to seek recourse against Guarantor to the full extent provided for herein and in any other instrument or agreement evidencing obligations of Guarantor to SALLYPORT, and against Debtor to the full extent of the Indebtedness. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of SALLYPORT's right to proceed in any other form of action or proceeding or against any other party. The failure of SALLYPORT to enforce any of the provisions of this Guaranty at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same. All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to SALLYPORT by law or under any other instrument or agreement.

12.   Time of Essence.   Time is of the essence in the performance by Guarantor of each and every obligation under this Guaranty.

13.   Financial Condition of Debtor.   Guarantor is fully aware of the financial condition of Debtor and is executing and delivering this Guaranty at Debtor's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of SALLYPORT with respect thereto. Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning Debtor's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting SALLYPORT to furnish to him any information now or hereafter in SALLYPORT's possession concerning the same or any other matter. By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges including without limitation the possibility that Debtor will incur additional Indebtedness for which Guarantor will be liable hereunder after Debtor's financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Debtor. Guarantor shall have no right to require SALLYPORT to obtain or disclose any information with respect to the Indebtedness, the financial condition or character of Debtor, the existence of any collateral or security for any or all of the Indebtedness, the filing by or against Debtor of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the Indebtedness, any action or non-action on the part of SALLYPORT, Debtor, or any other person, or any other matter, fact, or occurrence.

Initials: _____

EXHIBIT 1 - 049



14.   Reports and Financial Statements of Guarantor.   Guarantor shall, at its sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to SALLYPORT on SALLYPORT's request (a) such financial statements and reports concerning Guarantor for such periods of time as SALLYPORT may designate (which financial statements shall, if requested by SALLYPORT, be audited by certified public accountants acceptable to SALLYPORT), (b) any other information concerning Guarantor's business, financial condition or affairs as SALLYPORT may request, and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as SALLYPORT may from time to time request.  Guarantor hereby intentionally and knowingly waives any and all rights and privileges it may have not to divulge or deliver said tax returns, reports and other information which are requested by SALLYPORT hereunder or in any litigation in which SALLYPORT may be involved relating directly or indirectly to Debtor or to Guarantor.  Guarantor further agrees immediately to give written notice to SALLYPORT of any adverse change in Guarantor's financial condition and of any condition or event, which constitutes an Event of Default under this Guaranty.  All reports and information furnished to SALLYPORT hereunder shall be complete, accurate and correct in all respects.  Whenever requested, Guarantor shall further deliver to SALLYPORT a certificate signed by Guarantor (and, if Guarantor is a partnership, by all general partners of Guarantor, in their individual capacities, and, if Guarantor is a corporation, by the president and secretary of Guarantor, in their individual capacities) warranting and representing that all reports, financial statements and other documents and information delivered or caused to be delivered to SALLYPORT under this Guaranty, are complete, correct and thoroughly and accurately present the financial condition of Guarantor, and that there exists on the date of delivery of said certificate to SALLYPORT no condition or event which constitutes an Event of Default under this Guaranty.

15.   Representations and Warranties.  Guarantor hereby represents and warrants that (a) it is in Guarantor's direct interest to assist Debtor in procuring credit, because Debtor is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor, (b) this Guaranty has been duly and validly authorized, executed and delivered and constitutes the valid and binding obligation of Guarantor, enforceable in accordance with its terms, and (c) the execution and delivery of this Guaranty does not violate or constitute a default under (with or without the giving of notice, the passage of time, or both) any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which it or its assets are affected or bound.

16.   Authority of Debtor's Representatives.  If Debtor is a corporation, partnership or other entity, Guarantor hereby agrees that SALLYPORT shall have no obligation to inquire into the power or authority of Debtor or any of its officers, directors, partners, or agents acting or purporting to act on its behalf, and any Indebtedness made or created in reliance upon the professed exercise of any such power or authority shall be included in the Indebtedness guaranteed hereby.

17.   Integration.  This Guaranty is the entire and only agreement between Guarantor and SALLYPORT with respect to the guaranty of the Indebtedness of Debtor by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.  No course of dealings between the parties, no usage of the trade, and no parole or extrinsic evidence of any nature shall be used or be relevant to supplement or explain or modify any term or provision of this Guaranty.  There are no conditions to the full effectiveness of this Guaranty.

Initials: _____

EXHIBIT 1 - 050



18.   Amendment.  The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of SALLYPORT.

19.   Costs.  Whether or not suit be instituted, Guarantor agrees to reimburse SALLYPORT on demand for all attorneys' fees and all other costs and expenses incurred by SALLYPORT in enforcing or defending claims relating to this Guaranty, or arising out of or relating in any way to this Guaranty, or in enforcing any of the Indebtedness against Debtor, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness.  Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse SALLYPORT on demand for all attorneys' fees and costs SALLYPORT incurs in any way relating to Guarantor, Debtor or the Indebtedness, in order to: obtain legal advice; enforce, defend or seek to enforce or defend any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, Avoidance Claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent SALLYPORT in any litigation with respect to Debtor's or Guarantor's affairs. In the event either SALLYPORT or Guarantor files any lawsuit against the other predicated on a breach of this Guaranty or in any manner which relates to this Guaranty, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

20.   Successors and Assigns.  All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by SALLYPORT and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to SALLYPORT shall terminate this Guaranty as to his estate, and, notwithstanding the death of Guarantor or notice thereof to SALLYPORT, this Guaranty shall continue in full force and effect with respect to all Indebtedness, including without limitation Indebtedness incurred or created after the death of Guarantor and notice thereof to SALLYPORT.

