# EXHIBIT "5"

## FORBEARANCE AGREEMENT

This Forbearance Agreement (the "Agreement") is made and entered into as of the 12th day of January, 2022 (the "Effective Date"), by and among Sallyport Commercial Finance, LLC, a Delaware limited liability company ("Sallyport"), on the one hand and, Retrolock Corporation., a California corporation ("Retrolock" or "Debtor"), AT Installation, Inc., a California corporation ("ATI"), Tania Tomyn ("Tomyn"), a resident of the State of California, and Aaron Wesley Smith, a resident of the State of California ("Smith" and together with ATI, Tomyn, each a "Guarantor" and collectively the "Guarantors., with reference to the following:

## RECITALS:

A.     **WHEREAS,** Sallyport and Debtor are parties to the agreements set forth in Schedule "A" attached hereto and incorporated by reference herein (each individually described therein and collectively referred to herein as the "Financing Agreements");

B.     **WHEREAS,** Pursuant to the Financing Agreements, Debtor granted to Sallyport and Sallyport holds a duly perfected security interest and lien upon all of the Collateral as provided for in the Financing Agreements to secure all amounts due under the Financing Agreements.

C.     **WHEREAS,** Guarantors are parties to the agreements set forth in Schedule "A" attached hereto and incorporated by reference herein (each individually described therein and collectively referred to herein as the "Guaranty Agreements");

D.     **WHEREAS,** pursuant to the Guaranty Agreements, Guarantors each individually, jointly and severally agreed to guaranty payment and performance of all of Obligations as defined in the Guaranty Agreements, including, without limitation, all amounts due Sallyport from Debtor pursuant to the Financing Agreements.

E.     **WHEREAS,** Pursuant to each Guaranty, the Guarantors, each respectively granted to Sallyport a security interest and lien upon all of the Collateral as provided for in each Guaranty to secure all amounts due under each respective Guaranty.

F.     **WHEREAS,** each lien is perfected by virtue of the UCC Financing Statement filed with the office of the California Secretary of State as detailed in the attached Schedule "B" of Financing Agreements, incorporated by reference herein and Sallyport is the perfected secured creditor of each of Debtor and Guarantor, respectively.

G.     **WHEREAS,** pursuant to the Financing Agreements, and in reliance on the Guaranty Agreements, Sallyport extended credit to Debtor by, among other things, extending financial accommodations from time to time to Debtor and there is now owing and unpaid the principal sum of $4,482,859.38. $4,593,998.77

H.     **WHEREAS,** Debtor and Guarantors each acknowledge and agree that all of the Obligations owing to Sallyport, whether pursuant to the Financing Agreements or the Guaranty

Agreements, as amended, modified or supplemented from time to time (collectively, the "Operative Documents :"), are valid, enforceable and unavoidable.

I.     **WHEREAS,** various events of default have occurred under the Financing Agreements, because, among other things, and without limitation, (i) repayment of the Obligations has not occurred because Account Debtors have set off amounts due on the Accounts based on Debtor's failure to timely pay vendors and other third parties, (ii) the setoffs by Account Debtor on Accounts have caused Debtor to be unable to pay obligations as and when they fall due and without weekly Overadvances from Sallyport Debtor does not have funds to cover expenses, (iii) Debtor has no availability for to support advances and (iv) despite Sallyport's demand therefore, Debtor has failed to repay such amounts in direct violation of the terms of the Financing Agreement (the "Existing Financing Defaults")

J.     **WHEREAS,** various events of default have occurred under the Guaranty Agreements, and despite Sallyport's demand therefore, the Debtor and Guarantors have failed to repay such amounts in direct violation of the terms of the Financing Agreements and the Guaranty Agreements, each respectively. (the "Existing Guaranty Defaults" and together with the Existing Financing Defaults, collectively, the "Existing Defaults").

K.     **WHEREAS,** as a result of the Existing Defaults, all obligations due and owing to Sallyport, whether pursuant to the Financing Agreements or the Guaranty Agreements, have been accelerated, are currently due and owing without offset of defense, and Sallyport is entitled to exercise all of its default related remedies against the Obligors.

L.     **WHEREAS,** Obligors each have requested that Sallyport forbear from enforcing any of its rights under the Operative Documents or exercising its secured creditor remedies as a result of an Existing Default(s) under the Operative Documents, in exchange for and pending a further default as provided.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and intending to be legally bound, Sallyport, Debtor and Guarantors each represent, warrant, acknowledge and mutually agree as follows:

## AGREEMENT

1.     **DEFINITIONS.** The following terms used herein shall have the following meaning. All capitalized terms used in this Agreement (including the Schedule "A" and Schedule "B" attached hereto) and not herein defined shall have the meaning set forth in the Operative Documents. In the event any defined term has different meanings set out in any of the Operative Documents, the meaning of such defined term used in this Agreement shall be the meaning that best applies to the use of the defined term herein. The use of the singular shall include the plural and vice versa, and the use of any gender shall apply to any other gender, as the context shall require.

a)     **"Additional Defaults"** – Shall mean any Event of Default other than the Existing Default.

b)    **"Event of Default"** – Shall mean any default under this Agreement, however so minor; any Additional Default under the Operative Documents, or any other documents executed by any Borrower and any Guarantor each in connection with this Agreement.

c)    **"Existing Default(s)"** – See Recital I.

d)    **"Forbearance Period"** – Shall commence on the date of this Agreement, continue day-to-day in Sallyport's sole and absolute discretion and if not terminated sooner, shall terminate on the Termination Date.

e)    **"Guarantor"** – See Preamble.

f)    **"Obligations"** – See Section 3.1

g)    **"Obligor(s)"** – Shall mean Debtor and Guarantors, each individually or collectively, as applicable.

h)    **"Operative Document(s)"** – See Recital H.

i)    **"Overadvance(s)"** – Shall mean Advance(s) made or at any time individually or in aggregate outstanding that exceed the Advance Rate and/or Maximum Facility Limit Amount, howsoever created or existing.

j)    **"Party(ies)"** – Shall mean each of Sallyport, Debtor and Guarantors, whether individually or collectively, as applicable.

k)    **"Termination Date"** – Shall be June 30th, 2022.