21.   Notices.  Any notice which a party shall be required or shall desire to give to the other hereunder shall be given by personal delivery or by depositing the same in the United States mail, first-class postage prepaid, addressed to SALLYPORT at its address set forth in the heading of this Guaranty and to Guarantor at his address set forth under his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or 3 days after the date of mailing as aforesaid.  SALLYPORT and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith.  Guarantor shall give SALLYPORT immediate written notice of any change in its address. Until a written notice of change in address is given as provided herein, the most recent address shall be the correct address for notice purposes hereunder.

22.   Construction; Severability.  If more than one person has executed this Guaranty, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more such persons and their obligations hereunder shall be joint and several.  Without limiting the generality of the foregoing, if more than one person has executed this Guaranty, this Guaranty shall in all respects be interpreted as though each person signing this Guaranty had signed a separate Guaranty, and references herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guaranty.  As used in this Guaranty, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property.  Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine

Initials: _____

EXHIBIT 1 - 051



and feminine, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires.  If any provision of this Guaranty or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guaranty and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guaranty being severable in any such instance.

23.     Paragraph Headings.  Paragraph headings are used herein for convenience only.  Guarantor acknowledges that the same may not describe completely the subject matter of the applicable paragraph, and the same shall not be used in any manner to construe, limit, define or interpret any term or provision hereof.

24.,.   Governing Law, Venue and Jurisdiction.  This  Guaranty and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto shall be governed, construed, and interpreted in accordance with the internal laws of the State of Texas.  In order to induce SALLYPORT to accept this Guaranty, and as a material part of the consideration therefor, Guarantor (i) agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of SALLYPORT, be litigated in courts located within Harris County, Texas, (ii) consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) waives any and all rights Guarantor may have to transfer or change the venue of any such action or proceeding.

25.     Security.  This Guaranty is secured by the following: All Assets.

26.     Receipt of Copy.  Guarantor acknowledges receipt of a copy of this Guaranty.

27.     *Waiver of Right to Jury Trial.  To the fullest extent permitted by applicable law, SALLYPORT and Guarantor each hereby irrevocably and expressly waive the right to trial by jury in any action or proceeding, or counterclaim (whether based upon contract, tort, or otherwise) based upon, arising out of, or in any way relating to: (i) this Guaranty; (ii) the obligations or any of the transactions contemplated hereby or thereby or the parties' actions in the negotiation, administration, or enforcement hereof or thereof; (iii) any other present or future instrument or agreement between SALLYPORT and Guarantor; or (iv) any conduct, acts or omissions of SALLYPORT or Guarantor or any of their directors, officers, employees, agents, attorneys or any other persons affiliated with SALLYPORT or Guarantor. Guarantor acknowledges that such waiver is made with full knowledge and understanding of the nature of the rights and benefits waived hereby, and with the benefit of advice of counsel of its choosing.*

[Signatures on the following page]

Initials: _____

EXHIBIT 1 - 052



SALLYPORT
commercial finance ᴸᴾ

**GUARANTOR FURTHER REPRESENTS THAT THEY HAVE HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT WITH INDEPENDANT LEGAL COUNSEL OR OTHER PROFESSIONALS. GUARANTOR KNOWINGLY AND VOLUNTARILY ENTERS INTO THIS AGREEMENT FOLLOWING THE OPPORTUNITY TO SEEK ASSISTANCE, REVIEW OR CONSULTATION WITH LEGAL COUNSEL.**

DATED: 6/18/21

WITNESS:

GUARANTOR SIGNATURE

Aaron Smith

Home Address:

27551 Goldenst Lane

Laguna Hills, CA 92653

Telephone Number: 248 797 1284

---

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF CALIFORNIA )
                                            ) SS:
COUNTY OF ORANGE )

WITNESS my hand and official seal in the County and State last aforesaid this 18ᵗʰ day of JUNE , 2021.

_____
Notary Public

**See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

Page 10 of 11

Initials: AS

EXHIBIT 1 - 053

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )

County of _ORANGE_          )

On _JUNE 18, 2021_ before me, _Ann Marie Provencio Notary Public_
(here insert name and title of the officer)

personally appeared _AARON SMITH_

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANN MARIE PROVENCIO
Notary Public - California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

Signature _____

(Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _CONTINUING GUARANTY_
_SONNY POOR_

containing _11_ pages, and dated _____.

The signer(s) capacity or authority is/are as:
- [ ] Individual(s)
- [ ] Attorney-in-Fact
- [x] Corporate Officer(s) _____
  Title(s)
- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
- [x] form(s) of identification   [ ] credible witness(es)

Notarial event is detailed in notary journal on:
Page #_____   Entry #_____

Notary contact: _949-466-8731_

Other
- [ ] Additional Signer(s)   [ ] Signer(s) Thumbprint(s)
- [ ] _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 1 - 054



SALLYPORT
commercial finance

### PASSPORT/DRIVER LICENSE – Aaron Smith



Signature: _____

IN WITNESS WHEREOF, certified to be a true copy of the original and true likeness of the client.

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF   CALIFORNIA                    )
                                         ) SS:
COUNTY OF   ORANGE                       )

WITNESS my hand and official seal in the County and State last aforesaid this 18th day of JUNE , 2021.

_____
Notary Public

**See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

Page 11 of 11

Initials: _____

EXHIBIT 1 - 055

## CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )

County of _Orange_        )

On _June 18, 2021_ before me, _Ann Marie Provencio Notary Public_
(here insert name and title of the officer)

personally appeared _Aaron Smith_
_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

ANN MARIE PROVENCIO
Notary Public - California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

WITNESS my hand and official seal.