**Other Capitalized Terms** – All other capitalized terms not otherwise defined herein shall have that meaning as provided for in the Uniform Commercial Code or the Operative Documents.

2.    **RECITALS INCORPORATED.** The Parties each acknowledge, represent, and agree that the Recitals set forth hereinabove are accurate and are hereby incorporated by this reference as though fully set forth herein.

3.    **OBLIGATIONS DUE, DEFAULT, AND REAFFIRMATION OF SALLYPORT'S SECURITY INTEREST.**

3.1    Obligors each hereby acknowledge and agree that as of the Effective Date, that the amount owing to Sallyport is gross sum of $ 4,593,998.77 without fees incurred, whether or not as a result of the Existing Defaults. Of that sum, the amount of $ 2,050,179.56 is attributable to the "Overadvance" that has yet to be repaid, not including fees incurred based on the creating thereof. Obligors also affirm that the amount is subject to change as accounts are collected by Sallyport, proceeds from other Collateral are paid to Sallyport and fees accrue on any balance due, in accordance with the Operative Documents (all of which is including the definition of the "Obligations").

3.2    The Obligations are due and owing from Debtor and Guarantors without defense, setoff, or counter claim and are past due. Each and every representation, warranty and obligation contained in the Operative Documents are hereby incorporated by this reference as though fully set forth in this Agreement. Sallyport has a valid, enforceable, perfected and unavoidable security interest and lien in all of the Collateral as described in the Operative Documents.

3.3    Except as expressly provided in this Agreement, Sallyport has no obligation to modify, extend or otherwise amend the terms and conditions of the Operative Documents, and Sallyport's forbearance under this Agreement shall not create any such obligations.

3.4    The Existing Default(s) is/are in fact actual event(s) of default under the Operative Documents and Sallyport has the right to insist on full performance by the Obligors and Guarantors of all of their obligations under the Operative Documents and could enforce all of its rights and remedies.

3.5    Except as expressly provided in this Agreement, Sallyport has no obligation to negotiate with Obligors and Guarantors concerning the Operative Documents, and Sallyport's forbearance under this Agreement shall not create any such obligation.

4.    **WRITTEN AGREEMENTS**.

4.1    No representation, offer, concession, or statement made by Sallyport prior to this Agreement constitutes a waiver of any right, remedy, or defense Sallyport may have, or in any way modifies or terminates the Operative Documents, modifies the legal relationship of the parties or results in an admission against the interest of Sallyport.

4.2    Obligors and Guarantors confirm that in each place where their signatures appear on an Operative Document, such Operative Document was duly authorized and signed on behalf of such Debtor or Guarantor, the Operative Documents are in full force and effect and shall remain in full force and effect as modified by this Agreement.

5.    **NON-ADMISSIBLE**.    All negotiations prior to the execution of this Agreement shall be deemed to be discussions in the nature of settlement negotiations which no party shall have the right to use in connection with the exercise of any right, remedy, or defense under the Operative Documents or in any action at law or in equity arising therefrom or otherwise arising from the relationship among the Parties, and no statement (verbal or otherwise) made by any party in the course of the negotiations leading up to the execution of this Agreement shall be admissible in any proceeding at law or in equity involving the Operative Documents, or be deemed (a) an admission of any fact; or (b) evidence of or probative of any act or omission to act, or intent of any Party.

6.    **NO TOLLING**.

6.1    Prior discussions leading up to this Agreement shall not operate: (a) to relieve Obligors and Guarantors of their respective obligations to fully and timely comply with any and all obligations set forth in the Operative Documents; or (b) as a waiver by Sallyport of the right to demand full and timely performance of all obligations under the Operative Documents.

6.2     Except to the extent expressly provided to the contrary in this Agreement, neither the execution of this Agreement nor any discussions between or among the Parties after the date hereof shall operate to toll any time period which otherwise might be applicable, including, without limitations, any time periods which may be provided for in the Operative Documents.

6.3     Except to the extent expressly provided to the contrary in this Agreement, nothing contained in this Agreement is intended to:

6.3.1.  Limit Sallyport in initiating, continuing or otherwise proceeding to exercise any rights or remedies it may have before, or after the Effective Date of this Agreement; including, but not limited to, giving notice of maturity, initiating legal proceedings, whether judicial or non-judicial, or seeking appointment of a receiver;

6.3.2.  Relieve Obligors of any of their respective obligations under the Operative Documents or as otherwise available at law or in equity.