Signature _____        (Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _COPY Certification - Driver's License Y4308161_ containing _1_ pages, and dated _6/18/2021_ _Page 11_
The signer(s) capacity or authority is/are as:
☐ Individual(s)
☐ Attorney-in-Fact
☑ Corporate Officer(s) _____
                           Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other:

representing: _____
              Name(s) of Person(s) or Entity(ies) Signer is Representing

| Additional Information |
| --- |

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
☑ form(s) of identification ☐ credible witness(es)

Notarial event is detailed in notary journal on:
       Page #              Entry #

Notary contact: _949.466-8731_

Other
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
☐ _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT __ 056
1-J



**CONTINUING GUARANTY**
**(AT Installation, Inc.)**

THIS CONTINUING GUARANTY ("Guaranty") is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of **SALLYPORT COMMERCIAL FINANCE, LLC** a Delaware limited liability company (hereinafter called "SALLYPORT"), whose address is 14100 Southwest Freeway, Suite 210, Sugar Land, TX 77478 with respect to the indebtedness of Retrolock Corporation organized under the laws of the State of California (hereinafter called "Debtor").

     1.     <u>Continuing Guaranty</u>. Guarantor hereby unconditionally guarantees and promises to pay on demand to SALLYPORT, at the address indicated above, or at such other address as SALLYPORT may direct, in lawful money of the United States, and to perform for the benefit of SALLYPORT, all Indebtedness of Debtor now or hereafter owing to or held by SALLYPORT. As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of Debtor or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to SALLYPORT, or acquired by SALLYPORT, by assignment or otherwise, or held by SALLYPORT on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or un-liquidated, certain or uncertain, determined or undetermined, monetary or non-monetary, written or oral, and whether Debtor may be liable thereon individually or jointly with others, and regardless of whether recovery thereon may be or hereafter become barred by any statute of limitations, discharged or uncollectible in any bankruptcy, insolvency or other proceeding, or otherwise unenforceable, including without limitation any of the same which arise from or in connection with the financing or factoring of the accounts of Debtor or in any other manner; and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation, amendments, modifications, renewals and extensions which are evidenced by any new or additional instrument, document or agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against Debtor, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expenses of, for or incidental to collection thereof. As used herein, the term "Debtor" shall include any successor to the business and assets of Debtor, and shall also include Debtor in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for Debtor or any of its assets, should Debtor hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guaranteed hereby. This Guaranty is given in consideration for credit and other financial accommodations which may, from time to time, be given by SALLYPORT to Debtor in SALLYPORT's sole discretion, but Guarantor acknowledges and agrees that acceptance by SALLYPORT of this Guaranty shall not constitute a commitment of any kind by SALLYPORT to extend such credit or other financial accommodation to Debtor or to permit Debtor to incur Indebtedness to SALLYPORT. All sums due under this Guaranty shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

     2.     <u>Ledger Debt</u>. Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of Debtor, which shall mean and include all indebtedness of Debtor now or hereafter owing to a third party, which SALLYPORT has heretofore or hereafter purchases from such third party or in which SALLYPORT has heretofore or hereafter acquires a security interest, whether as a result of SALLYPORT factoring or financing the accounts receivable of such third party or otherwise. Guarantor acknowledges that SALLYPORT will be relying upon this Guaranty in factoring or financing

Page 1 of 10

Initials: _____

EXHIBIT 1 - 057



the accounts receivable of such third parties (consisting of indebtedness and obligations now or hereafter due from Debtor to such third parties), as well as in permitting Debtor to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by SALLYPORT to factor or finance the accounts receivable of such third parties or to permit Debtor to incur other Indebtedness.

3.    Waivers.  Guarantor hereby waives:  (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in Debtor's financial position; any other fact which might increase Guarantor's risk; any default, partial payment of non-payment of all or any part of the Indebtedness; the occurrence of any Event of Default (as hereinafter defined); any and all agreements and arrangements between SALLYPORT and Debtor and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person (including without limitation any other person signing this Guaranty); (b) any right to require SALLYPORT to institute suit against, or to exhaust its rights and remedies against, Debtor or any other person, or to proceed against any property of any kind which secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with SALLYPORT or any indebtedness of SALLYPORT to Debtor, or to exercise any other right or power, or pursue any other remedy SALLYPORT may have; (c) any defense arising by reason of any disability or other defense of Debtor or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of Debtor or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of SALLYPORT or others which directly or indirectly results in the discharge or release of Debtor or any other guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise; (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of Debtor or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of SALLYPORT to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of Debtor or any other person; (f) any defense based upon any failure of SALLYPORT to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or any failure of SALLYPORT to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by SALLYPORT to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; (g) any defense based upon or arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against Debtor or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding; (h) the benefit of any and all statutes of limitation with respect to any action based upon, arising out of or related to this Guaranty; (i) any right to revoke, cancel or terminate this Guaranty; (j)the benefit of any court bond which may be required to seek any form of prejudgment remedy; and (k) any defenses arising under Uniform Commercial Code Sections 9601 et seq. Until all of the Indebtedness has been paid, performed and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness.  If any claim is ever made upon SALLYPORT for repayment or recovery of any amount or amounts received by SALLYPORT in payment of or on account of any of the

Initials

EXHIBIT 1 - 058



Indebtedness, because of any claim that any such payment constituted a preferential transfer or fraudulent conveyance, or for any other reason whatsoever, and SALLYPORT repays all or part of said amount by reason of any judgment, decree or order of any court or administrative body having jurisdiction over SALLYPORT or any of its property, or by reason of any settlement or compromise of any such claim effected by SALLYPORT with any such claimant (including without limitation the Debtor), then and in any such event, Guarantor agrees that any such judgment, decree, order, settlement and compromise shall be binding upon Guarantor, notwithstanding any release or attempt at revocation of this Guaranty or the cancellation of any note or other instrument evidencing any of the Indebtedness, or any release of any of the Indebtedness, and the Guarantor shall be and remain liable to SALLYPORT under this Guarantor for the amount so repaid or recovered, to the same extent as if such amount had never originally been received by SALLYPORT and the provisions of this sentence shall survive and continue in effect, notwithstanding any release or attempt at revocation hereof.