## 7.   **REAFFIRMATION OF SALLYPORT'S LIENS AND SECURITY INTERESTS**.

7.1     Debtor hereby reaffirms the granting of, and represents and warrants to Sallyport that Sallyport has, a valid, enforceable and perfected lien on and security interest in all of the Collateral granted by Debtor to Sallyport as security for Debtor's Obligations. The Collateral granted by Debtor to Sallyport as security for Debtor's Obligations secures all of the presently existing and hereafter arising Obligations, of Debtor owing to Sallyport. Debtor reaffirms the assignment of all tax refunds, including, without limitation, the Employee Retention Credit expected to be the approximate amount of $2,600,000.00, shall pay over to Sallyport and shall execute all such documents as reasonably requested by Sallyport to ensure assignment and payment of such tax refunds, including, without limitation, the Employee Retention Credit, to Sallyport.

7.2     Each Guarantor hereby grants a security interest in all of its or their Collateral as security for amounts due from each Guarantor, reaffirms the granting of Collateral granted by each Guarantor to Sallyport and represents and warrants to Sallyport that Sallyport has, a valid and enforceable lien on and security interest in Collateral as security for each such Guarantor's Obligations. The Collateral granted by each Guarantor to Sallyport as security for each Guarantors Obligations secures all of the presently existing and hereafter arising Obligations, of each such Guarantor owing to Sallyport. In addition to the foregoing, as security for amounts due Sallyport from ATI, ATI grants Sallyport a lien and security interest any tax refunds due ATI from any taxing authority, including without limitation an Employee Retention Credit due ATI. ATI shall pay over to Sallyport and shall execute all such documents as reasonably requested by Sallyport to ensure assignment and payment of such tax refunds, including, without limitation, any Employee Retention Credit otherwise due ATI, to Sallyport.

## 8. **REAFFIRMATION OF FINANCING AND GUARANTY AGREEMENTS**

8.1     Debtor hereby agrees to the terms and conditions of this Agreement and reaffirms each and all of the Financing Agreements.

8.2     Each Guarantor hereby agrees to the terms and conditions of this Agreement and each Guarantor reaffirms its each and all of the terms and conditions of each of Guaranty Agreements as respectively applicable thereto.

## 9. **FORBEARANCE TERMS**.

9.1     If Obligors shall fully, faithfully and timely perform all of their respective obligations under this Agreement, and observe all of the conditions on their part to be performed and observed under this Agreement, and further provided there are no Additional Defaults, Sallyport agrees to refrain from exercising its available remedies against Obligors as a result of the Existing Default during the Forbearance Period. Notwithstanding the foregoing: (a) nothing in this Agreement shall constitute a waiver of the right to declare a default exists, Existing Default, any Additional Defaults, breaches, or other Events of Default; (b) nothing in this Agreement, nor any acceptance by Sallyport of any payment by Debtor, or any Guarantor, shall constitute an accord and satisfaction by Sallyport with respect to the Obligations owed to Sallyport under any of the Operative Documents; (c) notwithstanding its entering into this Agreement, Sallyport shall not be precluded from taking any action that may be necessary to protect its interest or preserve the validity and priority of its security interests and other liens in or on the Collateral; and (d) Sallyport may at any time, in its sole and absolute discretion, terminate its forbearance and pursue its rights and remedies as provided in the Operative Documents, this Agreement and/or applicable law. In agreeing to forbear from exercising its remedies, Sallyport is not waiving the right to declare the existence of a default, the Existing Default or any rights or remedies in connection therewith, all of which are expressly reserved.

9.2     Fees, costs and expenses charged to or incurred by Sallyport for the negotiation, documentation, administration and enforcement of the Operative Documents and this Agreement, including, without limitation, attorney's fees, costs and expenses by counsel for Sallyport, whether internal or external, will be at Obligors' cost.

9.3     Sallyport shall be paid from the proceeds of any sale of its Collateral. Sallyport shall continue to collect upon all Accounts, and apply the same to the Obligations. Amounts due pursuant to the Cash Flow Addendum will continue to amortize and be payable at the monthly amount of $41,666.67 plus interest. Any payment received in relation to the Employee Retention Credit, whether such Employee Retention Credit is otherwise due Debtor or ATI and whether such amount relates to a refund paid directly by the taxing authority or any advance against any portion of the Employee Retention Credit otherwise due Debtor or ATI (in whatever form, including, without limitation, as a loan or otherwise), will be sent directly to Sallyport and applied to the Obligations (in order to cure the over advance default). All payments received by, or made payable to Debtor or ATI, will be sent to Sallyport and will be applied to the Obligations. Upon receipt of the full payment of the Employee Retention Credit(s), Debtor and ATI direct any surplus after repayment of Debtor's Obligations to cure the over advance default, will be sent to Retrolock by Sallyport.

9.4     In order to recover the Overadvance, a portion of the amounts to be advanced, if any amounts are advanced, in Sallyport's sole discretion, may be used to reduce the existing Overadvance and the fees and charges arising therefrom. In the event that the Overadvance and the fees and charges arising therefrom are not paid in full by the Termination Date, then Obligors shall immediately pay the balance of all Obligations and the fees and charges arising therefrom to Sallyport without setoff or defense.

9.5     All payments due to Sallyport to be made in respect of this Section 9, shall be made in U.S. dollars, in good funds, without setoff, counterclaim or any other deduction of any nature. Except as specifically provided elsewhere herein, all such payments shall be applied at the option of Sallyport to costs, fees, accrued and any other sums due under the Operative Documents, in such order as Sallyport shall elect in its sole discretion.