    4.    <u>Consents</u>. Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, SALLYPORT may, from time to time before termination or after any attempt at revocation of this Guaranty, do any one or more of the following in SALLYPORT's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to Debtor or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which SALLYPORT at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action which results in the release of, any one or more endorsers or guarantors of all or any part of the Indebtedness, including, without limitation one or more parties to this Guaranty, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon; (f) apply any sums received from Debtor, any other guarantor, endorser, or co-signer, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as SALLYPORT determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as SALLYPORT determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that SALLYPORT shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness. Guarantor further consents and agrees that SALLYPORT shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness. Without limiting the generality of the foregoing, SALLYPORT shall have no obligation to monitor, verify, audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

    5.    <u>Exercise of Rights and Remedies, Foreclosure of Trust Deeds</u>. The undersigned Guarantor consents and agrees that, without notice to or by the undersigned and without affecting or impairing in any way the obligations or liability of the undersigned Guarantor hereunder, SALLYPORT may, from time to time, exercise any right or remedy it may have with respect to any or all of the obligations or any property securing any or all of the obligations or any guaranty thereof, including without limitation, judicial

Initials:

EXHIBIT 1 - 059



foreclosure, nonjudicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property.

The undersigned Guarantor waives all rights and defenses that such Guarantor may have because the debtor's debt is secured by real property.

6.    Acceleration.  Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of SALLYPORT, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to SALLYPORT by Debtor or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect: or (b) Debtor or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to SALLYPORT or to any parent, subsidiary or corporate affiliate of SALLYPORT, whether under this Guaranty or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) there occurs in SALLYPORT's judgment a material impairment of the prospect of payment or performance of any or all of the Indebtedness; or (e) any event shall occur which may or does result in the acceleration of the maturity of any indebtedness of Debtor or Guarantor to others (regardless of any requirement of notice, opportunity to cure or other condition prior to the exercise of any right of acceleration); or (f) Debtor or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of Debtor or Guarantor; or (g) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of Debtor or Guarantor (unless discharged by payment, release or bond not more than ten days after such event has occurred); or (h) there shall occur the dissolution, termination of existence, insolvency, or business failure of Debtor or Guarantor, or the appointment of a receiver, trustee or custodian for Debtor or Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by Debtor or Guarantor, or the commencement of any proceeding by or against Debtor or Guarantor under any reorganization, bankruptcy, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (i) Debtor or Guarantor shall be deceased or declared incompetent by any court or a guardian or conservator shall be appointed for either of them or for the property of either of them; or (j) Guarantor or Debtor shall generally not pay their respective debts as they become due or shall enter into any agreement (whether written or oral), or offer to enter into any such agreement, with all or a significant number of its creditors regarding any moratorium or other indulgence with respect to its debts or the participation of such creditors or their representatives in the supervision, management, or control of the business of either of them; or (k) Debtor or Guarantor shall conceal, remove or permit to be concealed or removed any part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (l) the board of directors or shareholders of Debtor or Guarantor shall adopt any resolution or plan for its dissolution or the liquidation of all or substantially all of its assets; or (m) Guarantor shall attempt to revoke this Guaranty. All of the foregoing are hereinafter referred to as "Events of Default".

7.    Indemnity.  Guarantor hereby agrees to indemnify SALLYPORT and hold SALLYPORT harmless from and against any and all claims (including any Avoidance Claim), debts, liabilities, demands, obligations, actions, causes of action, penalties, costs and expenses (including without limitation attorneys'

Initials: _____

EXHIBIT 1 - 060



SALLYPORT
commercial finance<sup>LLC</sup>

fees), of every nature, character and description, which SALLYPORT may sustain or incur based upon or arising out of any of the Indebtedness, any actual or alleged failure to collect and pay over any withholding or other tax relating to Debtor or its employees, any relationship or agreement between SALLYPORT and Debtor, any actual or alleged failure of SALLYPORT to comply with any writ of attachment or other legal process relating to Debtor or any of its property, or any other matter, cause or thing whatsoever occurred, done, omitted or suffered to be done by SALLYPORT relating in any way to Debtor or the Indebtedness. Notwithstanding any provision in this Guaranty to the contrary, the indemnity agreement set forth in this Paragraph 8 shall survive any termination or any attempt at revocation of this Guaranty and shall for all purposes continue in full force and effect. Avoidance Claim shall mean the assertion, complaint, judgment or otherwise against Debtor or Guarantor, that any payment received by or for the benefit of Debtor or Guarantor, whether the amount related thereto was paid by, on behalf or for the benefit of the Account Debtor, Debtor or Guarantor, or any consensual or non-consensual lien upon Debtor's or Guarantor's interest in assets granted to SALLYPORT is avoidable against or recoverable from SALLYPORT under the United States Bankruptcy Code, any other debtor relief statute, including but not limited to, preference claims, fraudulent transfer claims, or through receivership, assignment for the benefit of creditors or any equivalent recovery law, rule or regulation which relates to the adjustment of debtor and creditor relations.