9.6     Nothing contained herein shall be deemed a novation of any of the Operative Documents. Obligors shall be given credit for payments due under the Obligations from either collection by Sallyport of the Accounts or from the proceeds of any sale of Sallyport's Collateral to the extent the foregoing are paid to and received by Sallyport.

9.7     **Audit.** Obligors shall permit and cooperate with Sallyport (and any of employees, agents or representatives, accountants, lawyers or other third parties acting at Sallyport's direction or on Sallyport's behalf) to conduct a forensic audit of each Obligor's financial conditions, including, without limitation, business operations, bank accounts, taxes, Collateral, including, without limitation, inventory, work-in-process, Accounts (whether or not and whenever factored, sold or assigned to Sallyport), including, without limitation, the right and authority to communicate with any such Obligor's employees, officers, directors, Account Debtors, customers, accountants, agents and/or representatives and the costs of same shall be added to Obligations and due and payable by Obligors upon Sallyport's charge to the account of Obligors, or any of them. Obligors shall provide written consent confirming the authority to communicate with third parties as provided herein, in the event such third party requests written consent of any such Obligor authorizing such third party to communicate with any such Auditor

9.8     **Continuation of Operative Documents.** Nothing in this Agreement shall be construed as a waiver by Sallyport of any of the rights, privileges or obligations contained in the Operative Documents. Without limiting the foregoing, the interest, fees and charges currently accruing under the Operative Documents shall continue to accrue without interruption. The liens and security interests granted by any Debtor and any Guarantor shall continue to secure the past, present and future Obligations of Debtor and such Guarantor, as applicable to Sallyport. Obligors may not transfer any Collateral without Sallyport's consent, except for Collateral in the ordinary course of business based on arm's length transactions in amounts determined in good faith compared to amounts regularly charged for such items or services, and only to the extent such sums are paid to Sallyport consistent with the terms of the Operative Documents.

9.9     **New Advances.** Prior to the date of this Agreement, the Advance Rate was temporarily increased to 70%. Notwithstanding the foregoing, Sallyport may make Advances on Accounts or additional Overadvances pursuant to the Operative Documents in its sole discretions, in amounts Sallyport determines in its sole discretion. Sallyport shall be under no obligation to make any advances and the fact that Sallyport makes an advance shall not be interpretation as or

result in a course of conduct requiring Sallyport to make any advance in the future. Any such future Overadvance made or created shall be an Additional Default hereunder unless Sallyport shall provide Obligors with a writing signed by Sallyport indicating in a clear and unambiguous manner that such future Overadvance is not an Additional Default.

9.10    **Use of Advances.** Debtor shall use its best judgment with respect to how to use Advances made hereunder and Sallyport shall not be responsible for giving directions and controlling how the Debtor utilizes said funds. Notwithstanding the above, Debtor represents, warrants and covenants that any Advances made hereunder shall be used solely for business purposes to pay suppliers and employees on an as needed basis to maintain operations and for no other purpose. Sallyport shall have no responsibility or liability for whom Debtor decides to be paid or directs Sallyport to pay on Debtor's behalf.

9.11    **Reaffirmation of Operative Documents.** The Debtor agrees that the Financing Agreements are in effect without defense or setoff. Each Guarantor agrees that their Guaranty is effective and each Guaranty shall extend to the Obligations guaranteed by each Guarantor due Sallyport under and pursuant to the Operative Documents such that no other amendment is needed to incorporate into any Guaranty the amounts due from Debtor. Any failure by either any Debtor or any Guarantor to cooperate with Sallyport shall be deemed a material breach by them of this Agreement and the Operative Documents and considered an Additional Default hereunder.

9.12    **Reservation of Rights**. Except as otherwise herein provided, nothing in this Agreement shall be construed as a waiver by Sallyport of any of the rights, privileges or obligations contained in this Agreement or Operative Documents. Without limiting the foregoing, all fees currently accruing under the Operative Documents shall continue to accrue without interruption.

9.13    **Failure of Condition**. The failure of Obligors and Guarantors to perform any of their respective obligations under this Agreement or the Operative Documents (to the extent it is within their power), except the Existing Defaults, shall constitute an Event of Default in which event Sallyport may, in its sole discretion, exercise any and all remedies available to Sallyport, including any remedies available to Sallyport with respect to the Operative Documents.

10.    **TERMINATION**.

10.1    **End of Forbearance Period.** On the Termination Date, if not sooner terminated in Sallyport's sole and absolute discretion, the Forbearance Period shall end. Absent indefeasible payment of all Obligations in full, Sallyport shall have no further obligation whatsoever to forbear enforcement of its rights and remedies under this Agreement, the Operative Documents, or state law and if any Obligations remain outstanding Sallyport may, without notice, take any and all actions which Sallyport shall deem appropriate, in its sole and exclusive discretion, to enforce its rights under this Agreement, the Operative Documents or applicable law.

10.2    **Termination of this Agreement.** Sallyport shall have the right to terminate this Agreement and its forbearance upon any of the following events: (a) any of Debtor or any Guarantor have failed to perform any of their respective obligations under this Agreement;

(b) any of Debtor or any Guarantor shall have failed to satisfy or perform any of the terms and conditions set forth in this Agreement; (c) any Additional Defaults shall occur; (d) any representation, warranty or statement by Debtor or any Guarantor herein, or in any document in connection with this Agreement, shall have been untrue when made or deemed made; or (e) the occurrence after the date of this Agreement of any material adverse effect upon the business or the financial position or results of the operation of Debtor or any Guarantor, which impairs the ability of Debtor or any Guarantor, as applicable, to perform, or of Sallyport to enforce, any of the Operative Documents.