8.  Subordination.  Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from Debtor to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness.  Subordinated debts, liabilities and obligations shall not include (i) reasonable salary, and (ii) reimbursement of reasonable business expenses payable from time to time from Debtor to Guarantor, and (iii) to the extent Debtor is a Subchapter S corporation or a Limited Liability Company and Guarantor is a shareholder of member of Debtor, as applicable, distributions payable to Guarantor in an amount equal to the tax obligation of Guarantor for the income allocable to Guarantor. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at the time of such payment any Indebtedness is outstanding. Debtor and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of Debtor's property are hereby authorized and directed to pay to SALLYPORT the entire unpaid balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to SALLYPORT all rights to any and all debts, liabilities and obligations owing from Debtor to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of Debtor. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held as trustee for the benefit of SALLYPORT and shall forthwith be paid over to SALLYPORT to be applied to the Indebtedness in such order and sequence as SALLYPORT shall in its sole discretion determine, without limiting or affecting any other right or remedy which SALLYPORT may have hereunder or otherwise and without otherwise affecting the liability of Guarantor hereunder.  Guarantor hereby expressly waives any right to set off or assert any counterclaim against Debtor.

9.  Notification by Guarantor  Before Guarantor may, under any circumstances seek to hold SALLYPORT responsible for taking any uncommercially reasonable action, Guarantor shall be required to first notify SALLYPORT in writing of all reasons why Guarantor believes SALLYPORT has acted in any uncommercially reasonable manner and advise SALLYPORT of the action that Guarantor believes SALLYPORT should take.

Page 5 of 10

Initials: _____

EXHIBIT 1 - 061



10.     Independent Liability.  Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which Debtor may be sued or in separate actions, as often as deemed advisable by SALLYPORT.  The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor (including without limitation any other persons signing this Guaranty). The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following:  (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by SALLYPORT or set forth in this Guaranty); or (b) any direction as to the application of payment by Debtor or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guaranty or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or increase, decrease, or change in membership of any Guarantor which is a partnership.  Guarantor hereby expressly represents that he was not induced to give this Guaranty by the fact that there are or may be other guarantors either under this Guaranty or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

11.     Remedies Cumulative; No Waiver.  SALLYPORT shall have the right to seek recourse against Guarantor to the full extent provided for herein and in any other instrument or agreement evidencing obligations of Guarantor to SALLYPORT, and against Debtor to the full extent of the Indebtedness.  No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of SALLYPORT's right to proceed in any other form of action or proceeding or against any other party.  The failure of SALLYPORT to enforce any of the provisions of this Guaranty at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same.  All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to SALLYPORT by law or under any other instrument or agreement.

12.     Time of Essence.  Time is of the essence in the performance by Guarantor of each and every obligation under this Guaranty.

13.     Financial Condition of Debtor.  Guarantor is fully aware of the financial condition of Debtor and is executing and delivering this Guaranty at Debtor's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of SALLYPORT with respect thereto.  Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning Debtor's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting SALLYPORT to furnish to him any information now or hereafter in SALLYPORT's possession concerning the same or any other matter.  By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges including without limitation the possibility that Debtor will incur additional Indebtedness for which Guarantor will be liable hereunder after Debtor's financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Debtor.  Guarantor shall have no right to require SALLYPORT to obtain or disclose any information with respect to the Indebtedness, the financial condition

Initials: _____

EXHIBIT 1 - 062



or character of Debtor, the existence of any collateral or security for any or all of the Indebtedness, the filing by or against Debtor of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the Indebtedness, any action or non-action on the part of SALLYPORT, Debtor, or any other person, or any other matter, fact, or occurrence.

14.     Reports and Financial Statements of Guarantor.  Guarantor shall, at its sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to SALLYPORT on SALLYPORT's request (a) such financial statements and reports concerning Guarantor for such periods of time as SALLYPORT may designate (which financial statements shall, if requested by SALLYPORT, be audited by certified public accountants acceptable to SALLYPORT), (b) any other information concerning Guarantor's business, financial condition or affairs as SALLYPORT may request, and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as SALLYPORT may from time to time request.  Guarantor hereby intentionally and knowingly waives any and all rights and privileges it may have not to divulge or deliver said tax returns, reports and other information which are requested by SALLYPORT hereunder or in any litigation in which SALLYPORT may be involved relating directly or indirectly to Debtor or to Guarantor.  Guarantor further agrees immediately to give written notice to SALLYPORT of any adverse change in Guarantor's financial condition and of any condition or event, which constitutes an Event of Default under this Guaranty.  All reports and information furnished to SALLYPORT hereunder shall be complete, accurate and correct in all respects.  Whenever requested, Guarantor shall further deliver to SALLYPORT a certificate signed by Guarantor (and, if Guarantor is a partnership, by all general partners of Guarantor, in their individual capacities, and, if Guarantor is a corporation, by the president and secretary of Guarantor, in their individual capacities) warranting and representing that all reports, financial statements and other documents and information delivered or caused to be delivered to SALLYPORT under this Guaranty, are complete, correct and thoroughly and accurately present the financial condition of Guarantor, and that there exists on the date of delivery of said certificate to SALLYPORT no condition or event which constitutes an Event of Default under this Guaranty.