10.3    **Continuing   Obligations**.    Notwithstanding   the   termination   of   this Agreement as set forth in herein, the obligations and waivers of Debtor and the Guarantors and the obligations of Sallyport, each respectively, under any of the Operative Documents shall remain in full force and effect.

## 11.    **RELEASE BY DEBTORS AND GUARANTORS**

11.1    Each Obligors and each Guarantor on behalf of themselves and their respective successors, assigns, agents, representatives, attorneys, subsidiaries, officers, directors, affiliates, parents, partners, shareholders and employees, and each of them (the "Releasors") hereby forever release, discharge and acquit each of Sallyport and its successors, assigns, agents (including, but not limited to, Sallyport's counsel), representatives, attorneys, subsidiaries, officers, directors, affiliates, parents, partners, shareholders and employees (collectively the "Sallyport Released Parties") of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, breaches of statutory or regulatory obligations, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses, of every type, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore, now existing or hereafter arising, or which could, might or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, which in any way arise out of, are connected with or relate to the (i) Obligations; (ii) this Agreement; (iii) Operative Documents; as any of the foregoing have been amended, modified or supplemented from time to time; (iv) any other agreement between Sallyport on the one hand and any Debtor and/or any Guarantor on the other hand, whether written or oral; and (v) any act or omission by or on the part of Sallyport Released Parties or any other party acting on behalf of Sallyport committed or omitted prior to the Effective Date of this Agreement.

11.2    It is the intention of the Releasors that it shall be effective as a full and final accord and satisfactory release of each and every matter herein specifically or generally referred to and the Releasors hereby acknowledge and agree that they have been informed by their attorneys, and are familiar with and do hereby expressly waive, with respect to the release contained herein the provisions of California Civil Code Section 1542 and any and all similar statutes, codes, laws, and regulations of any state or of the United States that may be applicable hereto.  California Civil Code Section 1542 provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

The Releasors acknowledge that they may hereafter discover claims presently unknown or unsuspected by them, or facts in addition to or different from those which their attorneys now know or believe to be true, as to the matters released herein. Nevertheless, it is the intention of the Releasors through this release, to fully, finally, and forever release all such matters, and all claims against Sallyport.

11.3    The Releasors, and each of them, further covenant and agree that they will not hereafter sue any of Sallyport Released Parties upon any claim, demand or cause of action released herein and further will indemnify and hold harmless Sallyport Released Parties against any loss or liability on account of any actions brought by the undersigned or their assigns or prosecuted on their behalf against any of Sallyport Released Parties if such action is based upon any claim, demand or cause of action released herein.

11.4    It is further understood and agreed by the Releasors, and each of them, that the matters released herein are not limited to matters which are known or disclosed, and each of the Releasors hereby expressly waive any and all rights and benefits which they now have, or in the future may have, conferred upon.

11.5    In this connection, each of the Releasors hereby agrees, represents and warrants that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses, which are presently unknown, unanticipated and unsuspected, and they further agree, represent and warrant that this Agreement has been negotiated and agreed upon in light of that realization and that they nevertheless hereby intend to release, discharge and acquit Sallyport Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses, which are in any way set forth in or related to: (i) the Obligations; (ii) this Agreement; (iii) the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time. The Releasors, and each of them, further acknowledge that they have been advised by legal counsel with respect to the consequences of this waiver, and further agree that such waiver is an essential and material part of this Agreement, without which the consideration given pursuant hereto would not have been given.

12.    **WAIVERS**.

12.1    **Waiver of Marshalling.**  Obligors hereby waive the benefit of all present or future laws providing for marshalling in the event of foreclosure of the liens and, in addition, any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in any particular order. Sallyport shall have the right to determine the order in which any collateral securing the Obligations shall be subjected to the remedies afforded to Sallyport. Sallyport shall have the right to determine the order in which any or all portions of the outstanding debt are satisfied from the proceeds realized upon the exercise of its remedies.

12.2   **Waiver of Statute of Limitations**.  As a condition to and in consideration of Sallyport's agreements herein, each of the Obligors hereby expressly waive the benefit of any statute of limitations, laches or any other time-related defenses with respect to claims by Sallyport to bring any action affecting their respective liability under any of the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time, or the enforcement of the Obligations, any deficiency, or any state law fraudulent transfer claims, including but not limited to any applicable statutes of limitation under Cal. Code Civ. Proc. §§ 337, 338, 339, 343, 580a, 580b, 580d, or 726; Cal. Civ. Code § 3439.09; VTCA, Civ. Prac. & Remedies §§ 16.003, 16.004; V.T.C.A., Bus. & Com. § 24.010; or under similar state law. Such waiver shall be effective until 9-months following the Termination Date set forth in this Agreement.

12.3   **Waiver of Objection to Appointment of Receiver**.  Obligors hereby waive any right to object to the appointment of a receiver pursuant to the terms and provisions of the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time, provided, however, that so long as Releasors shall fully, faithfully and timely perform all of their obligations under this Agreement and under each of the Operative Documents, and observe all of the conditions on their part to be performed and observed under this Agreement and the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time, Sallyport shall not seek to exercise its right to appoint a receiver prior to the end of the Forbearance Period.