15.     Representations and Warranties.  Guarantor hereby represents and warrants that (a) it is in Guarantor's direct interest to assist Debtor in procuring credit, because Debtor is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor, (b) this Guaranty has been duly and validly authorized, executed and delivered and constitutes the valid and binding obligation of Guarantor, enforceable in accordance with its terms, and (c) the execution and delivery of this Guaranty does not violate or constitute a default under (with or without the giving of notice, the passage of time, or both) any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which it or its assets are affected or bound.

16.     Authority of Debtor's Representatives.  If Debtor is a corporation, partnership or other entity, Guarantor hereby agrees that SALLYPORT shall have no obligation to inquire into the power or authority of Debtor or any of its officers, directors, partners, or agents acting or purporting to act on its behalf, and any Indebtedness made or created in reliance upon the professed exercise of any such power or authority shall be included in the Indebtedness guaranteed hereby.

17.     Integration.  This Guaranty is the entire and only agreement between Guarantor and SALLYPORT with respect to the guaranty of the Indebtedness of Debtor by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.  No course of dealings between the parties, no usage of the

Initials: _____

EXHIBIT 1 - 063



trade, and no parole or extrinsic evidence of any nature shall be used or be relevant to supplement or explain or modify any term or provision of this Guaranty. There are no conditions to the full effectiveness of this Guaranty.

18.   Amendment. The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of SALLYPORT.

19.   Costs. Whether or not suit be instituted, Guarantor agrees to reimburse SALLYPORT on demand for all attorneys' fees and all other costs and expenses incurred by SALLYPORT in enforcing or defending claims relating to this Guaranty, or arising out of or relating in any way to this Guaranty, or in enforcing any of the Indebtedness against Debtor, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse SALLYPORT on demand for all attorneys' fees and costs SALLYPORT incurs in any way relating to Guarantor, Debtor or the Indebtedness, in order to: obtain legal advice; enforce, defend or seek to enforce or defend any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, Avoidance Claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent SALLYPORT in any litigation with respect to Debtor's or Guarantor's affairs. In the event either SALLYPORT or Guarantor files any lawsuit against the other predicated on a breach of this Guaranty or in any manner which relates to this Guaranty, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

20.   Successors and Assigns. All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by SALLYPORT and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to SALLYPORT shall terminate this Guaranty as to his estate, and, notwithstanding the death of Guarantor or notice thereof to SALLYPORT, this Guaranty shall continue in full force and effect with respect to all Indebtedness, including without limitation Indebtedness incurred or created after the death of Guarantor and notice thereof to SALLYPORT.

21.   Notices. Any notice which a party shall be required or shall desire to give to the other hereunder shall be given by personal delivery or by depositing the same in the United States mail, first-class postage prepaid, addressed to SALLYPORT at its address set forth in the heading of this Guaranty and to Guarantor at his address set forth under his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or 3 days after the date of mailing as aforesaid. SALLYPORT and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give SALLYPORT immediate written notice of any change in its address. Until a written notice of change in address is given as provided herein, the most recent address shall be the correct address for notice purposes hereunder.

22.   Construction; Severability. If more than one person has executed this Guaranty, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guaranty, this Guaranty shall in all respects be interpreted as though each person signing this Guaranty had signed a separate Guaranty, and references herein to "other guarantors"

Initials: _____

EXHIBIT 1 - 064



SALLYPORT
commercial finance℠

or words of similar effect shall include without limitation other persons signing this Guaranty. As used in this Guaranty, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provision of this Guaranty or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guaranty and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guaranty being severable in any such instance.

23.    Paragraph Headings. Paragraph headings are used herein for convenience only. Guarantor acknowledges that the same may not describe completely the subject matter of the applicable paragraph, and the same shall not be used in any manner to construe, limit, define or interpret any term or provision hereof.

24.    Governing Law; Venue and Jurisdiction. This Guaranty and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto shall be governed, construed, and interpreted in accordance with the internal laws of the State of Texas. In order to induce SALLYPORT to accept this Guaranty, and as a material part of the consideration therefor, Guarantor (i) agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of SALLYPORT, be litigated in courts located within Harris County, Texas, (ii) consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) waives any and all rights Guarantor may have to transfer or change the venue of any such action or proceeding.

25.    Security. This Guaranty is secured by the following: All of each Guarantor's now owned or hereafter acquired Accounts, Equipment, Inventory, Financial Assets, Chattel Paper, Electronic Chattel Paper, Letters of Credit, Letter of Credit Rights, General Intangibles, Investment Property Goods, Deposit Accounts, Instruments, the Reserve, Commercial Tort Claims, Supporting Obligations, motor vehicles, all books, records, files and computer data related to the foregoing, and all proceeds of the foregoing.

26.    Receipt of Copy. Guarantor acknowledges receipt of a copy of this Guaranty.

27.    *Waiver of Right to Jury Trial.* *To the fullest extent permitted by applicable law, SALLYPORT and Guarantor each hereby irrevocably and expressly waive the right to trial by jury in any action or proceeding, or counterclaim (whether based upon contract, tort, or otherwise) based upon, arising out of, or in any way relating to: (i) this Guaranty; (ii) the obligations or any of the transactions contemplated hereby or thereby or the parties' actions in the negotiation, administration, or enforcement hereof or thereof; (iii) any other present or future instrument or agreement between SALLYPORT and Guarantor; or (iv) any conduct, acts or omissions of SALLYPORT or Guarantor or any of their directors, officers, employees, agents, attorneys or any other persons affiliated with SALLYPORT or Guarantor. Guarantor acknowledges that such waiver is made with full knowledge and understanding of the nature of the rights and benefits waived hereby, and with the benefit of advice of counsel of its choosing.*

[Signatures on the following page]

Page 9 of 10

Initials: _____

EXHIBIT 1 - 065



**SALLYPORT**
commercial finance™

**GUARANTOR FURTHER REPRESENTS THAT THEY HAVE HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT WITH INDEPENDANT LEGAL COUNSEL OR OTHER PROFESSIONALS. GUARANTOR KNOWINGLY AND VOLUNTARILY ENTERS INTO THIS AGREEMENT FOLLOWING THE OPPORTUNITY TO SEEK ASSISTANCE, REVIEW OR CONSULTATION WITH LEGAL COUNSEL.**

DATED: _6/18/21_

WITNESS: _____

AT Installation, Inc.