12.4   **UCC Waiver of Notice After Default**.  This Agreement shall serve as Releasors' written statement after default, pursuant to Section 9611 of the UCC applicable to the parties hereunder, renouncing their rights to notification of any personal property foreclosure sale or sales Sallyport may hold in connection with the Operative Documents.

12.5   **UCC Waiver of the Right to Redeem the Collateral**.  This Agreement shall serve as Releasors' written statement after default, renouncing their rights to redeem the Collateral, pursuant to Section 9623 of the California Commercial Code.

12.6   **Waiver of the Right to Notice of a UCC Foreclosure Sale**.  This Agreement shall serve as Releasors' written statement after default, renouncing their rights, if any, of notification of any proposal Sallyport may wish to make under Section 9620(e) of the of the UCC applicable to the parties hereunder to now, or in the future, elect to retain any of the Collateral, or any part thereof, in satisfaction, in whole or in part, of their respective obligations to Sallyport under the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time.

13.   **Bankruptcy**.  The following provisions apply with respect to any Bankruptcy or insolvency:

13.1   **Bankruptcy by Individual Releasors**.  In entering into this Agreement, Releasors hereby acknowledge that Sallyport gives up valuable rights available to it in exchange for the promises, representations and acknowledgements contained herein and that Sallyport would not have entered into this Agreement but for such promises, representations and acknowledgements. Accordingly, Releasors agree that in the event that a bankruptcy petition

under any chapter of the Bankruptcy Code (11 U.S.C. §101, et seq.) is filed by or against any of the Releasors (either in their individual, company or representative capacity, as applicable) after the execution of this Agreement (each, a "Bankruptcy Filing"), Sallyport shall not be deemed to have waived any right it may have, including but not limited to, based upon the subject matter of this Agreement or any of the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time, or otherwise, to seek to except its debt from discharge *under 11 U.S.C. §523 or to object to the discharge of the Releasors under 11 U.S.C. §727*, to the extent applicable. The remedies prescribed in this paragraph are not exclusive and shall not limit Sallyport's rights under this Agreement.

13.2   **Relief from Automatic Stay**. As additional consideration for Sallyport agreeing to enter into this Agreement, Releasors agree that in the event a bankruptcy petition under any chapter of the Bankruptcy Code (11 U.S.C. §101, et seq.) is filed by or against any of the Releasors at any time after the execution of this Agreement, Sallyport shall be entitled to the immediate entry of an order from the appropriate Bankruptcy Court granting Sallyport complete relief from the automatic stay with a copy of this Agreement attached thereto, without the necessity of an evidentiary hearing and without the necessity or requirement of Sallyport to establish or prove the value of the collateral, the lack of adequate protection of its interest in such collateral, or the lack of equity in such collateral. It is specifically agreed and acknowledged by Releasors that the lifting of the automatic stay as referenced herein by the appropriate Bankruptcy Court shall be deemed to be "for cause" pursuant to § 362(d)(1) of the Bankruptcy Code. Releasors specifically agree not to directly or indirectly oppose or otherwise defend against Sallyport's efforts to gain relief from the automatic stay. The remedies prescribed in this paragraph are not exclusive and shall not limit Sallyport's rights under this Agreement.

13.3   **Dismissal of Bankruptcy Proceeding**. Releasors acknowledge that if any bankruptcy proceeding is instituted by or against any of the Releasors before satisfaction of obligations under this Agreement, Sallyport shall have cause for the dismissal of any such case pursuant to 11 U.S.C. § 1112(b). The remedies prescribed in this paragraph are not exclusive and shall not limit Sallyport's rights under this Agreement.

13.4   **Avoidance Action**. In addition to the indemnity Obligations as provided for in the Operative Documents, in the event that Sallyport is subject to liability pursuant to an avoidance action filed against it, pursuant to 11 U.S.C. §§ 544, 547 and/or 548, et. seq., or any other law relating to insolvency or adjustment of debts, Sallyport may file a proof of claim against the applicable Releasors' Bankruptcy estate or the applicable insolvency estate for the full amount of said liability. Said amount shall be added to and become part of the Obligations.

14.   **TRUE AND CORRECT STATEMENT**. As a condition to the signing of this Agreement, the Parties are relying on the truth, completeness, and correctness of the statements and representations made herein, and the Parties represent for themselves that this Agreement contains no material misrepresentations or omissions by any party to this Agreement. Obligors and Guarantors each hereby respectively restate each and every representation, warranty, and obligation contained in the Operative Documents as though fully set forth in this Agreement.

15.   **AMENDMENTS AND WRITING**. No waiver of or consent to any departure from any provisions hereof shall be effective unless in writing and signed on behalf of the party

against whom such a waiver or consent is asserted, and shall be effective only in the specific instance and for the purpose for which given and to the extent specified in such writing. No delay or omission by any party hereto in the exercise of any right or remedy under the Operative Documents or this Agreement shall impair such right or remedy or be deemed to be a waiver or modification of any right or remedy available to the parties to this Agreement under the applicable documents or at law or equity.

16.     **PRIOR DISCUSSIONS**.  With respect to the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time, and any collateral given to secure the Obligations and related matters, any prior negotiations and discussions between the parties are deemed to be terminated and superseded by this Agreement, and this Agreement contains the entire agreement between the parties in regard to the negotiations involving the Agreement.  Said negotiations have no impact whatsoever upon the validity of the Operative Documents, as any of the foregoing have been amended, modified or supplemented from time to time.