Print: _Tanra Tomyn_
Title: _owner/ President_

Address:

_22551 Gold Dust Ln_

_Laguna Hills, CA 92653_

Telephone number: _248·505·1266_

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF _CALIFORNIA_          )
                                            ) SS:
COUNTY OF _ORANGE_            )

WITNESS my hand and official seal in the County and State last aforesaid this _18th_ day of _June_, 2021.

_____
Notary Public                    **See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

Page 10 of 10

Initials: _____

EXHIBIT 1 - 066

THE

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )

County of  Orange                     )

On  June 18, 2021  before me,  Ann Marie Provencio  Notary Public,
_____
(here insert name and title of the officer)

personally appeared  Tania  Tomyn
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

ANN MARIE PROVENCIO
Notary Public - California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

WITNESS my hand and official seal.

Signature _____          (Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of  Continuing Guaranty

At Insurration

containing  10  pages, and dated  6/18/2021

The signer(s) capacity or authority is/are as:

☐ Individual(s)
☑ Attorney-In-Fact
☑ Corporate Officer(s) _____ Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

**Method of Signer Identification**

Proved to me on the basis of satisfactory evidence:
☑ form(s) of identification   ○ credible witness(es)

Notarial event is detailed in notary journal on:
     Page # _____    Entry # _____

Notary contact:  949-466-8731

**Other**
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
☐ _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 1 - 067



# CERTIFICATE OF CORPORATE RESOLUTIONS
AT Installation, Inc.
a California Corporation

June 15, 2021

The undersigned, being the President of Company a California Corporation organized under the laws of the State of California (the "Company") hereby certifies a special meeting of the Board of Directors of said Company was duly held at its office 1111 E Katella Avenue, Suite 230, Orange, CA 92867, on June 15, 2021, a quorum being present and the following resolutions being duly adopted:

RESOLVED: That it is in the best interest of this Company to enter into the Continuing Guaranty and the documents ancillary thereto (collectively, the "CG") with Sallyport Commercial Finance, LLC., located at 14100 Southwest Freeway Suite 210, Sugar Land, TX 77478 (hereafter referred to as "SCF") to be dated on or after the date hereof,

RESOLVED: That the form, terms and provisions of the CG and the transactions contemplated thereby be, and they hereby are, in all respects approved by Company, and that an officer of Company be, and hereby is, in the name and on behalf of Company, authorized to execute and deliver the CG and such other and further documentation as may be necessary to effectuate the factoring arrangement contemplated between SCF and this Company, such CG to be in substantially the form submitted to the Board of Directors with such additions, deletions or changes therein and modifications thereof as the officer executing the same shall approve, the execution and delivery of the CG by such officer to be conclusive evidence of said officer's approval of the same; and it is further

RESOLVED: That the President, Vice President, Treasurer, Secretary or other officer of this Company, or any one or more of them, being and the same are hereby authorized and empowered, on its behalf to execute and deliver said CG and such other and further documentation as may be necessary to effectuate the factoring arrangement contemplated between SCF and this Company; and it is further

RESOLVED: That any officer or officers of this Company and/or their nominees are hereby authorized and empowered, on its behalf, to execute and deliver any and all schedules of assignments of accounts, transfer of instruments, sales, pledges, notes, financial, financing and other statements, and any and all further agreements, papers, documents and/or certificates as may from time to time be requested by SCF, upon any matters or transactions arising under said CG or in connection with any financing arrangements with this Company; and it is further

RESOLVED: That any officer or officers of this Company and/or their nominees are hereby authorized and empowered on its behalf, to fulfill all obligations of Company under the CG and all agreements required thereunder, including (without limitation) the granting to Company of the security interest described in the CG; the appointment of Company as power of attorney Seller, coupled with certain interest as set forth in the CG; the payment of all such necessary costs and expenses as in such officer's judgment shall be necessary or proper to carry out the intent and accomplish the purposes of the foregoing resolutions; and the taking of all further action as each officer may deem necessary or appropriate in order to implement these resolutions, and the approval thereof shall be conclusively evidenced by the taking of such action.

RESOLVED: That all acts of the officers of this Company and/or their nominees and all agreements, modifications, transfers, assignments, certificates and statements, which they or any of them have done, executed or delivered pursuant to the CG or to facilitate transactions thereunder, are hereby ratified and approved; and it is further

RESOLVED: That any officer, agent or nominee of SCF is hereby authorized and empowered to endorse the name of this Company to any and all checks, drafts and other instruments for the payment of money, payable to this Company or its order, to deposit the same in any account or accounts of said SCF, with any bank or financial institution, and to deal with any and all such checks, drafts and other instruments or orders for the payment of money and the proceeds thereof as the property of SCF; and it is further

RESOLVED: That said bank or financial institution be, and they hereby are, authorized and requested to receive for deposit to the credit of SCF without further inquiry, all such checks, drafts and other orders or instruments for the payment of money, payable to this Company or its order, and that said bank or financial institution shall be under no liability to this Company, with respect to the disposition which SCF may or shall make of the said instruments or the proceeds thereof.