17.     **SEVERABILITY.**  In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be constructed as if such invalid or unenforceable provisions had never been contained in this Agreement.

18.     **THIRD-PARTY BENEFICIARIES**.  All of the conditions and obligations hereunder are imposed solely and exclusively for the benefit of the parties hereto, their successors and assigns.  No other person or entities shall obtain any interest herein or require satisfaction or such conditions in accordance with the terms hereof or be entitled to assume that any of the parties hereto will enforce such conditions and obligations and no other person shall, under any circumstances, be deemed to be a beneficiary of such conditions.

19.     **REPRESENTATION ON AUTHORITY.**  Each party represents and warrants that he, she or it has the right to enter into and deliver this Agreement and to grant the rights and undertake the duties provided for in this Agreement. Each party on their own behalf, acknowledge that this Agreement shall be binding upon the party executing the Agreement, irrespective of whether each and every Debtor and Guarantor executes this Agreement.

20.     **MISCELLANEOUS**

20.1    This Agreement shall inure to and be binding upon the parties hereto, their personal representatives, successors and assigns; provided, however, that Obligors and Guarantors shall not have the right to assign this Agreement or any rights hereunder without Sallyport's prior written consent and any such assignment shall be void and of no effect whatsoever.

20.2    This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement.

20.3    No portion of this Agreement shall be interpreted against the party that

drafted it as each party has been represented by or had the opportunity to be represented by counsel.

21. **GOVERNING LAW; JURISDICTION; STATUTE OF LIMITATIONS**. Upon the Effective Date of this Agreement, this Agreement and all acts and transactions hereunder and thereunder and all rights and obligations of the Parties shall be governed, construed and interpreted in accordance with the internal laws of the State of Texas. The Parties: (i) agree that all actions or proceedings relating directly or indirectly hereto shall, at the option of Sallyport, be litigated in courts located within said state, and that, at the option of Sallyport, the exclusive venue therefore shall be Harris County, State of Texas; (ii) consent to the jurisdiction and venue of any such court and consents to service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) waive any and all rights the Parties may have to object to the jurisdiction of any such court, or to transfer or change the venue of any such action or proceeding.

Releasors agree that any claim or cause of action by Releasors against Sallyport, its directors, officers, shareholders, employees, agents, accountants or attorneys, based upon, arising from, or relating to the Obligations, this Agreement, the Operative Documents or any other present or future agreement, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, occurred, done, omitted or suffered to be done by Releasors, their respective directors, officers, members, employees, agents, accountants, or attorneys, relating in any way to Sallyport, shall be barred unless asserted by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within one (1) year after the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based, and the service of a summons and complaint on an officer of Sallyport, or on any other person authorized to accept service on behalf of Sallyport within thirty (30) days thereafter. Releasors agree that such one (1) year period provided herein shall not be waived, tolled, or extended except by the written consent of Sallyport in its sole and absolute discretion. This provision shall survive any termination, however arising, of this Agreement and any other present or future agreement.

22. **WAIVER OF RIGHT TO JURY TRIAL.** SALLYPORT AND DEBTOR AND GUARANTORS EACH HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL IN ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN SALLYPORT AND DEBTOR OR SALLYPORT AND GUARANTORS (INCLUDING BUT NOT LIMITED TO THE FINANCING DOCUMENTS OR THE GUARANTY AGREEMENTS, NOW EXISTING OR AS AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME), AND ANY CONDUCT, ACTS OR OMISSIONS OF SALLYPORT OR DEBTOR OR GUARANTORS OR ANY OF THEIR DIRECTORS, MEMBERS, PARTNERS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSONS AFFILIATED WITH THE PARTIES HERETO. SALLYPORT AND DEBTOR AND GUARANTORS EACH HEREBY ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS. SALLYPORT AND DEBTOR AND GUARANTORS EACH HEREBY FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS

WAIVER WITH ITS LEGAL COUNSEL AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

To the extent any court would refuse enforcement of this waiver of jury trial provision, then, in such event, and only in such event, the parties agree that any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by non-binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court in the State where such arbitration took place to the extent the parties agree to Arbitration in a State other than Texas and in the State of Texas. Notwithstanding the foregoing, Sallyport shall be entitled to institute suit in order to obtain provisional relief in the form of prejudgment remedies, including, replevin, garnishment, attachment or the like without being held to have waived its right to compel arbitration on all remaining issues and in such event any claim that such party may wish to assert shall be subject to arbitration.

23.     **ATTORNEYS' FEES**.

23.1    In exchange for Sallyport's willingness to enter into this Agreement, Debtor and Guarantors each shall be, with respect to this Agreement, jointly and severally obligated to pay all actual attorneys' fees and costs Sallyport has incurred in connection with this Agreement and the Existing Default.

23.2    In the event of an Additional Default, Debtor and Guarantors each shall with respect to the Agreement, jointly and severally be obligated to pay in full all actual attorneys' fees and costs Sallyport incurs as a result of the Additional Default under this Agreement. In the event Sallyport, Debtor or any Guarantor files any lawsuit against the other predicated on a breach of, or is otherwise related to, this Agreement, the prevailing party in such action shall be entitled to recover its costs and attorneys' fees, including but not limited to attorneys' fees and costs incurred in the enforcement of, execution upon or defense of any order, decree, award or judgment. All attorneys' fees and costs to which Sallyport may be entitled pursuant to this Section shall immediately become part of the Obligations and shall be due upon the earlier to occur of: (i) the Termination Date; or, an (ii) Event of Default.