The undersigned further certifies that the foregoing resolutions remain in full force and effect, and have not been rescinded or modified and that the undersigned is a custodian of and familiar with the books and records of said Company and nothing contained in the Certificate of Incorporation, By-Laws or any other records prohibits the execution of the aforementioned agreements by said Company.

1

EXHIBIT 1 - 068



The undersigned further certifies that the following are the current duly elected officers of said corporation:

**● President Signature** _____   Print Name _Tania Tomyn_

Home Address _27551 Gold Dust Ln. Laguna Hills CA 92653_   Home Phone _248-505-1266_

Social Security #: ▓▓▓▓▓▓▓▓   % of Ownership: _100_

**● Vice President Signature** _____   Print Name _____

Home Address _____   Home Phone _____

Social Security #: _____   % of Ownership _____

**● Secretary Signature** _____   Print Name _Same as above_

Home Address _____   Home Phone _____

Social Security #: _____   % of Ownership: _____

**● Treasurer Signature** _____   Print Name _Same as above_

Home Address _____   Home Phone _____

Social Security #: _____   % of Ownership: _____

IN WITNESS WHEREOF, I have hereunto set my hand as President of Company, said Company, by order of its Board of Directors this _18th_ day of _June_, 2021.

Name: _Tania Tomyn_
Title:  President

IN WITNESS WHEREOF, I have hereunto signed my name as of this _18th_ day of _June_, 2021.

Name: _Tania Tomyn_
Title:  Secretary

_____
Notary

I, the undersigned Notary Public, in and for the jurisdiction aforesaid, _____, does certify that the above Photo ID bears a true likeness to the individual personally known to me as the person providing the ID, personally appeared before me on the date set forth above and acknowledged the execution of same as his/her free act and deed.

STATE OF _CALIFORNIA_  )
                         ) SS:
COUNTY OF _ORANGE_      )

WITNESS my hand and official seal in the County and State last aforesaid this _18th_ day of _JUNE_, 2021.

_____
Notary Public            **See Attached Certificate**

_____
Typed, printed or stamped name of Notary Public

2

EXHIBIT 1 - 069

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of _Orange_ )

On _JUNE 18, 2021_ before me, _Ann Marie Provencio    NOTARY PUBLIC_
(here insert name and title of the officer)

personally appeared _TANIA   TOMYN_
,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

ANN MARIE PROVENCIO
Notary Public – California
Orange County
Commission # 2267493
My Comm. Expires Nov 18, 2022

WITNESS my hand and official seal.

Signature _____                    (Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _CERTIFICATE OF CORPORATE_
_RESOLUTIONS  - A T  INSTALLATION_
containing _____ pages, and dated _6/18/2021_

The signer(s) capacity or authority is/are as:
☐ Individual(s)
☐ Attorney-in-Fact
☒ Corporate Officer(s) _____
                                              Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
                        Name(s) of Person(s) or Entity(ies) Signer is Representing

| Additional Information |
| --- |

Method of Signer Identification
Proved to me on the basis of satisfactory evidence:
☑ form(s) of identification ☐ credible witness(es)

Notarial event is detailed in notary journal on:
          Page #          Entry #

Notary contact: _949-466-873|_

Other
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
☐

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 1 - 070

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give Form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Retrolock Corporation

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)

210 W TAFT AVE

**6** City, state, and ZIP code

Orange, CA. 92865

Requester's name and address (optional)

**7** List account number(s) here (optional)

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here** | Signature of U.S. person ▶ | Date ▶ 6/17/21

**General Instructions**

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at www.irs.gov/fw9.

**Purpose of Form**

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting? on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

EXHIBIT 1 - 071



**SALLYPORT**
commercial finance™

Instructions for Accounts Receivable

Payments Received By Seller

June 15, 2021

Retrolock Corporation

*✱ Starting 30 DAYS AFTER $1.5M Funding as discussed 6/18/21*

If you receive a customer payment for any Accounts Receivable or any open invoice, **do not deposit the funds into your bank account nor cash the check.** Please handle the payment in the following way:

1) Immediately fax or email the check and its stub or remittance advice to Sallyport Commercial Finance, LLC ("SCF") at 832-939-9450 or Payments@Sallyportcf.com. Include a note indicating how you are delivering the payment to SCF (regular mail / overnight mail). If the payment was received electronically, the payment must be forwarded electronically to SCF and a copy of the bank statement needs to be forwarded via fax or email.

2) Deliver the original check as indicated in Number 1. Your account will be credited for the payment as being received the business day we received it. If the check is large, you may find it cost effective to send it via overnight delivery.

**Forwarding Payments:**

**US MAIL & Overnight Mail**

Sallyport Commercial Finance, LLC
PO Box 4776 #100
Houston
TX 77210-4776
Re: Retrolock Corporation.

**Wire Transfer**



I will immediately forward all payments for all payments for all Accounts to Sallyport Commercial Finance, LLC as directed above. I understand that by depositing or cashing such payments, I am committing a breach of contract that may result in termination of the Account Sale and Purchase Agreement and will carry severe penalties, including but not limited to as outlined in Section 5.1.2 and Misdirected Payment Fee.

The undersigned has the authority to execute this document and bind the Seller thereto:

Acknowledged by:

Signature: _____

Printed Name: TANIA TOMYN

Title: CEO

Date: 6/18/21

Page 41 of 41

EXHIBIT 1 - 072