24.     **NOTICES**. For purposes of this Agreement, all notices or demands shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, or facsimile confirmed by the recipient and addressed to the notified party at its address set forth below:

| *If to Debtor or Guarantors* | Retrolock Corporation<br>210 W Taft Avenue<br>Orange, CA 92865<br>Attn: Tania Tomyn<br>Tel:   248 505 1266<br>Email:  tania@retrolock.com |
| --- | --- |
| *With a copy to:* | |

| *If to Sallyport* | Emma Hart<br>Sallyport Commercial Finance, LLC<br>14100 Southwest Freeway, Suite 210<br>Sugarland, TX 77478<br>Tel:  832 939 9450<br>Email:  ehart@sallyport.com |
| --- | --- |
| *With a copy to:* | Steven N. Kurtz, Esq.<br>Levinson Arshonsky & Kurtz, LLP<br>15303 Ventura Boulevard, Suite 1650<br>Sherman Oaks, CA  91403<br>Tel:    (818) 382-3434<br>Email: skurtz@laklawyers.com |

25.    **FURTHER ASSURANCES.** At any time, and from time to time, each party will execute such additional instruments and take such actions as may be reasonably requested by the other party or parties to confirm or perfect or otherwise to carry out the intent and purposes of this Agreement.

26.    **TIME OF ESSENCE.** Time is of the essence in the performance by Debtor and Guarantors of each and every obligation under this Agreement.

27.    **ACKNOWLEDGMENT AGREEMENT READ AND REVIEWED.** Each of the Debtor and Guarantors, by executing this Agreement, warrants and represents that it (a) has fully read this Agreement, (b) has had the opportunity to ask or did review the Agreement with an attorney of its choosing to receive answers to any questions it may have concerning this Agreement, and (c) fully understands all of the terms and provisions hereof. Each Party further agrees that this Agreement, although drafted by Sallyport, shall not be interpreted or construed against Sallyport.

[Signatures appear on following page]

WITNESS the due execution hereof by the parties hereto.

| **SALLYPORT:**<br><br>SALLYPORT COMMERCIAL FINANCE, LLC<br><br>By: _____<br>Name: NICK HART<br>Title: PRESIDENT | |
|---|---|
| **DEBTOR:**<br><br>RETROLOCK CORPORATION<br><br>By: _____<br>Name: TAWIA TOMYN<br>Title: CEO | **GUARANTOR:**<br><br>AT INSTALLATION, INC.<br><br>By: _____<br>Name: TAWINC TOMYN<br>Title: CEO |
| **GUARANTOR:**<br><br>Tania Tomyn | **GUARANTOR:**<br><br>Aaron Wesley Smith |

## Schedule "A"
### Operative Documents

1      Account Purchase and Sale Agreement dated as of June 18th, 2021 between Sallyport Commercial Finance, LLC and Retrolock Corporation.

2      Schedule A to Account Sale and Purchase Agreement dated as of June 18th, 2021 between Sallyport Commercial Finance, LLC and Retrolock Corporation.

3      Addendum #1 to Account Sale and Purchase Agreement dated June 17th, 2021 between Sallyport Commercial Finance, LLC and Retrolock Corporation.

4      Amendment #1 to Account Sale and Purchase Agreement dated July 16th, 2021 between Sallyport Commercial Finance, LLC and Retrolock Corporation.

5      Cash Flow Addendum to Account Sale and Purchase Agreement dated September 30th, 2021 between Sallyport Commercial Finance, LLC and Retrolock Corporation.

6      Continuing Guaranty dated June 18th, 2021 by AT Installation, Inc. guarantying amounts due Sallyport Commercial Finance, LLC from Retrolock Corporation.

7      Continuing Guaranty dated June 18th, 2021 by Aaron Smith guarantying amounts due Sallyport Commercial Finance, LLC from Retrolock Corporation.

8      Continuing Guaranty dated June 18th, 2021 by Tania Tomyn guarantying amounts due Sallyport Commercial Finance, LLC from Retrolock Corporation.

9      Blocked Account Agreement between Retrolock Corporation, Sallyport Commercial Finance, LLC and Cadence Bank.

10     Subordination Agreement in Favor of Lender by U.S. Small Business Administration, and Sallyport Commercial Finance, LLC dated July 14, 2021 subordinating SBA liens and security interests against Retrolock Corporation to liens of Sallyport Commercial Finance, LLC against Retrolock Corporation.

11     Certificate of Officers provided by Retrolock Corporation to Sallyport Commercial Finance, LLC in support of Account Sale and Purchase Agreement

12     Certificate of Corporate Resolutions of Retrolock Corporation dated June 15th, 2021 affirming authority to enter into Account Sale and Purchase Agreement with Sallyport Commercial Finance, LLC

13     Certificate of Corporate Resolutions of AT Installation, Inc. dated June 15th, 2021 affirming authority to guaranty Retrolock Corporation obligations owing to Sallyport Commercial Finance, LLC

## SCHEDULE "B" of UCC FINANCING STATEMENTS

UCC Financing Statements and Amendments filed with California Secretary of State:

a) UCC-1 Financing Statement filed June 14, 2021 as filing # U210055922223; Debtor, Retrolock Corporation, Secured Party, CORPORATION SERVICE COMPANY, AS REPRESENTATIVE for Sallyport